**FILED**

OCT 0 8 2004

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

**DOCKETED**

OCT 1 2 2004

| | |
|---|---|
| CAPITOL INDEMNITY CORPORATION, ) a Wisconsin corporation, ) ) Plaintiff, ) ) v. ) ) ELSTON SELF SERVICE WHOLESALE ) GROCERIES, INC., an Illinois ) corporation, LORILLARD TOBACCO ) COMPANY, a Delaware corporation, ) CANSTAR (U.S.A.) INC., a Florida ) corporation, CAM-KAT, INC., an ) Illinois corporation, MASHOUR "MIKE" ) DUKUM, IBRAHIM DUKUM, and ) DAVID DUKUM, ) ) Defendants. ) | Civil Action No.: 04 C 6536 Judge: Magistrate Judge: JUDGE PALLMEYER MAGISTRATE JUDGE LEVIN |

## COMPLAINT FOR DECLARATORY JUDGMENT

NOW COMES Plaintiff CAPITOL INDEMNITY CORPORATION ("CAPITOL"), by

its attorneys, Pfeiffer & Adams, pursuant to 28 U.S.C. §1332 and 28 U.S.C. §2201, and

complains as follows of Defendants ELSTON SELF SERVICE WHOLESALE GROCERIES,

INC., an Illinois corporation, ("ELSTON"), LORILLARD TOBACCO COMPANY, a Delaware

corporation, ("LORILLARD"), CANSTAR (U.S.A.) INC., a Florida corporation,

("CANSTAR"), CAM-KAT, INC., an Illinois corporation, ("CAM-KAT"), MASHOUR

"MIKE" DUKUM, IBRAHIM DUKUM, and DAVID DUKUM:

## THE PARTIES

1.     Plaintiff CAPITOL is a corporation organized and existing under the laws of the

State of Wisconsin with its principal place of business in Madison, Wisconsin.

2. Defendant ELSTON is an Illinois corporation with a place of business at 3761 North Elston, Chicago, Illinois, at which it is also known as "Elston Self Service."

3. Defendant LORILLARD is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 714 Green Valley Road, Greensboro, North Carolina.

4. Upon information and belief, Defendant CANSTAR is a corporation organized and existing under the laws of the state of Florida.

5. Upon information and belief, Defendant CAM-KAT is a corporation organized and existing under the laws of the state of Illinois.

6. Upon information and belief, Defendant Mashour "Mike" Dukum is an individual residing in the state of Illinois and is an officer of Defendant ELSTON.

7. Upon information and belief, Defendant Ibrahim Dukum is an individual residing in the state of Illinois and an employee of Defendant ELSTON.

8. Upon information and belief, Defendant David Dukum is an individual residing in the state of Illinois and an employee of Defendant ELSTON.

## JURISDICTION AND VENUE

9. This Court possesses subject matter diversity jurisdiction over this dispute pursuant to 28 U.S.C. §1332(a), inasmuch as the amount in controversy exceeds $75,000 exclusive of interest and costs, and the dispute is between citizens of different States.

10. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. §1391(b)(1) and (b)(2). Defendant ELSTON entered into a contract of insurance with CAPITOL in this judicial district, and performed acts or omissions giving rise to CAPITOL's claims for declaratory judgment within this district.

2

11.     This court has personal jurisdiction over each of the Defendants on the grounds that they reside in and/or conduct business within the state of Illinois.

12.     An actual controversy exists between CAPITOL and the defendants.  This Court is invested with the power to declare the rights and liabilities of the parties pursuant to 28 U.S.C. §1332 and 28 U.S.C. §2201.

## THE UNDERLYING ACTION

12.     On or about July 9, 2003, LORILLARD filed a complaint against ELSTON in the United States District Court for the Northern District of Illinois, Eastern Division, captioned: *Lorillard Tobacco Company, a Delaware corporation, Plaintiff, v.   Elston Self Service Wholesale Groceries, Inc, and Illinois corporation, Defendant, Civil Action No. 03C-475-3,"* (the "Underlying Action").  The case is assigned to Judge Gottschall.  A copy of the Underlying Complaint is attached hereto as Exhibit 1.

13.     On or about July 15, 2004, LORILLARD filed an Amended Complaint naming as additional defendants MASHHOUR DUKUM a/k/a MIKE DUKUM, IBRAHIM DUKUM and DAVID DUKUM, individuals.  A copy of the Amended Complaint is attached hereto as Exhibit 2.

14.     The Underlying Action as alleged in the Amended Complaint is an eight count action for: **Count I**:  Trademark Counterfeiting and Infringement in violation of the Trademark Act of 1946, 15 U.S.C. §1114(1); **Count II**: Unfair Competition and False Designations of Origin and False and Misleading Representations in violation of the Trademark Act of 1946, 15 U.S.C. §1125(a); **Count III**:  Trademark Dilution in violation of the Trademark Act of 1946, 15 U.S.C. §1125(c); **Count IV**:  State Trademark Dilution in violation of 765 ILCS §1036 *et. seq.*;

**Count V**: Common Law Unfair Competition; **Count VI**: Statutory Deceptive Trade Practice in violation of 765 ILCS §510/2 *et. seq.;*

**Count VII**: Common Law Fraud; **Count VIII**: Inducement to Commit Fraud.

14.     The Underlying Action alleges that Defendants sold and offered for sale counterfeit cigarettes protected by LORILLARD's federal trademark registrations for "NEWPORT®" cigarettes.

15.     The Underlying Action further alleges that Defendants knowingly and willfully committed "buydown fraud" by manipulating and padding the computerized reporting system to Lorillard and by participating in a NEWPORT® re-circulation scheme with other retailers. Amended Complaint pp. 6-8.

16.     The Underlying Action further alleges that Defendants induced and conspired with others to commit fraud by providing retailers with false invoices and by conspiring with retailers to re-circulate previously "boughtdown" NEWPORT® cigarettes. Amended Complaint, paragraphs 75-6.

17.     A Third Party Complaint was filed on or about March 25, 2004 by Defendant ELSTON against Third Party Defendants CANSTAR and CAM-KAT, alleging that all of the allegedly counterfeit cigarettes at issue were purchased from the Third Party Defendants. A copy of the Third Party Complaint is attached hereto as Exhibit 3.

18.     Defendant ELSTON filed an answer to Plaintiff's Complaint in the Underlying Action on or about November 6, 2003.

## THE INSURANCE POLICY

19.     Plaintiff CAPITOL and Defendant ELSTON entered into a contract of insurance for Business Owner's Liability Coverage for a one-year period commencing on July 14, 2002. A

4

certified copy of CAPITOL Policy No. BP00044456 ("The Policy") is attached hereto as Exhibit 4.

20.     The Policy provides certain Business Owner's Liability Coverage, subject to all of the limits, declarations, endorsements and exclusions set forth, attached to or incorporated into the policy.

21.     In relevant part, the Business Owner's Liability Coverage Form of The Policy states:

> **A. Coverages**
>  **1. Business Liability**
>              \*   \*   \*
>      **(b)** This insurance applies:
>                  \*   \*   \*
>          (2) To:
>              (a) "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;
>              (b) "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;
>          but only if the offense was committed in the "coverage territory" during the policy period.

(page 1 of 15).

22.     In relevant part, The Policy contains the following exclusion:

> **B. Exclusions**
>  **1. Applicable To Business Liability Coverage**
>      This insurance does not apply to:
>                  \*   \*   \*
>      **(p) Personal Or Advertising Injury**
>          "Personal injury" or "advertising injury":
>          (1) Arising out of oral or written publication of material, if done by or at the direction of the

insured with knowledge of its falsity;
(2) Arising out of oral or written publication of
material whose first publication took place
before the beginning of the policy period;

\*     \*     \*

(page 6 of 15).

23.    In relevant part, The Policy contains the following definitions:

**F. Liability And Medical Expenses Definitions**
   **1.** "Advertising injury" means injury arising out of one or more of
     the following offenses:
      (a) Oral or written publication of material that slanders or libels
        a person or organization or disparages a person's or
  organization's goods, products or services;
      (b) Oral or written publication of material that violates a person's
        right of privacy;
      (c) Misappropriation of advertising ideas or style of doing
  business; or
      (d) Infringement of copyright, title or slogan.

(page 11 of 15).

24.    In relevant part, The Policy further provides:

**F. Liability And Medical Expenses Definitions**
     \*     \*     \*
   **13.** "Personal injury" means injury, other than "bodily injury",
     arising out of one or more of the following offenses:
      (a) False arrest, detention or imprisonment;
      (b) Malicious prosecution;
      (c) The wrongful eviction from, wrongful entry into, or
        invasion of the right of private occupancy of a room,
        dwelling or premises that a person occupies, by or on behalf
        of its owner, landlord or lessor;
      (d) Oral or written publication of material that slanders or libels
        a person or organization or disparages a person's or
  organization's goods, products or services; or
      (e) Oral or written publication of material that violates a
        person's right of privacy.

(pages 13 and 14 of 15).

25.     In relevant part, The Policy includes the following exclusion:

**EXCLUSION – PUNITIVE OR STATUTORY DAMAGES**
This form changes the policy terms as follows:
**BUSINESSOWNERS LIABILITY COVERAGE FORM**
The following is added to Paragraph **B.1.**
This policy covers only compensatory damages.  It does not cover:

1.     Punitive damages except that if a suit shall have been brought against the insured with respect to a claim for acts or alleged acts falling within the coverage hereof, seeking both compensatory and punitive or exemplary damages, then the company will afford a defense to such action without liability, however, for such punitive or exemplary damages;

2.     Exemplary; or

3.     Statutory damages (such as multiple damages, costs, expenses or attorneys fees).

Form CBP 179 (12-00).

26.     On May 5, 2004, Plaintiff CAPITOL notified Defendant ELSTON, via certified mail, that it disclaimed any duty to indemnify or defend ELSTON in the Underlying Lawsuit.

## COUNT I

### THE UNDERLYING LAWSUIT DOES NOT CONTAIN ANY ALLEGATIONS THAT COULD PROPERLY CONSIDERED AN *"ADVERTISING INJURY CAUSED BY AN OFFENSE COMMITTED IN THE COURSE OF ADVERTISING. . . "* WITHIN THE MEANING OF INSURING AGREEMENT A.1.b.(2).(b) OF THE POLICY

27.     CAPITOL re-alleges and incorporates by reference, as if fully set forth herein, paragraphs 1- 26 above.

28.     The Underlying Lawsuit seeks redress for certain injuries to LORILLARD, which cannot properly be considered "advertising injury" within the meaning of Insuring Agreement A.1.b.(2).(b) of The Policy.

29.     Insuring Agreement A.1.b.(2).(b) of The Policy provides coverage for

"advertising injury" caused by an offense committed in the course
of advertising your goods, products or services;

30.     The Underlying Lawsuit does not contain any allegations that Defendant

ELSTON  was "in the course of advertising [LORILLARD'S] goods" or that the Defendants

ever "advertised" the subject goods in connection with any of the allegedly fraudulent schemes

or actions.

31.     Allegations contained in the Underlying Amended Complaint, which include

selling counterfeit goods, using the marks of genuine goods, purchasing and reselling genuine

goods, falsely inflating reports, falsely inflating invoices, and conspiring to re-circulate genuine

goods, without more, do not state a claim for an "advertising injury caused by an offense

committed in the course of advertising" within the meaning of Insuring Agreement A.1.b.(2).(b)

of The Policy.

32.     Because the Underlying Lawsuit does not state a claim for an "advertising injury

caused by an offense committed in the course of advertising" within the meaning of Insuring

Agreement A.1.b.(2).(b) of The Policy, CAPITOL has no obligation to defend or indemnify

Defendant ELSTON or its officers or employees in the Underlying Lawsuit.

WHEREFORE, Plaintiff CAPITOL Indemnity Insurance Company respectfully requests

that this Court:

A.     Determine the rights and obligations of the parties under the CAPITOL policy at

issue;

B.     Find that the Underlying Lawsuit states no claims that are included within the

language of Insuring Agreement A.1.b.(2).(b) of The Policy and that CAPITOL therefore has no

duty to defend or indemnify any party in the Underlying Lawsuit; and

C.     Grant all other relief that the Court deems just and proper.

## COUNT II

### THE UNDERLYING LAWSUIT DOES NOT CONTAIN ANY ALLEGATION THAT COULD BE PROPERLY CONSIDERED "PERSONAL INJURY" WITHIN THE MEANING OF INSURING AGREEMENT A.1.b.(2)(a) OF THE POLICY

33.     CAPITOL realleges and incorporates by reference, as if fully set forth herein, paragraphs 1- 42 above.

34.     The Underlying Lawsuit seeks redress for certain injuries to LORILLARD, which cannot properly be considered "personal injury" within the meaning of Insuring Agreement A.1.b.(2).(a) of The Policy, which provides coverage for:   ' "Personal injury" caused by an offense arising out of your business,' . . . .

35.     Section F.13 of The Policy defines personal injury as injury arising out of the following offenses:  false arrest, malicious prosecution, wrongful eviction, slander, libel or disparagement, or violation of privacy.

36.     The Underlying Lawsuit does not contain any allegations that Defendant ELSTON ever committed false arrest, malicious prosecution, wrongful eviction, slander, libel or disparagement, or violation of privacy.

37.     Because the Underlying Lawsuit does not state a claim for "personal injury" within the meaning of Insuring Agreement A.1.b.(2).(a) of  The Policy, CAPITOL has no obligation to defend or indemnify Defendants in the Underlying Lawsuit.

WHEREFORE, Plaintiff CAPITOL Indemnity Insurance Company respectfully requests that this Court:

A.     Determine the rights and obligations of the parties under the CAPITOL policy at issue;

B.     Find that the Underlying Lawsuit states no claims that are included within the language of Insuring Agreement A.1.b.(2).(a) of The Policy and that CAPITOL therefore has no duty to defend or indemnify any party in the Underlying Lawsuit; and

C.     Grant all other relief that the Court deems just and proper.

## COUNT III

### THERE IS NO COVERAGE FOR ANY OF THE COUNTS OF PLAINTIFF'S AMENDED COMPLAINT BECAUSE EACH AND EVERY COUNT ALLEGES "INTENTIONAL ACTS" OR "FALSE PUBLICATIONS"

38.     CAPITOL re-alleges and incorporates by reference, as if fully set forth herein, paragraphs 1- 37 above.

39.     Although CAPITOL alleges in Counts I and II herein that there is no coverage for claims stated in The Underlying Lawsuit under either "advertising injury" or "personal injury" coverage, should the court find otherwise, CAPITOL hereby pleads in the alternative that both Illinois Public Policy and the exclusion contained in Section B.1.p. of the policy precludes coverage for each and every Count of Plaintiff's Amended Complaint, insofar as they are all based on allegations of intentional or knowingly false conduct..

40.     Section B.1.p. of The Policy excludes coverage for personal injury or advertising injury "[a]rising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;"

41.     In the section captioned "FACTS-COUNTERFEITING" of the Underlying Amended Complaint, LORILLARD alleges Defendants offered for sale counterfeit products "with the intent to confuse or mislead the public into believing that [ELSTON's] products are genuine Lorillard products . . . ." Underlying Amended Complaint, paragraph 15.

42.     In the section captioned "FACTS - BUYDOWN FRAUD" of the Underlying
Amended Complaint LORILLARD alleges that Defendants "Knowingly and willfully
manipulate[d] the computerized reporting system to 'pad' retailers' invoices." Underlying
Amended Complaint, paragraphs 22-24.

43.     In the section captioned "FACTS – BUYDOWN FRAUD" of the Underlying
Amended Complaint, LORILLARD alleges that Defendants engaged in "another type of fraud"
involving re-circulating cartons of cigarettes subject to LORILLARD's buydown promotion.
Underlying Amended Complaint, paragraph 25.

44.     Count I of The Underlying Complaint (TRADEMARK COUNTERFEITING
AND INFRINGEMENT) alleges that Defendant ELSTON's conduct "is *intended* to exploit the
goodwill and reputation associated with the Lorillard Marks . . . *by a strategy of willful
infringement*." Underlying Amended Complaint, paragraph 30 (emphasis added).

45.     Count II of the Underlying Amended Complaint (UNFAIR COMPETITION
AND FALSE DESIGNATIONS OF ORIGIN AND FALSE AND MISLEADING
REPRESENTATIONS) repeats the allegations of all prior paragraphs of the Underlying
Amended Complaint. Paragraph 35.

46.     Count III of the Underlying Amended Complaint (TRADEMARK DILUTION)
repeats the allegations of all prior paragraphs of the Underlying Amended Complaint, and further
alleges that Defendants engaged in certain acts "*with the intent* to trade on Lorillard's reputation
or to cause dilution of the famous Lorillard Marks." Underlying Amended Complaint, paragraph
42 (emphasis added).

47.     Count IV of the Underlying Amended Complaint (STATE TRADEMARK DILUTION) repeats the allegations of all prior paragraphs of the Underlying Amended Complaint. Paragraph 46.

48.     Count V of the Underlying Amended Complaint (COMMON LAW UNFAIR COMPETITION) repeats the allegations of all prior paragraphs of the Underlying Amended Complaint, and further alleges that Defendants' "use of the Lorillard Marks is being done with the intent to palm off its counterfeit cigarettes as [genuine]." Paragraph 52.

49.     Count VI of the Underlying Amended Complaint (STATE DECEPTIVE TRADE PRACTICE) repeats the allegations of all prior paragraphs and further alleges has *willfully engaged* in the deceptive trade practices," Underlying Amended Complaint, paragraph 61 (emphasis added); that Defendant ELSTON's acts "constitute the use and/or employment of deception, fraud, false pretense, false promise, misrepresentation and/or the concealment, suppression of a material facts, with *an intent* that others rely upon the concealment, suppression or omission of such material fact." Underlying Amended Complaint, paragraph 60 (emphasis added).

50.     Count VII of the Underlying Amended Complaint (COMMON LAW FRAUD) repeats the allegations of all prior paragraphs and further alleges that Defendants "falsely inflated their reports of NEWPORT® cigarettes." Paragraph 69.

51.     Count VIII of the Underlying Amended Complaint (INDUCEMENT TO COMMIT FRAUD) repeats the allegations of all prior paragraphs and further alleges that "Defendants have aided and abetted various retailers to defraud Lorillard's buydown program," Paragraph 75; that Defendants further conspired to recirculate previously "boughtdown cartons

12

of cigarettes; Paragraph 76, and that Defendants induced others to defraud Lorillard, Paragraph 77.

52.     Because each Count in the Underlying Amended Complaint relies on allegations of intentional or willful conduct, each Count of the Underlying Amended Complaint constitutes a claim for an injury intentionally inflicted by Defendants, coverage for these claims would be contrary to Illinois Public Policy; therefore, CAPITOL has no obligation to defend or indemnify ELSTON or its officers or employees in the Underlying Lawsuit.

53.     Because each Count in the Underlying Lawsuit constitutes a claim arising out of an oral or written publication by Defendants "with knowledge of its falsity" within the meaning of Section B.1. p. of The Policy, CAPITOL has no obligation to defend or indemnify ELSTON or its officers or employees in the Underlying Lawsuit.

WHEREFORE, Plaintiff CAPITOL Indemnity Insurance Company respectfully requests that this Court:

A.      Determine the rights and obligations of the parties under the CAPITOL policy at issue;

B.      Find that the Underlying Lawsuit states claims that are excluded by the language of section B.1. p. of The Policy and that CAPITOL therefore has no duty to defend or indemnify any party in the Underlying Lawsuit; and

C.      Grant all other relief that the Court deems just and proper.

## COUNT IV

## THERE IS NO COVERAGE UNDER THE POLICY FOR PUNITIVE OR STATUTORY DAMAGES

54.    CAPITOL re-alleges and incorporates by reference, as if fully set forth herein, paragraphs 1- 53 above.

55.    Although CAPITOL alleges in Counts I, II ,III and IV herein that there is no coverage for claims stated in The Underlying Lawsuit, should the court find otherwise, CAPITOL hereby pleads in the alternative that the exclusion contained in Form CBP 179 (12-00) of the policy precludes coverage for any punitive or statutory damages claimed in the Underlying Lawsuit.

56.    Form CBP 179 (12-00) of The Policy states in relevant part as follows:  "This policy covers only compensatory damages.  It does not cover: 1. Punitive damages . . . ;  2. Exemplary; or 3. Statutory damages (such as multiple damages, costs, expenses or attorneys fees)."

57.    The Underlying Amended Complaint prays for judgment against Defendant ELSTON, including a request for attorneys fees (paragraph 81); treble damages (paragraph 82); statutory damages (paragraph 83), and punitive damages (paragraph 86).

WHEREFORE, Plaintiff CAPITOL Indemnity Insurance Company respectfully requests that this Court:

A.    Determine the rights and obligations of the parties under the CAPITOL policy at issue;

B.    Find that the Underlying Lawsuit states claims that are excluded by the language of  Form CBP 179 (12-00) of The Policy and that CAPITOL therefore has no duty to indemnify any party for any such claims in the Underlying Lawsuit; and

C.    Grant all other relief that the Court deems just and proper.

14

## COUNT V

## THERE IS NO COVERAGE UNDER THE POLICY FOR EQUITABLE RELIEF SOUGHT BY LORILLARD

58.     CAPITOL re-alleges and incorporates by reference, as if fully set forth herein, in paragraphs 1-57 above.

59.     Although CAPITOL alleges in Counts I, II, and III herein that there is no coverage for claims stated in The Underlying Lawsuit, should the court find otherwise, CAPITOL hereby pleads in the alternative that the provisions contained in Section B.1.o. and A.1.a. of the policy precludes coverage for any equitable damages claimed in the Underlying Lawsuit.

60.     Section B.1.o.of The Policy excludes coverage for:

 "[d]amages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:
        (1) "your product";
            *     *     *
if such product, . . . is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, in adequacy or dangerous condition in it.

61.     In addition, Section A.1.a.of The Policy provides coverage for only "those sums that the insured becomes legally obligated to pay *as damages*." (emphasis added).

62.     The Underlying Amended Complaint requests that Defendants "be required to deliver to Lorillard for destruction all goods, packages, and any other written or printed material that bear or depict the Lorillard Marks, or any reproduction, counterfeit, copy, or colorable imitation of the same, or anything other than genuine Lorillard cigarettes, or that are otherwise in violation of this Court's order issued pursuant hereto, and all means for making the same." Underlying Amended Complaint, Paragraph 79.

63.     The Underlying Amended Complaint also requests injunctive relief for preliminary and permanent restraint (Paragraph 78); delivery of infringing goods for destruction (Paragraph 79); accounting for profits (Paragraph 80) and disgorgement (Paragraph 84).

64.     The Policy does not provide coverage for those requests contained in the Underlying Amended Complaint for equitable relief other than monetary damages under Section B.1.o. and A.1.a. of The Policy.

WHEREFORE, Plaintiff CAPITOL Indemnity Insurance Company respectfully requests that this Court:

A.     Determine the rights and obligations of the parties under the CAPITOL policy at issue;

B.     Find that the Underlying Lawsuit states requests for relief that are not covered by the language of Section A.1.a. or Section B. 1.o. of The Policy and that CAPITOL therefore has no duty to indemnify any party for any such claims in the Underlying Lawsuit; and

C.     Grant all other relief that the Court deems just and proper.

Capitol Indemnity Corporation

By:  David J. Adams, one of its attorneys

Attys       John G. Pfeiffer
            David J. Adams
            Margie P. White
Of          Pfeiffer & Adams
Atty for    Plaintiff, Capitol Indemnity Corporation
Address     300 West Adams St., Ste. 601
City        Chicago, Illinois 60606
Telephone   (312) 223-9712

Dated: October 8, 2004

16

**DOCKETED**

SEP 1 0 2003

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

LORILLARD TOBACCO COMPANY,
a Delaware corporation,

    Plaintiff,

        v.

ELSTON SELF SERVICE
WHOLESALE GROCERIES, INC.,
an Illinois corporation,

    Defendant.

**03C 4753**

Civil Action No.  JUDGE GOTTSCHALL

MAGISTRATE JUDGE ASHMAN
Judge

Magistrate Judge

<u>JURY DEMANDED</u>

**[FILED UNDER SEAL]**

## COMPLAINT

    Plaintiff Lorillard Tobacco Company ("Lorillard") complains of Defendant Elston

Self Service Wholesale Groceries, Inc., a/k/a Elston Self Service, as follows:

### THE PARTIES

    1.    Plaintiff Lorillard Tobacco Company is a corporation organized and

existing under the laws of the State of Delaware with its principal place of business at

714 Green Valley Road, Greensboro, North Carolina.

    2.    Upon information and belief, Defendant Elston Self Service Wholesale

Groceries, Inc. ("Elston") is an Illinois corporation with a place of business at 3761 North

Elston, Chicago, Illinois at which it is also known as Elston Self Service.  It has sold and

offered for sale within this District counterfeit cigarettes that infringe Lorillard's

3788v1

registered trademarks.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 1338(a), 1338(b), and 15 U.S.C. § 1121, as it involves substantial claims arising under the United States Trademark Act of 1946, commonly known as the Lanham Act, 15 U.S.C. § 1051 *et seq.,* together with related claims under state law.  This Court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. §§ 1331, 1338(a) and 15 U.S.C. § 1121, and has subject matter jurisdiction over the state law claims under 28 U.S.C. §§ 1338(b), and since these claims are joined with substantial and related claims under the Trademark Laws of the United States.

4.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) (1) and (b) (2) in that, among other things, a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district.  Venue properly lies within the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b) and (c) as these causes of action arise based upon information and belief, as a result of the Defendant's doing and transacting business in this district, or offering to sell its products or making its products available or by promoting the infringing mark to prospective purchasers within this district, and marketing its services and products to prospective purchasers within this District.

5.     This Court has personal jurisdiction over Defendant, who resides in and/or conduct business within the State of Illinois.

## NATURE OF ACTION

6.     This is an action for counterfeiting and infringement of registered

trademarks in violation of the Trademark Act of 1946, 15 U.S.C. § 1114(1); the use of false designations of origin and false and misleading descriptions and representations in violation of the Trademark Act of 1946, 15 U.S.C. § 1125(a); dilution in violation of the Trademark Act of 1946, 15 U.S.C., § 1125(c); dilution in violation of 765 ILCS § 1036/65; deceptive trade practice in violation of the common law of the State of Illinois; and statutory unfair competition in violation of 765 ILCS § 510/2 *et seq.*

## FACTS

7.    Lorillard is the fourth largest tobacco company in the United States, manufacturing and selling top quality branded cigarettes. All of Lorillard's cigarettes are manufactured in accordance with strict quality control standards, enabling Lorillard to establish and maintain, over many years, a reputation among smokers for quality and consistency.

8.    Lorillard's leading brand is NEWPORT®, which was first introduced to the market in 1956. Since then, Lorillard has invested substantial time, effort and money in advertising and promoting cigarettes under the NEWPORT® mark throughout the United States. As a result of Lorillard's excellent reputation and investment in its brands, NEWPORT® cigarettes have become the leading brand of menthol cigarettes sold in the United States, and the second leading cigarette brand overall, with approximately eight percent of the national market. The NEWPORT® mark has come to represent an extremely valuable asset belonging exclusively to Lorillard.

9.    To protect its company reputation and product investments, Lorillard has filed for and obtained federal trademark registrations for its significant trademarks. Specifically, Lorillard and its affiliates have obtained federal registrations for the marks

3

NEWPORT® (Reg. No. 1,108,876), NEWPORT® (stylized) (Reg. No. 2,600,870), LORILLARD® (Reg. No. 1,920,066), Spinnaker Design® (Reg. No. 1,178,413), and NEWPORT and Design® (Reg. No. 1,191,816). Copies of the United States Patent and Trademark Office records of registration for these marks are attached as Exhibits 1-5, respectively to the Declaration of Victor Lindsley, and together they are referred to herein as the "Lorillard Marks." Lorillard has the exclusive right to use the Lorillard Marks in connection with any importation, sale, offer to sell, or distribution of cigarettes in the United States. Lorillard's manner of use of the Lorillard Marks can be seen from the scanned images of the front and sides of the genuine sample NEWPORT® cigarette pack, appearing on the left side of each of Exhibits 1 and 2 attached to this Complaint .

10.     The Lorillard Marks have become famous.

11.     Upon information and belief, Defendant Elston has been aware,  since prior to the acts complained of herein, of the vast goodwill represented and symbolized in the Lorillard Marks and of the public recognition and reliance upon the Lorillard Marks as identifying authentic products of Lorillard and distinguishing Lorillard's products from the products of others.

12.     Notwithstanding its aforesaid knowledge, upon information and belief, Defendants Elston recently set upon a course of conduct to misappropriate the Lorillard Marks and goodwill associated with them. Over the past several years, the federal government and the State of Illinois have substantially increased taxes on cigarette sales. With these high tax levels, bootleggers can price counterfeit cigarettes below prevailing market prices and can pocket not only the profit on the cigarettes themselves but also a substantial portion of what would otherwise be owed to the government in

taxes. To that end, an increasing number of counterfeit cigarettes have been imported into the United States and distributed in interstate commerce, all in violation of federal and state laws and in contravention of Lorillard's trademark rights.

13. Upon information and belief, Defendant Elston is offering for sale and selling counterfeit products bearing the Lorillard Marks, with the intent to confuse and mislead the public into believing that Defendant's products are genuine Lorillard products or have been sponsored or approved by Lorillard. In fact, Defendant's counterfeit products have not been manufactured, packaged, approved, or sold by Lorillard. Scanned images depicting the use of the Lorillard Marks on the counterfeit cigarettes sold by Defendants can be seen in Exhibit 1 of the Declaration of Ed O'Brien and in the scanned images appearing on the right side of each of Exhibits 1 and 2 attached to this Complaint. Such actions of Defendant constitute the counterfeiting and infringement of the Lorillard Marks.

14. Lorillard has been damaged and is likely to be further damaged by Defendant's wrongful use of the Lorillard Marks in that the purchasing public is likely to be induced into purchasing Defendant's goods in the erroneous belief that they are Lorillard's authentic goods or that Defendant's goods are endorsed, sponsored, or approved by Lorillard, which they are not.

15. Defendant has profited from their wrongful conduct by selling cigarettes to persons in the United States who otherwise would have bought genuine NEWPORT® brand cigarettes manufactured by Lorillard.

5

## CLAIMS FOR RELIEF

### COUNT I

### TRADEMARK COUNTERFEITING AND INFRINGEMENT
### (15 U.S.C. §1114(1))

16.  Lorillard repeats and realleges paragraphs 1 through 15 as if fully set forth herein.

17.  The Lorillard Marks are fanciful and arbitrary, and are associated in the minds of the public and consumers with Lorillard.

18.  Defendant has used the Lorillard Marks on Defendant's cigarettes without the approval or consent of Lorillard.

19.  Defendant's use of counterfeit symbols, logos, likenesses, and images is likely to cause confusion in the minds of the public, leading the public to believe that Defendant's cigarettes emanate or originate from Lorillard and/or that Lorillard has approved, sponsored or otherwise associated itself with Defendant's cigarettes, which is false.

20.  Defendant's conduct is intended to exploit the goodwill and reputation associated with the Lorillard Marks and to take a competitive advantage without expenditure of resources, by a strategy of willful infringement.

21.  Lorillard has no control over the quality of the cigarettes sold by Defendant. Because of the likelihood of confusion as to the source of Defendant's products, Lorillard's valuable goodwill in its trademarks is at the mercy of Defendant.

22.  Defendant's aforesaid acts have caused and, unless such acts are restrained by this Court, will continue to cause great and irreparable injury to Lorillard.

23.  Lorillard has no adequate remedy at law.

24.     As a result of Defendant's actions, Lorillard has suffered, and will continue to suffer, money damages in an amount to be proven at trial.

## COUNT II

### UNFAIR COMPETITION AND FALSE DESIGNATIONS OF ORIGIN AND FALSE AND MISLEADING REPRESENTATIONS
### (15 U.S.C. §1125(a))

25.     Lorillard repeats and realleges paragraphs 1 through 15 and 17 through 25 as if set forth herein.

26.     The aforesaid acts of Defendant constitute the use in commerce in connection with the Defendant's goods of symbols and devices and of false designations of origin and false or misleading descriptions and representations in violation of 15 U.S.C. § 1125(a).

27.     Defendant's aforesaid acts have caused and, unless such acts are restrained by this Court, will continue to cause great and irreparable injury to Lorillard.

28.     Lorillard has no adequate remedy at law.

29.     As a result of Defendant's actions, Lorillard has suffered, and will continue to suffer, money damages in an amount to be proven at trial.

## COUNT III

### TRADEMARK DILUTION
### (15 U.S.C. § 1125(c))

30.     Lorillard repeats and realleges paragraphs 1 through 15, 17 through 24, and 26 through 29 as if set forth herein.

31.     Defendant's aforesaid acts are likely to dilute the distinctive quality of the famous Lorillard Marks, in violation of 15 U.S.C. § 1125(c).

32.     On information and belief, Defendant engaged in the aforesaid acts with

the intent to trade on Lorillard's reputation or to cause dilution of the famous Lorillard Marks.

33.     Defendant's aforesaid acts have caused and, unless such acts are restrained by this Court, will continue to cause great and irreparable injury to Lorillard.

34.     Lorillard has no adequate remedy at law.

35.     As a result of Defendant's actions, Lorillard has suffered, and will continue to suffer, money damages in an amount to be proven at trial.

## COUNT IV

### STATE TRADEMARK DILUTION
### (765 ILCS § 1036 et *seq.*)

36.     Lorillard repeats and realleges paragraphs 1 through 15, 17 through 24, 26 through 29, and 31 through 35 as if set forth herein.

37.     The Lorillard Marks have become, and continue to be, famous in the State of Illinois.

38.     Defendant's use of the Lorillard Marks in connection with the sale of Defendants' counterfeit cigarettes began after the Lorillard Marks became famous.

39.     Plaintiff can exercise no control, over the quality of the cigarettes in connection with which Defendant uses the Lorillard Marks and hence there a likelihood of injury to Plaintiff's business reputation and of dilution of the distinctive quality or Plaintiff's famous mark in violation of 765 ILCS § 1036/65.

40.     Defendant's acts alleged herein have caused and, unless restrained and enjoined by this Court, will continue to cause irreparable injury to Lorillard for which Lorillard is without an adequate remedy at law.

## COUNT V

## COMMON LAW UNFAIR COMPETITION

41.     Lorillard repeats and realleges paragraphs 1 through 15, 17 through 24, 26 through 29, 31 through 35, and 37 through 40 as if set forth herein.

42.     Defendant's use of the Lorillard Marks is being done with the intent to palm off its counterfeit cigarettes as originating from or having the sponsorship, affiliation or approval of Lorillard in order to trade on the goodwill created by Lorillard in the Lorillard Marks .

43.     Defendant's unauthorized use constitutes the common law tort of unfair competition.

44.     The aforesaid acts of Defendant constitute the sale and passing off of their products as Lorillard's products, infringement, imitation, and misappropriation of Lorillard's trademarks, unjust enrichment, and unfair competition with Lorillard in violation of Lorillard's rights at common law.

45.     Defendant's aforesaid acts have caused and, unless such acts are restrained by this Court, will continue to cause great and irreparable injury to Lorillard.

46.     Lorillard has no adequate remedy at law.

47.     Upon information and belief,  Defendant's conduct was oppressive, fraudulent, and malicious, entitling Lorillard to an award of punitive damages.

## COUNT VI

## STATUTORY DECEPTIVE TRADE PRACTICE
### (815 ILCS § 510/2 et. seq.)

48.     Lorillard repeats and realleges paragraphs 1 through 15, 17 through 24, 25 through 29, 31 through 35, 37 through 40, and 42 through 47 as if set forth herein.

9

49.    Defendant's use of the Lorillard Marks on cigarettes constitutes a deceptive trade practice in violation of 815 ILCS § 510/2 *et seq.* insofar as it:

(a)    passes off the Defendant's products as that of Lorillard;

(b)    causes a likelihood of confusion or misunderstanding as to the source, sponsorship, approval or certification of its goods;

(c)    causes a likelihood of confusion or of misunderstanding as to the affiliation, connection or association with or certification by Lorillard;

(d)    represents that Defendant's goods have sponsorship or approval that they do not have.

50.    Defendant's acts as stated above, constitute deceptive business practices in that as alleged previously, those acts in trade and commerce use and employ practices set out in Section 2 of the Uniform Deceptive Trade Practices Act, 815 ILCS 510/2, and/or constitute the use and/or employment of deception, fraud, false pretense, false promise, misrepresentation and/or the concealment, suppression and/or omission of a material fact, with an intent that others rely upon the concealment, suppression or omission of such material fact.

51.    Upon information and belief, Defendant has willfully engaged in the deceptive trade practices.

52.    Defendant's aforesaid acts have caused and, unless such acts are restrained by this Court, will continue to cause great and irreparable injury to Lorillard.

53.    Lorillard has no adequate remedy at law.

54.    Defendant's statutory violations and other wrongful acts have injured and threaten to continue to injure Lorillard, including loss of customers, dilution of goodwill,

confusion of existing and potential customers, injury to its reputation, and diminution in the value of its trademarks.

55.     Defendant has realized revenue and profits by virtue of their wrongful acts that they otherwise would not have obtained and to which they are not entitled.

56.     Lorillard has also been injured and will continue to incur attorneys' fees and costs in bringing the present action.

57.     Lorillard has no remedy at law for the wrongful actions of Defendant.

**WHEREFORE** Plaintiff Lorillard prays for judgment against Defendant as follows:

1.     That Defendant and its agents, servants, employees, attorneys, successors, and assigns, and any and all persons acting in concert or participating with them, or any of their successors or assigns, be preliminary and permanently enjoined and restrained from directly or indirectly:

a.     using the Lorillard Marks, or any reproduction, counterfeit, copy, or colorable imitation of said marks, in connection with the importation, sale, offer for sale, or distribution of cigarettes that are not genuine Lorillard cigarettes;

b.     using the Lorillard Marks, or any reproduction, counterfeit, copy, or colorable imitation of the same, in any manner likely to cause others to believe that Defendants' products are connected with Lorillard or are genuine Lorillard products;

c.     passing off, inducing, or enabling others to sell or pass off any merchandise which is not genuine Lorillard merchandise as genuine Lorillard merchandise;

d.     making any false or misleading statements regarding Lorillard or its

goods, or the relationship between Lorillard and Defendants;

e.     committing any other acts calculated to cause purchasers to believe that Defendants' products are genuine Lorillard products;

f.     shipping, delivering, holding for sale, importing, distributing, returning, transferring, or otherwise moving or disposing of in any manner such cigarettes or packaging falsely bearing one or more of the Lorillard Marks or any reproduction, counterfeit, copy, or colorable imitation of the same; and

g.     assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in the above subparagraphs (a) through (f).

2. That Defendant and any and all persons controlled by or acting in concert with Defendant be required to deliver to Lorillard for destruction all goods, packages, and any other written or printed materials that bear or depict the Lorillard Marks, or any reproduction, counterfeit, copy, or colorable imitation of the same, or anything other than genuine Lorillard cigarettes, or that are otherwise in violation of this Court's order issued pursuant hereto, and all means for making the same.

3. That Defendant be required to account to Lorillard for Defendant's profits from the sale of counterfeit and infringing cigarettes and for such sum in addition thereto as the Court shall find just.

4.     That this case be found exceptional and Lorillard awarded its attorneys fees pursuant to 15 U.S.C. § 1117(a).

5.     That Lorillard recover the damages arising out of Defendant's wrongful acts in a sum equal to three times the actual damages suffered by Lorillard, as provided

in 15 U.S.C. § 1117(b).

6. That Lorillard be awarded statutory damages in lieu of actual damages, as provided in 15 U.S.C. § 1117(c).

7. That Defendant be required to disgorge its profits and other ill-gotten gains.

8. That Lorillard have and recover taxable costs of this action, including reasonable attorney's fees and interest.

9. That Lorillard be awarded punitive damages in view of Defendant's wanton and deliberate illegal acts committed with oppression, fraud, or malice.

10. That Defendant be ordered to file with the Court and serve upon Lorillard, within thirty (30) days after the service of the injunction upon Defendant, a report in writing under oath setting forth in detail the manner and form in which Defendant has complied with the injunction and judgment entered pursuant to this Complaint.

11. That Lorillard be awarded such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff Lorillard demands a jury trial on all issues triable by a jury.

John S. Pacocha
Kevin D. Finger
Paul T. Fox
Attorneys for Plaintiff
Lorillard Tobacco Company

GREENBERG TRAURIG, P.C.
77 West Wacker Drive, Suite 2500
Chicago, Illinois 60601
(312) 456-8400
(312) 456-8435 (fax)

Dated: July _9_, 2003

\\chi-srv01\180071v01





Cover Sheet                                                    Page 1 of 2

*Cat 2*

**DOCKETED**

SEP 1 0 2003

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

## Civil Cover Sheet 03C 4753

This automated JS-44 conforms generally to the manual JS-44 approved by the Judicial Conference of the United States in September 1974. The data is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. The information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is authorized for use _only_ in the Northern District of Illinois.

JUDGE GOTTSCHALL

MAGISTRATE JUDGE ASHMAN

| | |
|---|---|
| **Plaintiff(s): LORILLARD TOBACCO COMPANY** | **Defendant(s):ELSTON SELF SERVICE WHOLESALE GROCERIES, INC.** |
| County of Residence: Guilford County, North Carolina | County of Residence: Cook County, Illinois |
| Plaintiff's Atty: John S. Pacocha Greenberg Traurig, P.C. 77 W. Wacker Dr., Ste 2500, Chicago, IL 60601 (312) 456-8400 | Defendant's Atty: |

<u>II. Basis of Jurisdiction</u>:    **3. Federal Question (U.S. not a party)**

<u>III. Citizenship of Principal Parties</u> **(Diversity Cases Only)**
          Plaintiff:-**N/A**
          Defendant:-**N/A**

<u>IV. Origin</u> :    **1. Original Proceeding**

<u>V. Nature of Suit</u>:    **840 Trademark**

<u>VI.Cause of Action</u>:    **15 U.S.C. 1114, et seq. Trademark Counterfeiting**

<u>VII. Requested in Complaint</u>
      Class Action:
      Dollar Demand:
      Jury Demand: **Yes**

<u>VIII.</u> This case **IS NOT** a refiling of a previously dismissed case.

Signature: _Jas S Pacocha_    _July 9, 2003_

Cover Sheet

Date: July 9, 2003

If any of this information is incorrect, please go back to the Civil Cover Sheet Input form using the *Back* button in your browser and change it. Once correct, print this form, sign and date it and submit it with your new civil action. **Note: You may need to adjust the font size in your browser display to make the form print properly.**
Revised: 06/28/00

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

In the Matter of

LORILLARD TOBACCO COMPANY,

Plaintiff,

v.

ELSTON SELF SERVICE WHOLESALE GROCERIES, INC.

Defendant.

**DOCKETED**

SEP 1 0 2003

Case Number: **03C 4753**

JUDGE GOTTSCHALL

MAGISTRATE JUDGE ASHMAN

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

| (A) | (B) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME  John S. Pacocha | NAME  Kevin D. Finger |
| FIRM  Greenberg Traurig, P.C. | FIRM  Greenberg Traurig, P.C. |
| STREET ADDRESS  77 W. Wacker Drive, Suite 2500 | STREET ADDRESS  77 W. Wacker Drive, Suite 2500 |
| CITY/STATE/ZIP  Chicago, IL 60601 | CITY/STATE/ZIP  Chicago, IL 60601 |
| TELEPHONE NUMBER 312-456-8400   FAX NUMBER 312-456-8435 | TELEPHONE NUMBER 312-456-8400   FAX NUMBER 312-456-8435 |
| E-MAIL ADDRESS pacochaj@gtlaw.com | E-MAIL ADDRESS Fingerk@gtlaw.com |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 2132826 | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 6216060 |
| MEMBER OF TRIAL BAR?   YES ☑   NO ☐ | MEMBER OF TRIAL BAR?   YES ☑   NO ☐ |
| TRIAL ATTORNEY?   YES ☑   NO ☐ | TRIAL ATTORNEY?   YES ☐   NO ☐ |
|  | DESIGNATED AS LOCAL COUNSEL?   YES ☐   NO ☐ |
| (C) | (D) |
| SIGNATURE | SIGNATURE |
| NAME  Paul T. Fox | NAME |
| FIRM  Greenberg Traurig, P.C. | FIRM |
| STREET ADDRESS  77 W. Wacker Drive, Suite 2500 | STREET ADDRESS |
| CITY/STATE/ZIP  Chicago, IL 60601 | CITY/STATE/ZIP |
| TELEPHONE NUMBER  312-456-8400   FAX NUMBER 312-456-8435 | TELEPHONE NUMBER   FAX NUMBER |
| E-MAIL ADDRESS foxp@gtlaw.com | E-MAIL ADDRESS |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 3121741 | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) |
| MEMBER OF TRIAL BAR?   YES ☑   NO ☐ | MEMBER OF TRIAL BAR?   YES ☐   NO ☐ |
| TRIAL ATTORNEY?   YES ☐   NO ☐ | TRIAL ATTORNEY?   YES ☐   NO ☐ |
| DESIGNATED AS LOCAL COUNSEL?   YES ☐   NO ☐ | DESIGNATED AS LOCAL COUNSEL?   YES ☐   NO ☐ |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

LORILLARD TOBACCO COMPANY,
a Delaware corporation,

    Plaintiff,

        v.

ELSTON SELF SERVICE WHOLESALE
GROCERIES, INC., an Illinois corporation,
and MASHHOUR DUKUM, a/k/a MIKE
DUKUM, IBRAHIM DUKUM, and DAVID
DUKUM, individuals,

    Defendants.

        v.

CAM-KAT, INC., an Illinois Corporation,

    Third-Party Defendant.

Civil Action No. 03C 4753

Judge J. Gottschall

Magistrate Judge M. Ashman

**JURY DEMANDED**

EXHIBIT

**A**

## AMENDED COMPLAINT

Plaintiff Lorillard Tobacco Company ("Lorillard") complains of Defendants Elston Self Service Wholesale Groceries, Inc., a/k/a Elston Self Service, and of Mashhour "Mike" Dukum, David Dukum and Ibrahim Dukum as follows:

### THE PARTIES

1.    Plaintiff Lorillard Tobacco Company is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 714 Green Valley Road, Greensboro, North Carolina.

2.    Upon information and belief, Defendant Elston Self Service Wholesale Groceries, Inc. ("Elston Wholesale") is an Illinois corporation with a place of business at 3761 North Elston, Chicago, Illinois at which it is also known as Elston Self Service. It has sold and offered for sale within this District counterfeit cigarettes that infringe Lorillard's registered trademarks.

3. Upon information and belief, Defendant Mashhour "Mike" Dukum is the principal officer and controlling shareholder of Elston. "Mike" Dukum was personally responsible for the purchase, sale, offer for sale and distribution within this District of counterfeit cigarettes that infringe Lorillard's registered trademarks. "Mike" Dukum was also personally responsible for the instances of "buydown fraud" described in this Amended Complaint.

4. Upon information and belief, Defendants Ibrahim Dukum and David Dukum are the sons of "Mike" Dukum, and are both employees of Elston Wholesale. Ibrahim Dukum and David Dukum are personally responsible for at least the instances of "buydown fraud" described in this Complaint.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 1338(a), 1338(b), and 15 U.S.C. § 1121, as it involves substantial claims arising under the United States Trademark Act of 1946, commonly known as the Lanham Act, 15 U.S.C. § 1051 et seq., together with related claims under state law. This Court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. §§ 1331, 1338(a) and 15 U.S.C. § 1121, and has subject matter jurisdiction over the state law claims under 28 U.S.C. §§ 1338(b), and since these claims are joined with substantial and related claims under the Trademark Laws of the United States.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) (1) and (b) (2) in that, among other things, a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district. Venue properly lies within the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b) and (c) as these causes of action arise based upon information and belief, as a result of the Defendants' doing and transacting business in this district, or offering to sell its products or making its products available or by promoting the

2

infringing mark to prospective purchasers within this district, and marketing their services and products to prospective purchasers within this District.

7.    This Court has personal jurisdiction over Defendants, who reside in and/or conduct business within the State of Illinois.

## NATURE OF ACTION

8.    This is an action for counterfeiting and infringement of registered trademarks in violation of the Trademark Act of 1946, 15 U.S.C. § 1114(1); the use of false designations of origin and false and misleading descriptions and representations in violation of the Trademark Act of 1946, 15 U.S.C. § 1125(a); dilution in violation of the Trademark Act of 1946, 15 U.S.C., § 1125(c); dilution in violation of 765 ILCS § 1036/65; deceptive trade practices in violation of the common law of the State of Illinois; statutory unfair competition in violation of 765 ILCS § 510/2 et seq.; common law fraud; and inducement to commit fraud.

## FACTS - COUNTERFEITING

9.    Lorillard is the fourth largest tobacco company in the United States, manufacturing and selling top quality branded cigarettes. All of Lorillard's cigarettes are manufactured in accordance with strict quality control standards, enabling Lorillard to establish and maintain, over many years, a reputation among smokers for quality and consistency.

10.    Lorillard's leading brand is NEWPORT®, which was first introduced to the market in 1956. Since then, Lorillard has invested substantial time, effort and money in advertising and promoting cigarettes under the NEWPORT® mark throughout the United States. As a result of Lorillard's excellent reputation and investment in its brands, NEWPORT® cigarettes have become the leading brand of menthol cigarettes sold in the United States, and the second leading cigarette brand overall, with approximately eight percent of the national market.

3

The NEWPORT® mark has come to represent an extremely valuable asset belonging exclusively to Lorillard.

11.   To protect its company reputation and product investments, Lorillard has filed for and obtained federal trademark registrations have been obtained for significant trademarks. More *specifically, Lorillard has the exclusive right to use, and the right to enforce the rights to, the* marks NEWPORT® (Reg. No. 1,108,876), NEWPORT® (stylized) (Reg. No. 2,600,870), LORILLARD® (Reg. No. 1,920,066), Spinnaker Design® (Reg. No. 1,178,413), and NEWPORT and Design® (Reg. No. 1,191,816). Copies of the United States Patent and Trademark Office records of registration for these marks are attached as Exhibits 1-5, respectively to the Declaration of Victor Lindsley, and together they are referred to herein as the "Lorillard Marks." Lorillard has the exclusive right to use the Lorillard Marks in connection with any importation, sale, offer to sell, or distribution of cigarettes in the United States. Lorillard's manner of use of the Lorillard Marks can be seen from the scanned images of the front and sides of the genuine sample NEWPORT® cigarette pack, appearing on the left side of each of Exhibits 1 and 2 attached to this Complaint .

12.   The Lorillard Marks have become famous.

13.   Upon information and belief, Defendants have been aware, since prior to the acts complained of herein, of the vast goodwill represented and symbolized in the Lorillard Marks and of the public recognition and reliance upon the Lorillard Marks as identifying authentic products of Lorillard and distinguishing Lorillard's products from the products of others.

14.   Notwithstanding its aforesaid knowledge, upon information and belief, Defendants recently set upon a course of conduct to misappropriate the Lorillard Marks and goodwill associated with them. Over the past several years, the federal government and the State

of Illinois have substantially increased taxes on cigarette sales. With these high tax levels, bootleggers can price counterfeit cigarettes below prevailing market prices and can pocket not only the profit on the cigarettes themselves but also a substantial portion of what would otherwise be owed to the government in taxes. To that end, an increasing number of counterfeit cigarettes have been imported into the United States and distributed in interstate commerce, all in violation of federal and state laws and in contravention of Lorillard's trademark rights.

15. Upon information and belief, Defendants offered for sale and sold counterfeit products bearing the Lorillard Marks, with the intent to confuse and mislead the public into believing that Defendants' products are genuine Lorillard products or have been sponsored or approved by Lorillard. In fact, Defendants' counterfeit products have not been manufactured, packaged, approved, or sold by Lorillard. Scanned images depicting the use of the Lorillard Marks on the counterfeit cigarettes sold by Defendants can be seen in Exhibit 1 of the Declaration of Ed O'Brien and in the scanned images appearing on the right side of each of Exhibits 1 and 2 attached to this Complaint. Such actions of Defendants constitute the counterfeiting and infringement of the Lorillard Marks.

16. Lorillard has been damaged and is likely to be further damaged by Defendants' wrongful use of the Lorillard Marks in that the purchasing public is likely to be induced into purchasing Defendants' goods in the erroneous belief that they are Lorillard's authentic goods or that Defendants' goods are endorsed, sponsored, or approved by Lorillard, which they are not.

17. Defendants have profited from their wrongful conduct by selling cigarettes to persons in the United States who otherwise would have bought genuine NEWPORT® brand cigarettes manufactured by Lorillard.

## FACTS – BUYDOWN FRAUD

18.  Elston Wholesale is a grocery wholesale business. Elston purchases candy, pop, cigarettes and other sundries from other wholesalers or distributors such as Eby-Brown. Elston then places these products on its own shelves and sells them at a markup. Elston Wholesale bills itself as a "wholesale" business and markets its goods to other retailers, such as convenience stores, gas stations and the like.

19.  Lorillard occasionally engages in promotions with cigarette retailers, some of which are commonly referred to as "buydown" promotions. Particularly, Lorillard sales representatives occasionally visit cigarette retailers and offer to pay the retailers a cash rebate for each pack of cigarettes the retailer sells to consumers. In return, the retailer agrees to sell cigarette packs at a reduced price. Retailers further agree not to sell more than two (2) cartons of such discounted cigarettes to any given consumer in a single purchase. Buydown promotions are well known in the industry, and other cigarette manufacturers make frequent use of them.

20.  Lorillard relies on retailers' invoices for cigarette purchases to determine the amount of the rebate to be paid. Retailers purchasing cigarettes from distributors, or wholesalers such as Elston Wholesale, must obtain a detailed receipt expressly identifying the brand and type of cigarettes purchased. The retailers then show that receipt to their Lorillard sales representative as proof of the number of cartons of cigarettes they have purchased, and presumably then resold to consumers.

21.  Retailers have found ways to defraud such buydown promotions. Particularly, retailers have found it relatively easy to forge the invoices provided by wholesalers like Elston Wholesale. To combat this fraud, Lorillard and other cigarette manufacturers require wholesalers to report their sales directly to Lorillard via a computerized reporting system. This

6

1-05-1996 3:14PM

06/11/2004 14:30 FAX 31222 13     PFEIFFER&ADAMS     P.2

@06

computerized reporting system allows Lorillard to compare the wholesaler's report to the invoices presented by the retailer, thus providing a method for detecting forgeries.

22. On information and belief, Elston Wholesale knowingly and willfully manipulates the computerized reporting system to "pad" retailers' invoices, to mislead Lorillard into believing that the retailers had purchased more cigarettes than they had in fact purchased. Particularly, Elston Wholesale reports to Lorillard that it sold a quantity of NEWPORT® cigarettes to particular retailers that is greater than the actual quantity of NEWPORT® cigarettes sold to those retailers. Elston Wholesale also provides these retailers with invoices which show a quantity of NEWPORT® cigarettes which is greater than the actual quantity of NEWPORT® cigarettes purchased by these retailers. This "padding" results in Lorillard paying retailers a larger rebate than they should be entitled to receive.

23. On information and belief, this "padding" allows Elston Wholesale to increase its customer base. Because Elston Wholesale sells cigarettes at prices higher than those available to cigarette retailers through other wholesalers or distributors like Sam's, Costco and Eby-Brown, the "padded" invoices provide an incentive for cigarette retailers to purchase cigarettes at Elston Wholesale at the higher price.

24. On information and belief, "Mike" Dukum and his sons, Ibrahim Dukum and David Dukum knowingly and willfully "pad" Elston Wholesale's invoices and the computerized reporting system.

25. On information and belief, retailers have also been engaging in another type of fraud. During the summer of 2003, for example, retailers paid approximately forty dollars ($40) per carton for NEWPORT® cigarettes. The cash rebate provided to retailers by Lorillard reduces their per-carton price of cigarettes by approximately ten dollars ($10) per carton, to



about thirty dollars ($30) per carton. On information and belief, these retailers have been purchasing more cartons of cigarettes than they are able to sell. These same retailers then sell substantial quantities of these extra cartons to third parties such as 14M International, Inc. for a price such as thirty-four dollars ($34) per carton. Such third parties then resell these "bought-down" cartons of cigarettes to wholesalers like Elston Wholesale for a somewhat higher price such as thirty-six dollars ($36) per carton – cheaper than the price Elston Wholesale usually pays for NEWPORT® cigarettes. Elston Wholesale in turn then again sells these cartons to retailers, causing Lorillard to pay another buydown promotion on cartons of cigarettes for which the buydown promotion has already been paid. This practice also increases the likelihood that these recirculated cartons of cigarettes will become stale before they reach consumers.

## CLAIMS FOR RELIEF

### COUNT 1
### TRADEMARK COUNTERFEITING AND INFRINGEMENT
### (15 U.S.C. §1114(1))

26. Lorillard repeats and realleges paragraphs 1 through 25 as if fully set forth herein.

27. The Lorillard Marks are fanciful and arbitrary, and are associated in the minds of the public and consumers with Lorillard.

28. Defendant has used the Lorillard Marks on Defendants' cigarettes without the approval or consent of Lorillard.

29. Defendants' use of counterfeit symbols, logos, likenesses, and images is likely to cause confusion in the minds of the public, leading the public to believe that Defendants' cigarettes emanate or originate from Lorillard and/or that Lorillard has approved, sponsored or otherwise associated itself with Defendants' cigarettes, which is false.

8

30.     Defendants' conduct is intended to exploit the goodwill and reputation associated with the Lorillard Marks and to take a competitive advantage without expenditure of resources, by a strategy of willful infringement.

31.     Lorillard has no control over the quality of the cigarettes sold by Defendant. Because of the likelihood of confusion as to the source of Defendants' products, Lorillard's valuable goodwill in its trademarks is at the mercy of Defendant.

32.     Defendants' aforesaid acts have caused and, unless such acts are restrained by this Court, will continue to cause great and irreparable injury to Lorillard.

33.     Lorillard has no adequate remedy at law.

34.     As a result of Defendants' actions, Lorillard has suffered, and will continue to suffer, money damages in an amount to be proven at trial.

## COUNT II
### UNFAIR COMPETITION AND FALSE DESIGNATIONS OF ORIGIN AND FALSE AND MISLEADING REPRESENTATIONS
### (15 U.S.C. §1125(A))

35.     Lorillard repeats and realleges paragraphs 1 through 34 as if set forth herein.

36.     The aforesaid acts of Defendant constitute the use in commerce in connection with the Defendants' goods of symbols and devices and of false designations of origin and false or misleading descriptions and representations in violation of 15 U.S.C. § 1125(a).

37.     Defendants' aforesaid acts have caused and, unless such acts are restrained by this Court, will continue to cause great and irreparable injury to Lorillard.

38.     Lorillard has no adequate remedy at law.

39.     As a result of Defendants' actions, Lorillard has suffered, and will continue to suffer, money damages in an amount to be proven at trial.

9

## COUNT III
### TRADEMARK DILUTION
### (15 U.S.C. § 1125(C))

40.     Lorillard repeats and realleges paragraphs 1 through 39 as if set forth herein.

41.     Defendants' aforesaid acts are likely to dilute the distinctive quality of the famous Lorillard Marks, in violation of 15 U.S.C. § 1125(c).

42.     On information and belief, Defendant engaged in the aforesaid acts with the intent to trade on Lorillard's reputation or to cause dilution of the famous Lorillard Marks.

43.     Defendants' aforesaid acts have caused and, unless such acts are restrained by this Court, will continue to cause great and irreparable injury to Lorillard.

44.     Lorillard has no adequate remedy at law.

45.     As a result of Defendants' actions, Lorillard has suffered, and will continue to suffer, money damages in an amount to be proven at trial.

## COUNT IV
### STATE TRADEMARK DILUTION
### (765 ILCS § 1036 ET SEQ.)

46.     Lorillard repeats and realleges paragraphs 1 through 45 as if set forth herein.

47.     The Lorillard Marks have become, and continue to be, famous in the State of Illinois.

48.     Defendants' use of the Lorillard Marks in connection with the sale of Defendants' counterfeit cigarettes began after the Lorillard Marks became famous.

49.     Plaintiff can exercise no control, over the quality of the cigarettes in connection with which Defendant uses the Lorillard Marks and hence there a likelihood of injury to Plaintiff's business reputation and of dilution of the distinctive quality or Plaintiff's famous mark in violation of 765 ILCS § 1036/65.

10

50.    Defendants' acts alleged herein have caused and, unless restrained and enjoined by this Court, will continue to cause irreparable injury to Lorillard for which Lorillard is without an adequate remedy at law.

## COUNT V
## COMMON LAW UNFAIR COMPETITION

51.    Lorillard repeats and realleges paragraphs 1 through 50 as if set forth herein.

52.    Defendants' use of the Lorillard Marks is being done with the intent to palm off its counterfeit cigarettes as originating from or having the sponsorship, affiliation or approval of Lorillard in order to trade on the goodwill created by Lorillard in the Lorillard Marks.

53.    Defendants' unauthorized use constitutes the common law tort of unfair competition.

54.    The aforesaid acts of Defendant constitute the sale and passing off of their products as Lorillard's products, infringement, imitation, and misappropriation of Lorillard's trademarks, unjust enrichment, and unfair competition with Lorillard in violation of Lorillard's rights at common law.

55.    Defendants' aforesaid acts have caused and, unless such acts are restrained by this Court, will continue to cause great and irreparable injury to Lorillard.

56.    Lorillard has no adequate remedy at law.

57.    Upon information and belief, Defendants' conduct was oppressive, fraudulent, and malicious, entitling Lorillard to an award of punitive damages.

## COUNT VI
## STATUTORY DECEPTIVE TRADE PRACTICE
## (815 ILCS § 510/2 ET. SEQ.)

58.    Lorillard repeats and realleges paragraphs 1 through 57 as if set forth herein.

11

59.     Defendants' use of the Lorillard Marks on counterfeit cigarettes constitutes a deceptive trade practice in violation of 815 ILCS § 510/2 et seq. insofar as it:

(i)     passes off the Defendants' products as that of Lorillard;

(ii)    causes a likelihood of confusion or misunderstanding as to the source, sponsorship, approval or certification of its goods;

(iii)   causes a likelihood of confusion or of misunderstanding as to the affiliation, connection or association with or certification by Lorillard;

(iv)    represents that Defendants' goods have sponsorship or approval that they do not have.

Defendant's purchase and resale of cartons of NEWPORT® cigarettes on which Lorillard has already paid a buy-down promotion constitutes a deceptive trade practice in violation of 815 ILCS § 510/2 et seq. insofar as it:

(i)     represents that Defendants' goods are original, new or fresh when they are in fact deteriorated, altered, reclaimed and secondhand;

(ii)    makes false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions; and

(iii)   engages in other conduct which similarly creates a likelihood of confusion or misunderstanding.

60.     Defendants' acts as stated above, constitute deceptive business practices in that as alleged previously, those acts in trade and commerce use and employ practices set out in Section 2 of the Uniform Deceptive Trade Practices Act, 815 ILCS 510/2, and/or constitute the use and/or employment of deception, fraud, false pretense, false promise, misrepresentation and/or

the concealment, suppression and/or omission of a material fact, with an intent that others rely upon the concealment, suppression or omission of such material fact.

61.    Upon information and belief, Defendant has willfully engaged in the deceptive trade practices.

62.    Defendants' aforesaid acts have caused and, unless such acts are restrained by this Court, will continue to cause great and irreparable injury to Lorillard.

63.    Lorillard has no adequate remedy at law.

64.    Defendants' statutory violations and other wrongful acts have injured and threaten to continue to injure Lorillard, including loss of customers, dilution of goodwill, confusion of existing and potential customers, injury to its reputation, and diminution in the value of its trademarks.

65.    Defendant has realized revenue and profits by virtue of their wrongful acts that they otherwise would not have obtained and to which they are not entitled.

66.    Lorillard has also been injured and will continue to incur attorneys' fees and costs in bringing the present action.

67.    Lorillard has no remedy at law for the wrongful actions of Defendants.

## COUNT VII
## COMMON LAW FRAUD

68.    Lorillard repeats paragraphs 1-67 as if set forth herein.

69.    On information and belief, Defendants falsely inflated their reports of NEWPORT® cigarette sales to Lorillard, and such reports constitute a material misrepresentation made by Defendants to Lorillard.

70.    Lorillard reasonably relied on Defendants' false sales reports in calculating the amount of the buydown promotion rebate to be paid to various retailers.  On information and

1-05- Case: 1:04-cv-06536 Document #: 1 Filed: 10/08/04 Page 51 of 170 PageID #:51
08/11/2004 14:30 FAX 312223  3      PFEIFFER&ADAMS        P. 5
⑫12

belief, because Defendants falsely inflated these reports, Lorillard paid retailers more than they were entitled to receive.

71.    Defendants have realized revenue and profits by virtue of their wrongful acts that they otherwise would not have obtained and to which they are not entitled.

72.    Lorillard has also been injured and will continue to incur attorneys' fees and costs in bringing the present action.

73.    Lorillard has no remedy at law for the wrongful actions of Defendants.

## COUNT VIII
## INDUCEMENT TO COMMIT FRAUD

74.    Lorillard repeats and realleges paragraphs 1-73 as if set forth herein.

75.    On information and belief, Defendants have conspired with others to commit fraud. Particularly, Defendants have aided and abetted various retailers to defraud Lorillard's buydown program. More particularly, Defendants agreed to provide retailers with false, inflated invoices, which the retailers use to obtain fraudulent rebates through Lorillard's buydown promotions. In exchange, those same retailers agree to give Elston Wholesale most of their cigarette-purchasing business, thereby increasing Elston Wholesale'S sales volume.

76.    On information and belief, Defendants further conspired with third parties to recirculate previously "bought down" cartons of cigarettes by agreeing to purchase previously "bought down" cigarettes.

77.    On information and belief, Defendants' actions induced others, including retailers and third parties mentioned in this Complaint, to defraud Lorillard's buydown program by creating a market for "buydown" cigarettes.

WHEREFORE Plaintiff Lorillard prays for judgment against Defendants as follows:

78.    That Defendants and their agents, servants, employees, attorneys, successors, and

assigns, and any and all persons acting in concert or participating with ....m, or any of their successors or assigns, be preliminary and permanently enjoined and restrained from directly or indirectly:

    a.    using the Lorillard Marks, or any reproduction, counterfeit, copy, or colorable imitation of said marks, in connection with the importation, sale, offer for sale, or distribution of cigarettes that are not genuine Lorillard cigarettes;

    b.    using the Lorillard Marks, or any reproduction, counterfeit, copy, or colorable imitation of the same, in any manner likely to cause others to believe that Defendants' products are connected with Lorillard or are genuine Lorillard products;

    c.    passing off, inducing, or enabling others to sell or pass off any merchandise which is not genuine Lorillard merchandise as genuine Lorillard merchandise;

    d.    making any false or misleading statements regarding Lorillard or its goods, or the relationship between Lorillard and Defendants;

    e.    committing any other acts calculated to cause purchasers to believe that Defendants' products are genuine Lorillard products;

    f.    shipping, delivering, holding for sale, importing, distributing, returning, transferring, or otherwise moving or disposing of in any manner such cigarettes or packaging falsely bearing one or more of the Lorillard Marks or any reproduction, counterfeit, copy, or colorable imitation of the same;

    g.    providing false inflated sales reports to Lorillard;

15

h.    providi    invoices showing false inflated sales of L    lard cigarettes to retailers;

i.    purchasing "bought-down" Lorillard cigarettes; and

j.    assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in the above subparagraphs (a) through (g).

79.    That Defendants and any and all persons controlled by or acting in concert with Defendants be required to deliver to Lorillard for destruction all goods, packages, and any other written or printed materials that bear or depict the Lorillard Marks, or any reproduction, counterfeit, copy, or colorable imitation of the same, or anything other than genuine Lorillard cigarettes, or that are otherwise in violation of this Court's order issued pursuant hereto, and all means for making the same.

80.    That Defendant be required to account to Lorillard for Defendants' profits from the sale of counterfeit and infringing cigarettes as well as from the sale of "bought-down" cigarettes and for such sum in addition thereto as the Court shall find just.

81.    That this case be found exceptional and Lorillard awarded its attorneys fees pursuant to 15 U.S.C. § 1117(a).

82.    That Lorillard recover the damages arising out of Defendants' wrongful acts in a sum equal to three times the actual damages suffered by Lorillard, as provided in 15 U.S.C. § 1117(b).

83.    That Lorillard be awarded statutory damages in lieu of actual damages, as provided in 15 U.S.C. § 1117(c).

84.    That Defendants be required to disgorge its profits and other ill-gotten gains.

85. That Lorillard have and recover taxable costs of this action, including reasonable attorney's fees and interest.

86. That Lorillard be awarded punitive damages in view of Defendants' wanton and deliberate illegal acts committed with oppression, fraud, or malice.

87. That Defendants be ordered to file with the Court and serve upon Lorillard, within thirty (30) days after the service of the injunction upon Defendants, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction and judgment entered pursuant to this Complaint.

88. That Lorillard be awarded such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff Lorillard demands a jury trial on all issues triable by a jury.

John S. Pacocha
Cameron M. Nelson
Jeffrey G. Mote
Attorneys for Plaintiff
Lorillard Tobacco Company

GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 2500
Chicago, Illinois 60601
(312) 456-8400
(312) 456-8435 (fax)

Dated:  July 15, 2004

chi-srv-01\402566v01

18

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS—EASTERN DIVISION

LORILLARD TOBACCO COMPANY )
A Delaware Corporation, )
                            Plaintiff; )
       v. )
ELSTON SELF SERVICE )
WHOLESALE GROCERIES, INC., )
                       Defendants; )
_____ )
 )
ELSTON SELF SERVICE WHOLESALE )
GROCERIES, INC., )
             Third Party Plaintiff; )
 v. )
CANSTAR (U.S.A.), a Florida Corporation )
and CAM-KAT, INC., an Illinois )
Corporation, )
          Third Party Defendant,)
_____ )

No. 03 C 4753

Judge Gottschall
Magistrate Judge Ashman

FILED

MAR 2 5 2004

JUDGE JOAN B. GOTTSCHALL
United States District Court

DOCKETED
MAR 3 0 2004

FILED
MAR 2 5 2004
JUDGE JOAN B. G.
United States

## THIRD PARTY COMPLAINT

NOW COMES the DEFENDANT, ELSTON SELF SERVICE WHOLESALE
GROCERIES, INC., and complains of the THIRD PARTY DEFENDANTS, CANSTAR
(U.S.A) INC., A FLORIDA CORPORATION AND CAM-KAT, INC., AN ILLINOIS
CORPORATION, as follows:

    1.    The Complaint in this case arises from the alleged sale of counterfeit
cigarettes by the Defendant.

    2.    Defendant neither manufactures nor stamps cigarettes.

    3.    Defendant has neither the capacity nor the legal authority to manufacture
or stamp cigarettes.

    4.    All of the allegedly counterfeit cigarettes at issue in this case were
purchased from Third Party Defendants Canstar (U.S.A) Inc., a Florida Corporation
and/or Cam-Kat, Inc., an Illinois corporation.

    5.    In the event that this Court finds that the cigarettes in question were
counterfeit and enters a judgment against Defendant Elston Self Service Wholesale
Groceries, Inc., then any damages obtained thereunder would be solely attributable to the
actions of Third-Party Defendants Canstar (U.S.A) Inc., a Florida Corporation and/or
Cam-Kat, Inc., an Illinois corporation.

31

WHEREFORE, in the event that this Court enters a judgment against DEFENDANT, ELSTON SELF SERVICE WHOLESALE GROCERIES, INC., DEFENDANT ELSTON SELF SERVICE WHOLESALE GROCERIES, INC., prays this court enter a judgment in its favor and against the THIRD PARTY DEFENDANTS, CANSTAR (U.S.A) INC., A FLORIDA CORPORATION AND CAM-KAT, INC., AN ILLINOIS CORPORATION, jointly and severally in a like amount.

Respectfully submitted,

Attorney for Defendant

J. Thomas Witek
Witek Law Offices
5600 N. River Rd, Suite 800
Rosemont, IL 60018
(847) 635-8600



**CAPITOL** INSURANCE COMPANIES

4610 University Avenue • P.O. Box 5900 • Madison WI 53705–0900
Phone: (608) 231-4450 • Toll Free: (800) 475-4450 • capitolindemnity.com

CAPITOL
INDEMNITY
CORPORATION

CAPITOL
SPECIALTY
INSURANCE
CORPORATION

PLATTE RIVER
INSURANCE
COMPANY

## CERTIFICATION

Based solely on the information available in the underwriting file maintained by Capitol Indemnity Corporation for Policy Number <u>BP00044456</u>, <u>David Schirmer,</u> Underwriting Manager, - Property & Casualty Department of Capitol Indemnity Corporation, certify that the attached policy issued to <u>Elston Self Service</u> is a true and correct copy of the policy effective <u>July 14, 2002</u> including all applicable forms, as prepared from the documents available from the underwriting file

_(signature)_

**David Schirmer, CIC, CSIC**
Underwriting Manager
Property & Casualty Underwriting Department

STATE OF WISCONSIN )
) ss.
COUNTY OF DANE )

David Schirmer, Underwriting Manager - Property & Casualty Underwriting Department of Capitol Indemnity Corporation personally came before me ____ day of July, 2004 and executed this certification in his capacity as an employee of the corporation.

Notary Public
My commission expires: is permanent

PROPERTY
CASUALTY
SURPLUS LINES
COMMERCIAL SURETY
CONTRACT SURETY

Capitol Indemnity Corporation
P.O. Box 5900, Madison, WI 53705

# CIC PREMIUM PAYMENT PLAN

☐ Three Payment Plan     ☒ Six Payment Plan

THIS ENDORSEMENT MODIFIES THE PREMIUM PAYMENTS OF THIS POLICY AS
DESCRIBED BELOW:

THIS ENDORSEMENT EFFECTIVE:  07/14/2002 ____  (12:01 A.M. Standard
time)

FORMS A PART OF POLICY NO: BP00044456 _____

NAMED INSURED: ELSTON SELF SERVICE _____

AGENCY: UNIFIED INSURANCE SERVICES INC _____

AGENCY CODE: 05950 _____

| Due Date | Installment No. | Premium | Service Premium | Total |
|----------|-----------------|---------|-----------------|-------|
| 07/14/02 | 1 | $1706.75 | -0- | $1706.75 |
| 08/14/02 | 2 | $1024.05 | $5.00 | $1029.05 |
| 09/14/02 | 3 | $1024.05 | $5.00 | $1029.05 |
| 10/14/02 | 4 | $1024.05 | $5.00 * | $1029.05 |
| 11/14/02 | 5 | $1024.05 | $5.00 * | $1029.05 |
| 12/14/02 | 6 | $1024.05 | $5.00 * | $1029.05 |

* Only applies if 6 Pay Plan

CGE 139 (06-96)

Capitol Indemnity Corporation
P.O. Box 5900
Madison, WI 53705

# NOTICE TO POLICYHOLDERS

## RESTRICTIONS OF COVERAGE

This notice has been prepared in conjunction with the implementation of changes to your policy. It contains a brief synopsis of any significant broadenings, restrictions and clarifications of coverage that were made in each policy form and endorsement.

Please read your policy, and the endorsements attached to your policy, carefully.

**CG 21 69 (01 02)-- War Or Terrorism Exclusion** (Commercial General Liability Coverage Part)*
**CG 31 42 (01 02)-- War Or Terrorism Exclusion** (Owners and Contractors Protective Liability and Products/Completed Operations Liability Coverage Part)

When this endorsement is attached to your policy:

- Coverage for bodily injury liability, property damage liability and personal and advertising injury liability* arising out of war is excluded.
- Coverage for bodily injury liability, property damage liability and personal and advertising injury liability* arising out terrorism is excluded only if:
  - The total of all damage to all types of property (including business interruption losses sustained by owners or occupants of damaged property), from a terrorism incident exceeds $25 million. The $25 million property damage threshold is based on losses sustained by all persons and entities who are affected by an incident of terrorism, whether or not the losses are insured; or
  - Fifty or more persons sustain death or serious physical injury; or

  *(In applying the thresholds for property damage ($25 million) and death or serious physical injury (50 or more persons), multiple incidents of terrorism which occur within a seventy-two hour period and appear to be linked together or have a related purpose or common leadership behind them shall be considered to be one incident of terrorism.)*

  - The terrorism event involves nuclear materials or results in nuclear reaction or radiation or radioactive contamination; or
  - The terrorism event is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or
  - The terrorism event involves the release of pathogenic or poisonous biological or chemical materials, and it appears that one purpose of the terrorism was to release such materials.

Multiple incidents of "terrorism" which occur within a seventy-two hour period and appear to be linked together or have a related purpose or common leadership behind them shall be considered to be one incident of "terrorism".

*Personal and advertising injury liability references apply to the Commercial General Liability Coverage Part only.

CCU 370 (01-02)-- War Or Terrorism Exclusion (Commercial Liability Umbrella Coverage Part)

When this endorsement is attached to your policy:

- Coverage for bodily injury liability, property damage liability and personal and advertising injury liability arising out of war is excluded.
- Coverage for bodily injury liability, property damage liability and personal and advertising injury liability arising out of terrorism is excluded only if:
  - The total of all damage to all types of property (including business interruption losses sustained by owners or occupants of damaged property), from a terrorism incident exceeds $25 million. The $25 million property damage threshold is based on losses sustained by all persons and entities who are affected by an incident of terrorism, whether or not the losses are insured; or
  - Fifty or more persons sustain death or serious physical injury; or

  *(In applying the thresholds for property damage ($25 million) and death or serious physical injury (50 or more persons), multiple incidents of terrorism which occur within a seventy-two hour period and appear to be linked together or have a related purpose or common leadership behind them shall be considered to be one incident of terrorism.)*

  - The terrorism event involves nuclear materials or results in nuclear reaction or radiation or radioactive contamination; or
  - The terrorism event is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or
  - The terrorism event involves the release of pathogenic or poisonous biological or chemical materials, and it appears that one purpose of the terrorism was to release such materials.

Multiple incidents of "terrorism" which occur within a seventy-two hour period and appear to be linked together or have a related purpose or common leadership behind them shall be considered to be one incident of "terrorism".


**IL 09 41 (01 02) -- Exclusion of War, Military Action And Terrorism** (Boiler And Machinery, Crime, Commercial Inland Marine, Commercial Property and Farm Coverage Parts; and Standard Property Policy)
**BP 05 11 (01 02) -- Exclusion of War, Military Action And Terrorism** (Businessowners Policy)

When this endorsement is attached to your policy:

- Coverage for loss or damage arising out of war, warlike action and similar events is excluded under all coverage forms and policies. Previously, the War And Military Action exclusion applied to all coverage forms and policies except the Commercial Property - Legal Liability Coverage Form.
- Coverage for loss or damage arising out terrorism is excluded only if:
  - The total of all damage to all types of property (including business interruption losses sustained by owners or occupants of damaged property), from a terrorism incident exceeds $25 million. The $25 million property damage threshold is based on losses sustained by all persons and entities who are affected by an incident of terrorism, and who are insured for the damage, or who would be insured but for a terrorism exclusion; or

  *(In applying the threshold for property damage ($25 million), multiple incidents of terrorism which occur within a seventy-two hour period and appear to be linked together or have a related purpose or common leadership behind them shall be considered to be one incident of terrorism.)*

- The terrorism event involves nuclear materials or results in nuclear reaction or radiation or radioactive contamination; or
- The terrorism event is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or
- The terrorism event involves the release of pathogenic or poisonous biological or chemical materials, and it appears that one purpose of the terrorism was to release such materials.

See the definition of terrorism for purposes of the terrorism exclusion.

**BP 05 13 (01 02) – War Or Terrorism Exclusion (Liability Endorsement)** (Businessowners Liability Coverage Form)

When this endorsement is attached to your policy:

- Coverage is excluded for bodily injury, property damage liability, personal injury, advertising injury and medical payments arising out of war, warlike action and similar events. Previously, the War exclusion under the Businessowners Liability Coverage Form applied only to contractually assumed liability arising out of such events and to medical payments coverage. Previously, the War exclusion under the Farm Liability Coverage Form applied only to medical payments coverage.
- Coverage for bodily injury, property damage liability, personal injury, advertising injury and medical payments arising out terrorism is excluded only if:
- The total of all damage to all types of property (including business interruption losses sustained by owners or occupants of damaged property), from a terrorism incident exceeds $25 million. The $25 million property damage threshold is based on losses sustained by all persons and entities who are affected by an incident of terrorism, and who are insured for the damage, or who would be insured but for a terrorism exclusion; or
  - Fifty or more persons sustain death or serious physical injury; or

  *(In applying the thresholds for property damage ($25 million) and death or injury (50 or more persons), multiple incidents of terrorism which occur within a seventy-two hour period and appear to be linked together or have a related purpose or common leadership behind them shall be considered to be one incident of terrorism.)*

  - The terrorism event involves nuclear materials or results in nuclear reaction or radiation or radioactive contamination; or
  - The terrorism event is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or
  - The terrorism event involves the release of pathogenic or poisonous biological or chemical materials, and it appears that one purpose of the terrorism was to release such materials.

See the definition of terrorism for purposes of the terrorism exclusion.

**IL 09 40 (01 02) -- Exclusion of Terrorism (With Limited Exception) And Exclusion of War And Military Action** (Commercial Inland Marine, Commercial Property and Farm Coverage Parts; and Standard Property Policy)

**IL 09 42 (01 02) -- Exclusion of War, Military Action And Terrorism** (Boiler And Machinery and Commercial Crime Coverage Parts)

**BP 05 12 (01 02) -- Exclusion of Terrorism (With Limited Exception) And Exclusion of War And Military Action** (Businessowners Policy)

When this endorsement is attached to your policy:

- Coverage for loss or damage arising out of war, warlike action and similar events is excluded under all coverage forms and policies. Previously, the War And Military Action exclusion applied to all coverage forms and policies except the Commercial Property - Legal Liability Coverage Form.

- Coverage for loss or damage arising out terrorism is excluded only if:
    - The total of all damage to all types of property (including business interruption losses sustained by owners or occupants of damaged property), from a terrorism incident exceeds $25 million. The $25 million property damage threshold is based on losses sustained by all persons and entities who are affected by an incident of terrorism, and who are insured for the damage, or who would be insured but for a terrorism exclusion; or

        *(In applying the threshold for property damage ($25 million), multiple incidents of terrorism which occur within a seventy-two hour period and appear to be linked together or have a related purpose or common leadership behind them shall be considered to be one incident of terrorism.)*

    - The terrorism event involves nuclear materials or results in nuclear reaction or radiation or radioactive contamination; or
    - The terrorism event is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or
    - The terrorism event involves the release of pathogenic or poisonous biological or chemical materials, and it appears that one purpose of the terrorism was to release such materials.
- The exclusion of terrorism does not apply to direct loss or damage by fire to Covered Property, under the Commercial Inland Marine, Commercial Property or Farm Coverage Parts or under the Businessowners Policy or Standard Property Policy.

See the definition of terrorism for purposes of the terrorism exclusion.

Capitol Indemnity Corporation
P.O. Box 5900
Madison, WI 53705

# POLICYHOLDER NOTIFICATION

These Terrorism Endorsements are valid for use in the State of Illinois unless and until (1) the Company obtains reinsurance covering the excluded risks of loss due to "Terrorism" as defined by the Endorsement; or (2) the Director of Insurance determines that the Company is eligible to participate in a federal reinsurance program or a risk pooling program adequate to spread the excluded risks of loss due to "Terrorism" as defined by the Endorsement in a financially responsible manner.

Please read your policy, and the endorsements attached to your policy, carefully.

CGE 049-IL (01-02)                          Page #1

Capitol Indemnity Corporation.
P.O. Box 5900
Madison, WI 53705

# NOTICE TO POLICYHOLDERS

## RESTRICTIONS OF COVERAGE

This notice has been prepared in conjunction with the implementation of changes to your policy. It contains a brief synopsis of significant restrictions and clarifications of coverage that were made in each policy form and endorsement.

Please read your policy, and the endorsements attached to your policy, carefully.

**CG 21 67 - Fungi or Bacteria Exclusion** (Commercial General Liability Coverage Part)
**CG 31 31 - Fungi or Bacteria Exclusion** (Owners and Contractors Protective Liability and Products/Completed Operations Liability Coverage Part)
**CCU 371 - Fungi or Bacteria Exclusion** (Commercial Liability Umbrella Coverage Part)
**CBP 049 - Fungi or Bacteria Exclusion** (Businessowners Liability Coverage Forms)

When this endorsement is attached to your policy:

Coverage for bodily injury or property damage liability under Coverage A and personal and advertising injury under Coverage B which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage is excluded.

See the definition of fungi for purposes of the Fungi or Bacteria Exclusion exclusion.

CGE 051 (04-02)                           Page 1 of 1

**Capitol Indemnity Corporation**
P.O. Box 5900
Madison, WI 53705

# IMPORTANT NOTICE!

This policy lists the first named insured on the declaration page. This part has specific rights and duties which are outlined in the common policy conditions. Please make certain that the first named insured, as listed, is correct. Advise us immediately if there is any change necessary.

Please read this policy as there may be a difference in coverages, rules and conditions from other insurance policies

CGE 112 (04-96)

Capitol Indemnity Corporation
P.O. Box 5900
Madison, WI 53705

# IMPORTANT NOTICE - NON PAYMENT OF PREMIUM

Reinstatement of coverage after cancellation for non-payment of premium is at our option and may be denied. Absolutely no policy will be reinstated after a second cancellation for non-payment of premium.

CGE 215 (04-96)

Capitol Indemnity Corporation
P.O. Box 5900
Madison, WI 53705

# POLICYHOLDER AUDIT INFORMATION

Your commercial insurance policy may be audited. Your policy explains your rights and duties regarding an audit and this notice answers some common questions.

## WHY WOULD YOUR POLICY BY AUDITED?

The premium charged when your policy was issued was an estimate based on the nature of your business and your exposures (payroll, sales, etc.) for the policy period. A review of your records at the end of the policy period allows us to adjust your premium based on actual operations during that time.

## HOW AND WHEN WILL AN AUDIT BE DONE?

A premium auditor may either review your records in person or will send you a letter asking you to mail us the needed audit information. We will try to visit your business or contact you by mail as soon as we can after the end of our policy period.

## WHAT RECORDS ARE NEEDED FOR THE AUDIT?

We will need to review your ledgers, journals, vouchers, contracts, tax reports, profit and loss statements and payroll and disbursement records. If you use subcontractors, we will need to see a Certificate of Insurance for each. Our premium auditor will let you know which of these items are specifically needed for your audit.

## WILL KEEPING DETAILED RECORDS HELP ME SAVE MONEY?

You may be able to lower your final premium cost by keeping detailed records. A variety of insurance classifications may apply to your business, each having a different insurance rate. Detailed records should give us accurate payroll, sales and subcontracted costs allowing us to apply the appropriate classification to these exposures.

## DO I NEED A CERTIFICATE OF INSURANCE FOR EACH SUBCONTRACTOR I USE?

You should always keep current Certificates of Insurance for all subcontractor you hire. Without these certificates, you may be charged as though the subcontractors' workers were your own employees - increasing your premium charge.

## WHY SHOULD I MAKE SURE THE PREMIUM BASIS (SUCH AS SALES OR PAYROLL) ARE REALISTIC ESTIMATES?

Your initial policy premium is based on an estimate of your business operations for the policy period. The final policy premium is not determined until after your insurance audit. If your estimates are low, your deposit premium will be low and you will have to pay an additional premium after the audit. Likewise, overestimating your operations for the coming year will cause your deposit premium to be high, tying up your money until after the audit.

Please contact your agent if you need more information or clarification on insurance premium audits.

CGE 278 (04-96)

apitol Indemnity Corporation
O. Box 5900, Madison, WI 53705

COMMON POLICY DECLARATIONS

RENEWAL OF NUMBER:  BP00044456

| OLICY NUMBER | POLICY PERIOD | | AGENCY |
|---|---|---|---|
| :P00044456 | 07/14/2002 | 07/14/2003 | 05950 |

| IAMED INSURED AND ADDRESS | AGENT |
|---|---|
| ELSTON SELF SERVICE<br>NHOLESALE GROCERY INC<br>3761 N ELSTON AVENUE<br>CHICAGO, IL  60618 | UNIFIED INSURANCE SERVICES INC<br>4450 W OAKTON<br>SKOKIE, IL  60076-3259 |

POLICY PERIOD: 07/14/2002  -  07/14/2003
    12:01 A.M. Standard Time at the address of the insured stated herein

BUSINESS DESCRIPTION:  WHOLESALE GROCERIES

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND TO ALL THE TERMS OF THIS
POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS
POLICY.

    THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A
PREMIUM IS INDICATED.  THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

| | |
|---|---|
| Commercial Property Coverage Part | NOT COVERED |
| Commercial General Liability Coverage Part | NOT COVERED * |
| Commercial Crime Coverage Part | NOT COVERED |
| Commercial Inland Marine Coverage Part | NOT COVERED |
| Umbrella Coverage Part | NOT COVERED |
| Liquor Liability Coverage Part | NOT COVERED |
| Businessowners | $      6827 |

                    **TOTAL ADVANCE PREMIUM**    $      6827 *

Premium shown is payable:        $      6827      $1706.75 @ INCEPTION
TERRORISM RISK INSURANCE ACT OF 2002                NOT COVERED

  *    THE LIABILITY PREMIUM BASIS OF THIS POLICY IS SUBJECT TO AN
    AUDIT.  ADDITIONAL OR RETURN PREMIUMS MAY BE DUE.

Forms applicable to all Coverage parts: SEE ATTACHED COMMERCIAL POLICY
FORM SCHEDULE # CICG 179

COUNTERSIGNED  07/26/2004        By_____
                                 Authorized Representative

CICG 174 (06-98)              INSURED COPY                        V2

**Capitol Indemnity Corporation**
P.O. Box 5900
Madison, WI 53705

# IMPORTANT NOTICE

Please review the following endorsement(s) which has been attached to your renewal policy and will be attached to all future renewals of the policy. The endorsement(s) may change or delete coverage on your renewal policy.

Endorsements:  IL 02 84
               IL 09 35
               IL 09 40
               IL 09 42
               CGE 048
               CGE 049
               CGE 051
               BP 05 12
               BP 05 13
               CBP 020
               CBP 049
               CBP 111
               CBP 135
               CBP 179

CGE 002 (02-96)

Capitol Indemnity Corporation
P.O. Box 5900, Madison, WI 53705

COMMERCIAL POLICY
COVERAGE PART FORM SCHEDULE

| POLICY NUMBER | POLICY PERIOD | | AGENCY |
|---|---|---|---|
| BP00044456 | 07/14/2002  07/14/2003 | | 05950 |

| NAMED INSURED AND ADDRESS | AGENT |
|---|---|
| ELSTON SELF SERVICE WHOLESALE GROCERY INC 3761 N ELSTON AVENUE CHICAGO, IL  60618 | UNIFIED INSURANCE SERVICES INC |

Forms and Endorsements applying to this Coverage Part and made a part of this policy at time of issue:

FORMS APPLICABLE TO ALL PREMISES AND COVERAGES

| Form | Edition | Description |
|---|---|---|
| BJP190 | 10 94 | COMMERCIAL LINES POLICY JACKET |
| CICG 174 | 06 98 | COMMON POLICY DEC |
| CGE 002 | 02 96 | IMPORTANT NOTICE |
| CGE 048 | 01 02 | NOTICE TO POLICYHOLDERS |
| CGE 049 | 01 02 | POLICYHOLDER NOTIFICATION |
| CGE 051 | 04 02 | NOTICE TO POLICYHOLDERS |
| CGE 112 | 04 96 | IMPORTANT NOTICE! |
| CGE 215 | 04 96 | IMPORTANT NOTICE - NON PAYMENT OF PREMIUM |
| CGE 278 | 04 96 | POLICYHOLDER AUDIT INFORMATION |
| CICG 176 | 10 93 | LOCATION SCHEDULE |
| CICG 258 | 11 93 | SINGLE DEDUCTIBLE |
| IL 00 17 | 11 98 | COMMON POLICY CONDITIONS |
| IL 02 84 | 10 00 | ILLINOIS CHANGES - CANCELLATION & NONRENEWAL |
| IL 09 35 | 07 01 | EXCLUSION OF CERTAIN COMPUTER - RELATED LOSSES |
| IL 09 40 | 01 02 | EXCLUSION OF TERRORISM (W/LTD EXCEPTION) AND EXCLUSIO |
| IL 09 42 | 01 02 | EXCLUSION OF WAR MILITARY ACTION AND TERRORISM |
| CGE 139 | 06 96 | CIC PREMIUM PAYMENT PLAN |

CICG 179  (10-93)                        INSURED COPY

Capitol Indemnity Corporation
P.O. Box 5900, Madison, WI 53705

LOCATIONS SCHEDULE

| POLICY NUMBER | POLICY PERIOD | | AGENCY |
|---|---|---|---|
| BP00044456 | 07/14/2002  07/14/2003 | | 05950 |

| NAMED INSURED AND ADDRESS | AGENT |
|---|---|
| ELSTON SELF SERVICE WHOLESALE GROCERY INC 3761 N ELSTON AVENUE CHICAGO, IL  60618 | UNIFIED INSURANCE SERVICES INC |

Prems.

| No. | Street | City | St Zip |
|---|---|---|---|
| 001 | 3761 N ELSTON AVENUE | CHICAGO | IL 60618 |

CICG 176 (10-93)                    INSURED COPY

**Capitol Indemnity Corporation**
P.O. Box 5900, Madison, WI 537

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## SINGLE DEDUCTIBLE

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY
COMMERCIAL INLAND MARINE
COMMERCIAL CRIME

Whenever an occurrence involves more than one coverage part, only one deductible will apply.  The deductible applicable will be the highest deductible amount of all the coverage parts involved.

CICG 258 (11-93)

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc., 1998

IL 02 84 10 00

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES -
# CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART

**A.** The **Cancellation** Common Policy Condition is replaced by the following:

**CANCELLATION**

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing to us advance written notice of cancellation.

**2.** If this policy has been in effect for 60 days or less, except as provided in Paragraphs **9.** and **10.** below, we may cancel this policy by mailing written notice of cancellation at least:

    **a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

    **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**3.** If this policy has been in effect for more than 60 days, except as provided in Paragraphs **9.** and **10.** below, we may cancel this policy only for one or more of the following reasons:

    **a.** Nonpayment of premium;

    **b.** The policy was obtained through a material misrepresentation;

    **c.** You have violated any of the terms and conditions of the policy;

    **d.** The risk originally accepted has measurably increased;

    **e.** Certification to the Director of Insurance of the loss of reinsurance by the insurer which provided coverage to us for all or a substantial part of the underlying risk insured; or

    **f.** A determination by the Director that the continuation of the policy could place us in violation of the insurance laws of this State.

If we cancel this policy based on one or more of the above reasons except for nonpayment of premium, we will mail written notice at least 60 days before the effective date of cancellation. When cancellation is for nonpayment of premium, we will mail written notice at least 10 days before the effective date of cancellation.

**4.** We will mail our notice to you, any mortgagee or lienholder known to us and to the agent or broker, at the last addresses known to us.

**5.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**6.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**7.** Proof of mailing will be sufficient proof of notice.

**8.** Our notice of cancellation will state the reason for cancellation.

**9. Real Property Other Than Residential Properties Occupied By 4 Families Or Less:**

The following applies only if this policy covers real property other than residential property occupied by 4 families or less:

Copyright, Insurance Services Office, Inc., 1999

If any one or more of the following conditions exists at any building that is Covered Property in this policy, we may cancel this policy by mailing to you written notice of cancellation at least 10 days before the effective date of cancellation.

**a.** After a fire loss, permanent repairs to the building have not started within 60 days of satisfactory adjustment of loss, unless the delay is due to a labor dispute or weather conditions.

**b.** The building has been unoccupied 60 or more consecutive days. This does not apply to:

   **(1)** Seasonal unoccupancy; or

   **(2)** Buildings under repair, construction or reconstruction, if properly secured against unauthorized entry.

**c.** The building has:

   **(1)** An outstanding order to vacate;

   **(2)** An outstanding demolition order; or

   **(3)** Been declared unsafe in accordance with the law.

**d.** Heat, water, sewer service or public lighting have not been connected to the building for 30 consecutive days or more.

**10. Residential Properties Occupied By 4 Families Or Less:**

The following applies if this policy covers residential properties occupied by 4 families or less:

If this policy has been in effect for 60 days, or if this is a renewal policy, we may only cancel this policy for one or more of the following reasons:

**a.** Nonpayment of premium;

**b.** The policy was obtained by misrepresentation or fraud; or

**c.** Any act that measurably increases the risk originally accepted.

**11.** For insurance provided under the Commercial Property Coverage Part, the following applies:

**GRAIN IN PUBLIC GRAIN WAREHOUSES**

(Not applicable to grain owned by the Commodity Credit Corporation)

The following applies only with respect to grain in public grain warehouses:

The first Named Insured or we may cancel this policy at any time by mailing to:

**a.** The other; and

**b.** The Director of the Illinois Department of Agriculture (at its Springfield Office);

60 days' written notice of cancellation.

**B.** The following is added:

**NONRENEWAL**

**1.** If we decide not to renew this policy, we will mail written notice stating the reason for nonrenewal to your last mailing address known to us at least 60 days before the expiration date of the policy. A copy of the notice will also be sent to:

**a.** The broker, if known to us, or the agent of record; and

**b.** The last known mortgagee or lienholder named in the policy at the last mailing address known to us.

This paragraph does not apply if we have manifested our willingness to renew directly to you.

**2.** The following provision applies only if this policy covers residential properties occupied by 4 families or less:

If this policy has been issued to you and in effect with us for 5 or more years, we may not fail to renew this policy unless:

**a.** The policy was obtained by misrepresentation or fraud;

**b.** The risk originally accepted has measurably increased; or

**c.** You received 60 days' notice of our intent not to renew as provided in **1.** above.

Copyright, Insurance Services Office, Inc., 1999

IL 02 84 10 00

IL 09 35 07 01

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTAIN COMPUTER-RELATED LOSSES

This endorsement modifies insurance provided under the following:

COMMERCIAL CRIME COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** We will not pay for loss ("loss") or damage caused directly or indirectly by the following. Such loss ("loss") or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss ("loss") or damage.

   **1.** The failure, malfunction or inadequacy of:

   **a.** Any of the following, whether belonging to any insured or to others:

   **(1)** Computer hardware, including micro-processors;

   **(2)** Computer application software;

   **(3)** Computer operating systems and related software;

   **(4)** Computer networks;

   **(5)** Microprocessors (computer chips) not part of any computer system; or

   **(6)** Any other computerized or electronic equipment or components; or

   **b.** Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph **A.1.a.** of this endorsement;

   due to the inability to correctly recognize, process, distinguish, interpret or accept one or more dates or times. An example is the inability of computer software to recognize the year 2000.

**2.** Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph **A.1.** of this endorsement.

**B.** If an excluded Cause of Loss as described in Paragraph **A.** of this endorsement results:

   **1.** In a Covered Cause of Loss under the Boiler And Machinery Coverage Part, the Commercial Crime Coverage Part, the Commercial Inland Marine Coverage Part or the Standard Property Policy; or

   **2.** Under the Commercial Property Coverage Part:

   **a.** In a "Specified Cause of Loss", or in elevator collision resulting from mechanical breakdown, under the Causes of Loss - Special Form; or

   **b.** In a Covered Cause of Loss under the Causes Of Loss - Basic Form or the Causes Of Loss - Broad Form;

   we will pay only for the loss ("loss") or damage caused by such "Specified Cause of Loss", elevator collision, or Covered Cause of Loss.

**C.** We will not pay for repair, replacement or modification of any items in Paragraphs **A.1.a.** and **A.1.b.** of this endorsement to correct any deficiencies or change any features.

IL 09 40 01 02

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION OF TERRORISM (WITH LIMITED EXCEPTION) AND EXCLUSION OF WAR AND MILITARY ACTION

This endorsement modifies insurance provided under the following:

COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART
STANDARD PROPERTY POLICY

**A.** The War And Military Action Exclusion is replaced by the following Exclusion. With respect to any Coverage Form to which the War And Military Action Exclusion does not apply, that Exclusion is hereby added as follows.

**WAR AND MILITARY ACTION EXCLUSION**

We will not pay for loss or damage caused directly or indirectly by the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

1. War, including undeclared or civil war; or

2. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

3. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

With respect to any action that comes within the terms of this exclusion and involves nuclear reaction or radiation, or radioactive contamination, this War And Military Action Exclusion supersedes the Nuclear Hazard Exclusion.

**B.** Regardless of the amount of damage and losses, the Terrorism Exclusion applies to any incident of terrorism:

1. That involves the use, release or escape of nuclear materials, or that directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

2. That is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

3. In which pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

Except as provided in **B.1., B.2.** or **B.3.** above, the Terrorism Exclusion will only apply to an incident of terrorism in which the total of insured damage to all types of property in the United States, its territories and possessions, Puerto Rico and Canada exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions. Multiple incidents of terrorism which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident.

The preceding paragraph describes the threshold used to measure the magnitude of an incident of terrorism and the circumstances in which the threshold will apply, for the purpose of determining whether the Terrorism Exclusion will apply to that incident. When the Terrorism Exclusion applies to an incident of terrorism, there is no coverage under this Coverage Part or Standard Property Policy.

© ISO Properties, Inc., 2001

In the event of any incident of terrorism that is not subject to the Terrorism Exclusion, coverage does not apply to any element of loss or damage that is otherwise excluded under this Coverage Part or Standard Property Policy.

## TERRORISM EXCLUSION

We will not pay for loss or damage caused directly or indirectly by terrorism, including action in hindering or defending against an actual or expected incident of terrorism. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

But if terrorism results in fire, we will pay for the loss or damage caused by that fire. However, this exception for fire applies only to direct loss or damage by fire to Covered Property. Therefore, for example, the exception does not apply to insurance provided under Business Income and/or Extra Expense coverage forms or endorsements which apply to those forms, or to the Legal Liability Coverage Form or the Leasehold Interest Coverage Form.

Terrorism means activities against persons, organizations or property of any nature:

1. That involve the following or preparation for the following:

   a. Use or threat of force or violence; or

   b. Commission or threat of a dangerous act; or

   c. Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

2. When one or both of the following applies:

   a. The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

   b. It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

But with respect to any such activity that also comes within the terms of the War And Military Action Exclusion, that exclusion supersedes this Terrorism Exclusion.

In the event of an incident of terrorism that involves nuclear reaction or radiation, or radioactive contamination, this Terrorism Exclusion supersedes the Nuclear Hazard Exclusion.

© ISO Properties, Inc., 2001
IL 09 40 01 02

IL 09 42 01 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF WAR, MILITARY ACTION AND TERRORISM

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL CRIME COVERAGE FORM
COMMERCIAL CRIME POLICY
GOVERNMENT CRIME COVERAGE FORM
GOVERNMENT CRIME POLICY

**A.** The War And Military Action Exclusion is replaced by the following Exclusion. With respect to any Coverage Form to which the War And Military Action Exclusion does not apply, that Exclusion is hereby added as follows.

**WAR AND MILITARY ACTION EXCLUSION**

We will not pay for loss or damage caused directly or indirectly by the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**1.** War, including undeclared or civil war; or

**2.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**3.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

With respect to any action that comes within the terms of this exclusion and involves nuclear reaction or radiation, or radioactive contamination, this War And Military Action Exclusion supersedes the Nuclear Hazard Exclusion.

**B.** Regardless of the amount of damage and losses, the Terrorism Exclusion applies to any incident of terrorism:

**1.** That involves the use, release or escape of nuclear materials, or that directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

**2.** That is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**3.** In which pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

Except as provided in **B.1., B.2.** or **B.3.** above, the Terrorism Exclusion will only apply to an incident of terrorism in which the total of insured damage to all types of property in the United States, its territories and possessions, Puerto Rico and Canada exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions. Multiple incidents of terrorism which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident.

© ISO Properties, Inc., 2001

The preceding paragraph describes the threshold used to measure the magnitude of an incident of terrorism and the circumstances in which the threshold will apply, for the purpose of determining whether the Terrorism Exclusion will apply to that incident. When the Terrorism Exclusion applies to an incident of terrorism, there is no coverage under the insurance identified in this endorsement.

In the event of any incident of terrorism that is not subject to the Terrorism Exclusion, coverage does not apply to any element of loss or damage that is otherwise excluded under the insurance identified in this endorsement.

**TERRORISM EXCLUSION**

We will not pay for loss or damage caused directly or indirectly by terrorism, including action in hindering or defending against an actual or expected incident of terrorism. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

Terrorism means activities against persons, organizations or property of any nature:

1. That involve the following or preparation for the following:

   a. Use or threat of force or violence; or

   b. Commission or threat of a dangerous act; or

   c. Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

2. When one or both of the following applies:

   a. The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

   b. It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

But with respect to any such activity that also comes within the terms of the War And Military Action Exclusion, that exclusion supersedes this Terrorism Exclusion.

In the event of an incident of terrorism that involves nuclear reaction or radiation, or radioactive contamination, this Terrorism Exclusion supersedes the Nuclear Hazard Exclusion.

 © ISO Properties, Inc., 2001 **IL 09 42 01 02**

**Capitol Indemnity Corporation**
P.O. Box 5900, Madison, WI 53705

# BUSINESSOWNERS POLICY DECLARATIONS

**Insured's Name and Mailing Address**

ELSTON SELF SERVICE
WHOLESALE GROCERY INC
3761 N ELSTON AVENUE
CHICAGO, IL 60618

Policy No. BP00044456

INCEPTION (Mo. Day Yr.)(12:01 AM Standard Time at your mailing address)
07/14/2002

EXPIRATION (Mo. Day Yr.)
07/14/2003

'X' IF SUPPLEMENTAL DECLARATION
[X] SUPPLEMENTAL DECLARATION

RENEWAL OR REWRITE OF NO.
BP00044456

Business Description:
WHOLESALE GROCERIES

Form of Business
[ ] Individual   [ ] Partnership   [ ] Other
[X] Corporation  [ ] Joint Venture

In return for the payment of the premium and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

**DESCRIBED PREMISES**

| Premises No. | Bldg. No. | Location |
|---|---|---|

SEE ATTACHED SUPPLEMENTAL DECLARATIONS

Forms Applicable: [ ] Standard   [X] Special

Mortgage Holder Name and Address

SEE ATTACHED SCHEDULE

**PROPERTY**

| PREM. NO. | BLDG. NO. | PREM. NO. | BLDG. NO. | PREM. NO. | BLDG. NO. |
|---|---|---|---|---|---|

SEE ATTACHED SUPPLEMENTAL DECLARATIONS

Deductible $   **SEE ATTACHED SUPPLEMENTAL DECLARATIONS**

**OPTIONAL COVERAGES**

SEE ATTACHED SUPPLEMENTAL DECLARATIONS

## LIABILITY AND MEDICAL PAYMENTS

Except for Fire Legal Liability, each paid claim for the following coverages reduces the amount of insurance we provide during the applicable annual period. Please refer to paragraph D.4. of the Businessowners Liability Coverage Form.

Limits of Insurance

| | | |
|---|---|---|
| Liability and Medical Expenses | $ | 1,000,000 |
| Medical Expenses | $ | 5,000 per person |
| Fire Legal Liability | $ | 100,000 any one fire or explosion |

**TOTAL PREMIUM**   $   6,827 payable $

**FORMS AND ENDORSEMENTS: SEE ATTACHED SCHEDULE**

During the past three years no insurer has canceled any insurance issued to the named insured, similar to that afforded hereunder, unless otherwise stated herein.

| COUNTERSIGNATURE DATE | AGENCY AT | AGENT AND NUMBER |
|---|---|---|
| 07/26/2004 | SKOKIE, IL 60076-3259 | UNIFIED INSURANCE SERVICES INC<br>4450 W OAKTON<br>05950 |

THESE DECLARATIONS, TOGETHER WITH THE COVERAGE FORM(S), COMMON POLICY CONDITIONS AND FORMS
AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

CBP 001 (01-98)    Includes copyrighted material of Insurance Services Office, Inc., with its permission. Copyright, Insurance Services Office, Inc., 1984, 1985

INSURED COPY

Capitol Indemnity Corporation
P.O. Box 5900, Madison, WI 53705

# BUSINESSOWNERS SUPPLEMENTAL DECLARATIONS

Policy Number: BP00044456
Named Insured: ELSTON SELF SERVICE, WHOLESALE GROCERY I     Policy Effective Date: 07/14/2002

## DESCRIPTION OF PREMISES - ADDRESSES

| Prems. No. | Bldg. No. | Address |
|---|---|---|
| 001 | 001 | 3761 N ELSTON AVENUE CHICAGO, IL 60618 |

## DESCRIPTION OF PREMISES - OCCUPANCY

| Prems. No. | Bldg. No. | Occupancy | Construction | Protection |
|---|---|---|---|---|
| 001 | 001 | GROCERY DISTRIBUTOR | MASONRY NON-COMBUSTIBLE | 01 |

## COVERAGES PROVIDED

| Prems. No. | Bldg. No. | Coverage | Limit of Insurance | Automatic Increase in Insurance | Deductible | ACV/RC |
|---|---|---|---|---|---|---|
| 001 | 001 | BUILDING | $ 520,000 | 4% | $ 1,000 | RC |
| 001 | 001 | YOUR BUS.PERS.PROP. | $ 700,000 | | $ 1,000 | RC |

## OPTIONAL COVERAGES

| Prems. No. | Bldg. No. | Coverage | Limits | Deductible |
|---|---|---|---|---|
| | | BUSINESS INCOME ACTUAL LOSS SUSTAINED | | |
| 001 | 001 | MONEY & SECURITIES-ON PREMISES | $ 15,000 | 250 |
| 001 | 001 | MONEY & SECURITIES-OFF PREMISES | $ 15,000 | 250 |

MORTGAGE HOLDERS - NONE

07/26/2004     LRG*                          INSURED COPY

CBP 002 (01-98)

Capitol Indemnity Corporation
P.O. Box 5900, Madison, WI 53705

COMMERCIAL BOP
COVERAGE PART FORM SCHEDULE

| POLICY NUMBER | POLICY PERIOD | AGENCY |
|---|---|---|
| BP00044456 | 07/14/2002  07/14/2003 | 05950 |

| NAMED INSURED AND ADDRESS | AGENT |
|---|---|
| ELSTON SELF SERVICE<br>WHOLESALE GROCERY INC<br>3761 N ELSTON AVENUE<br>CHICAGO, IL  60618 | UNIFIED INSURANCE SERVICES INC |

Forms and Endorsements applying to this Coverage Part and made a part of this policy at time of issue:

FORMS APPLICABLE TO ALL PREMISES AND COVERAGES

| Form | Edition | Description |
|---|---|---|
| CBP 001 | 01 98 | BOP DECLARATIONS |
| CBP 002 | 01 98 | BOP SCHEDULE |
| CBP 005 | 01 98 | BOP FORM SCHEDULE |
| CBP 010 | 01 98 | BOP LIABILITY SCHEDULE |
| BP 00 06 | 01 97 | BUSINESSOWNERS LIABILITY COVERAGE FORM |
| BP 00 09 | 01 97 | BUSINESSOWNERS COMMON POLICY CONDITIONS |
| BP 01 54 | 03 99 | ILLINOIS CHANGES |
| BP 04 17 | 01 96 | EMPLOYMENT-RELATED PRACTICES EXCLUSION |
| BP 04 18 | 06 89 | AMENDMENT - LIQUOR LIABILITY EXCLUSION |
| BP 04 54 | 01 97 | NEWLY ACQUIRED ORGANIZATIONS |
| BP 05 12 | 01 02 | EXCLUSION OF TERRORISM (W/LTD EXCEPTION) AND EXCLUSIO |
| BP 05 13 | 01 02 | WAR OR TERRORISM EXCLUSION |
| BP 10 04 | 04 98 | EXCLUSION OF CERTAIN COMPUTER RELATED LOSSED ENDORSE |
| CBP 020 | 04 02 | BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM |
| CBP 049 | 04 02 | FUNGI OR BACTERIA EXCLUSION |
| CBP 111 | 12 00 | EXCLUSION-DISCRIMINATION NO DUTY TO DEFEND OR INDEMNI |
| CBP 135 | 12 00 | EXCLUSION - LEAD LIABILITY |
| CBP 179 | 12 00 | EXCLUSION - PUNITIVE OR STATUTORY DAMAGES |
| | | |
| CBP 018 | 01 98 | ADDITIONAL INSURED SCHEDULE |
| BP 04 07 | 01 87 | ADDITIONAL INSURED-STATE OR POLITICAL SUBDIVISIONS |
| BP 04 12 | 01 87 | LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJ |
| CBP 009 | 10 97 | AMENDMENT OF POLICY PROVISIONS |

CBP 005  (01-98)                    INSURED COPY

Capitol Indemnity Corporation
P.O. Box 5900, Madison, WI 53705

# BUSINESSOWNERS SUPPLEMENTAL DECLARATIONS

| Policy Number: | BP00044456 | Policy Effective Date: | 07/14/2002 |
| Named Insured: | ELSTON SELF SERVICE | | |

| Classifications | Code No. | Premium Basis | Rates | Advance Premiums |
|---|---|---|---|---|
| GROCERY DISTRIBUTOR PRODUCTS-COMPLETED OPERATIONS ARE SUBJECT TO THE GENERAL AGGREGATE LIMIT ADD'L INS MGR/LESSOR | 50481 | 1 EACH | 17.442 | 17 |

TOTAL PREMIUM     17

\*   THE LIABILITY PREMIUM BASIS OF THIS POLICY IS SUBJECT TO AN
AUDIT.   ADDITIONAL OR RETURN PREMIUMS MAY BE DUE.

DATE - 07/26/2004     RENEWAL     LRG\*

CBP 010 (01-98)          INSURED COPY

BUSINESSOWNERS
BP 00 06 01 97

# BUSINESSOWNERS LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **C** - Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **F** - Liability And Medical Expenses Definitions.

## A. Coverages

### 1. Business Liability

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage", "personal injury", or "advertising injury" to which this insurance does not apply. We may at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section **D** - Liability And Medical Expenses Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements or medical expenses.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Coverage Extension - Supplementary Payments.

b. This insurance applies:

(1) To "bodily injury" and "property damage" only if:

(a) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

(b) The "bodily injury" or "property damage" occurs during the policy period.

(2) To:

(a) "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

(b) "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

but only if the offense was committed in the "coverage territory" during the policy period.

c. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

d. **Coverage Extension- SupplementaryPayments**

In addition to the Limit of Insurance, we will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

(1) All expenses we incur.

(2) Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which Business Liability Coverage for "bodily injury" applies. We do not have to furnish these bonds.

(3) The cost of bonds to release attachments, but only for bond amounts within our Limit of Insurance. We do not have to furnish these bonds.

Copyright, Insurance Services Office, Inc., 1997

(4) All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

(5) All costs taxed against the insured in the "suit".

(6) Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

(7) All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within our Limit of Insurance.

If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **B.1.b.(2)** of Exclusions, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

**a.** We have used up the applicable limit of insurance in the payment of judgments or settlements; or

**b.** The conditions set forth above, or the terms of the agreement described in Paragraph **f.** above are no longer met.

Copyright, Insurance Services Office, Inc., 1997

## 2. Medical Expenses

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(a) The accident takes place in the "coverage territory" and during the policy period;

(b) The expenses are incurred and reported to us within one year of the date of the accident; and

(c) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the Limit of Insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

## B. Exclusions

### 1. Applicable To Business Liability Coverage

This insurance does not apply to:

a. **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

c. **Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

d. **Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

 Copyright, Insurance Services Office, Inc., 1997

e. **Employer's Liability**

"Bodily Injury" to:

(1) An "employee" of the insured arising out of and in the course of:

  (a) Employment by the insured; or

  (b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies:

  (a) Whether the insured may be liable as an employer or in any other capacity; and

  (b) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

f. **Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

  (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

  (b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

  (c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

  (d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

    (i) If the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

    (ii) If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraph **(d)(i)** does not apply to "bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids are intentionally discharged, dispersed or released, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent to be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor.

Subparagraphs **(a)** and **(d)(i)** do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

(2) Any loss, cost or expense arising out of any:

  (a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

    Copyright, Insurance Services Office, Inc., 1997    BP 00 06 01 97 □

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

### g. Aircraft, Auto Or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

   (a) Less than 26 feet long; and

   (b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the following equipment:

   (a) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   (b) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

### h. Mobile Equipment

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition or stunting activity.

### i. War

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

### j. Professional Services

"Bodily injury", "property damage", "personal injury" or "advertising injury" due to rendering or failure to render any professional service. This includes but is not limited to:

(1) Legal, accounting or advertising services;

(2) Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

(3) Supervisory, inspection or engineering services;

(4) Medical, surgical, dental, x-ray or nursing services treatment, advice or instruction;

(5) Any health or therapeutic service treatment, advice or instruction;

(6) Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming;

(7) Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

(8) Body piercing services; and

(9) Services in the practice of pharmacy; but this exclusion does not apply to an insured whose operations include those of a retail druggist or drugstore.

k. **Damage To Property**

"Property damage" to:

(1) Property you own, rent or occupy;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products - completed operations hazard".

l. **Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

m. **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products - completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

n. **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

o. **Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

p. **Personal Or Advertising Injury**

"Personal injury" or "advertising injury":

(1) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

(2) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

Copyright, Insurance Services Office, Inc., 1997

(3) Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured;

(4) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement; or

(5) Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

(6) With respect to any loss, cost or expense arising out of any:

(a) Request, demand or order that any insured or others test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize or in any way respond to, or assess the effects of *pollutants*; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

### q. Advertising Injury

"Advertising injury" arising out of:

(1) Breach of contract, other than misappropriation of advertising ideas under an implied contract;

(2) The failure of goods, products or services to conform with advertised quality or performance;

(3) The wrong description of the price of goods, products or services; or

(4) An offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

Exclusions **c., d., e., f., g., h., i., k., l., m., n.** and **o.** do not apply to damage by fire or explosion to premises while rented to you, or temporarily occupied by you with permission of the owner. A separate Limit of Insurance applies to this coverage as described in Section **D.,** Limits of Insurance.

### 2. Applicable To Medical Expenses Coverage

We will not pay expenses for "bodily injury":

**a.** To any insured.

**b.** To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c.** To a person injured on that part of premises you own or rent that the person normally occupies.

**d.** To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e.** To a person injured while taking part in athletics.

**f.** Included within the "products - completed operations hazard".

**g.** Excluded under Business Liability Coverage.

**h.** Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

### 3. Applicable To Both Business Liability Coverage And Medical Expenses Coverage - Nuclear Energy Liability Exclusion

This insurance does not apply:

**a.** Under Business Liability Coverage, to "bodily injury" or "property damage":

(1) With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which:

    (a) Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

    (b) The insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

b. Under Medical Expenses Coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

c. Under Business Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of the "nuclear material"; if:

(1) The "nuclear material":

    (a) Is at any "nuclear facility" owned by, or operated by or on behalf of, an insured; or

    (b) Has been discharged or dispersed therefrom;

(2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(3) The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility"; but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

As used in this exclusion:

"Byproduct material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Hazardous properties" include radioactive, toxic or explosive properties;

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for:

    (1) Separating the isotopes of uranium or plutonium;

    (2) Processing or utilizing "spent fuel"; or

    (3) Handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear material" means "source material", "special nuclear material" or "byproduct material";

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

"Source material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Special nuclear material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

Copyright, Insurance Services Office, Inc., 1997
BP 00 06 01 97  ☐

"Waste" means any waste material:

**(a)** Containing "byproduct material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content; and

**(b)** Resulting from the operation by any person or organization of any "nuclear facility" included under Paragraphs **(a)** and **(b)** of the definition of "nuclear facility".

## C. Who Is An Insured

1. If you are designated in the Declarations as:

   **a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   **b.** A partnership or joint venture, you are an insured. Your members, your partners and their spouses are also insureds, but only with respect to the conduct of your business.

   **c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   **d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

   **a.** Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

      **(1)** "Bodily injury" or "personal injury":

         **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

         **(b)** To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph **(1)(a)** above;

         **(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(1)(b)**; or

         **(d)** Arising out of his or her providing or failing to provide professional health care services. However, if you have "employees" who are pharmacists in your retail druggist or drugstore operation, they are insured with respect to their providing or failing to provide professional health care services; or

      **(2)** "Property damage" to property:

         **(a)** Owned, occupied or used by,

         **(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

         you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   **b.** Any person (other than your "employee"), or any organization while acting as your real estate manager.

   **c.** Any person or organization having proper temporary custody of your property if you die, but only:

      **(1)** With respect to liability arising out of the maintenance or use of that property; and

      **(2)** Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**D. Liability And Medical Expenses Limits Of Insurance**

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The most we will pay for the sum of all damages because of all:

a. "Bodily injury", "property damage" and medical expenses arising out of any one "occurrence"; and

b. "Personal injury" and "advertising injury" sustained by any one person or organization;

is the Liability and Medical Expenses limit shown in the Declarations. But the most we will pay for all medical expenses because of "bodily injury" sustained by any one person is the Medical Expenses limit shown in the Declarations.

3. The most we will pay under Business Liability Coverage for damages because of "property damage" to premises while rented to you or temporarily occupied by you with permission of the owner, arising out of any one fire or explosion is the Fire Legal Liability limit shown in the Declarations.

4. **Aggregate Limits**

The most we will pay for:

a. Injury or damage under the "products - completed operations hazard" arising from all "occurrences" during the policy period is the Liability and Medical Expenses limit; and

b. All other injury or damage, including medical expenses, arising from all "occurrences" during the policy period is twice the Liability and Medical Expenses limit. This limitation does not apply to "property damage" to premises while rented to you or temporarily occupied by you with permission of the owner, arising out of fire or explosion.

The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**E. Liability And Medical Expenses General Conditions**

1. **Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this policy.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

 Copyright, Insurance Services Office, Inc., 1997 BP 00 06 01 97

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation, or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

## 3. Financial Responsibility Laws

a. When this policy is certified as proof of financial responsibility for the future under the provisions of any motor vehicle financial responsibility law, the insurance provided by the policy for "bodily injury" liability and "property damage" liability will comply with the provisions of the law to the extent of the coverage and limits of insurance required by that law.

b. With respect to "mobile equipment" to which this insurance applies, we will provide any liability, uninsured motorists, underinsured motorists, no-fault or other coverage required by any motor vehicle law. We will provide the required limits for those coverages.

## 4. Legal Action Against Us

No person or organization has a right under this policy:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

## 5. Separation Of Insureds

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this policy to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

## F. Liability And Medical Expenses Definitions

1. "Advertising injury" means injury arising out of one or more of the following offenses:

a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

b. Oral or written publication of material that violates a person's right of privacy;

c. Misappropriation of advertising ideas or style of doing business; or

d. Infringement of copyright, title or slogan.

2. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in **a.** above; or

   c. All parts of the world if:

      (1) The injury or damage arises out of:

         (a) Goods or products made or sold by you in the territory described in **a.** above; or

         (b) The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; and

      (2) The insured's responsibility to pay damages is determined in a "suit" on the merits in the territory described in **a.** above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

   (1) The repair, replacement, adjustment or removal of "your product" or "your work"; or

   (2) Your fulfilling the terms of the contract or agreement.

8. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack *agreement*;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph **f.** does not include that part of any contract or agreement:

   (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road beds, tunnel, underpass or crossing;

   (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

      (a) Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

Copyright, Insurance Services Office, Inc., 1997

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection or engineering services.

9. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

10. "Loading or unloading" means the handling of property:

   **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   **b.** While it is in or on an aircraft, watercraft or "auto"; or

   **c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

11. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   **a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   **b.** Vehicles maintained for use solely on or next to premises you own or rent;

   **c.** Vehicles that travel on crawler treads;

   **d.** Vehicles, whether self-propelled or not, on which are permanently mounted:

      (1) Power cranes, shovels, loaders, diggers or drills; or

      (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

   (2) Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

   However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   (1) Equipment designed primarily for:

      (a) Snow removal;

      (b) Road maintenance, but not construction or resurfacing; or

      (c) Street cleaning;

   (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

12. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

13. "Personal injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:

   **a.** False arrest, detention or imprisonment;

   **b.** Malicious prosecution;

   **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, by or on behalf of its owner, landlord or lessor;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

e. Oral or written publication of material that violates a person's right of privacy.

14. "Products - completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at the job site has been put to its intended use by any other person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

The "bodily injury" or "property damage" must occur away from premises you own or rent, unless your business includes the selling, handling or distribution of "your product" for consumption on premises you own or rent.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or

(2) The existence of tools, uninstalled equipment or abandoned or unused materials.

15. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

16. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

17. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

18. "Your product" means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(1) You;

(2) Others trading under your name; or

(3) A person or organization whose business or assets you have acquired; and

b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

b. The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

Copyright, Insurance Services Office, Inc., 1997

BP 00 06 01 97

19. "Your work" means:

    **a.** Work or operations performed by you or on your behalf; and

    **b.** Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

    **a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

    **b.** The providing of or failure to provide warnings or instructions.

BUSINESSOWNERS
BP 00 09 01 97

# BUSINESSOWNERS COMMON POLICY CONDITIONS

All coverages of this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 5 days before the effective date of cancellation if any one of the following conditions exists at any building that is Covered Property in this policy.

      (1) The building has been vacant or unoccupied 60 or more consecutive days. This does not apply to:

         (a) Seasonal unoccupancy; or

         (b) Buildings in the course of construction, renovation or addition.

         Buildings with 65% or more of the rental units or floor area vacant or unoccupied are considered unoccupied under this provision.

      (2) After damage by a covered cause of loss, permanent repairs to the building:

         (a) Have not started, and

         (b) Have not been contracted for,

         within 30 days of initial payment of loss.

      (3) The building has:

         (a) An outstanding order to vacate;

         (b) An outstanding demolition order; or

         (c) Been declared unsafe by governmental authority.

      (4) Fixed and salvageable items have been or are being removed from the building and are not being replaced. This does not apply to such removal that is necessary or incidental to any renovation or remodeling.

      (5) Failure to:

         (a) Furnish necessary heat, water, sewer service or electricity for 30 consecutive days or more, except during a period of seasonal unoccupancy; or

         (b) Pay property taxes that are owing and have been outstanding for more than one year following the date due, except that this provision will not apply where you are in a bona fide dispute with the taxing authority regarding payment of such taxes.

   b. 10 days before the effective date of cancellation if we cancel for nonpayment of premium.

   c. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

  Copyright, Insurance Services Office, Inc., 1997   ☐

**C. Concealment, Misrepresentation Or Fraud**

This policy is void in any case of fraud by you as it relates to this policy at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This policy;
2. The Covered Property;
3. Your interest in the Covered Property; or
4. A claim under this policy.

**D. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**E. Inspections And Surveys**

We have the right but are not obligated to:

1. Make inspections and surveys at any time;
2. Give you reports on the conditions we find; and
3. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

1. Are safe or healthful; or
2. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**F. Insurance Under Two Or More Coverages**

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

**G. Liberalization**

If we adopt any revision that would broaden the coverage under this policy without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this policy.

**H. Other Insurance**

1. If there is other insurance covering the same loss or damage, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.
2. Business Liability Coverage is excess over any other insurance that insures for direct physical loss or damage.
3. When this insurance is excess, we will have no duty under Business Liability Coverage to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so; but we will be entitled to the insured's rights against all those other insurers.

**I. Premiums**

1. The first Named Insured shown in the Declarations:

   a. Is responsible for the payment of all premiums; and

   b. Will be the payee for any return premiums we pay.

2. The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

3. With our consent, you may continue this policy in force by paying a continuation premium for each successive one-year period. The premium must be:

   a. Paid to us prior to the anniversary date; and

Copyright, Insurance Services Office, Inc.,1997   BP 00 09 01 97   ☐

b. Determined in accordance with Paragraph 2. above.

Our forms then in effect will apply. If you do not pay the continuation premium, this policy will expire on the first anniversary date that we have not received the premium.

4. Undeclared exposures or change in your business operation, acquisition or use of locations may occur during the policy period that are not shown in the Declarations. If so, we may require an additional premium. That premium will be determined in accordance with our rates and rules then in effect.

## J. Premium Audit

1. This policy is subject to audit if a premium designated as an advance premium is shown in the Declarations. We will compute the final premium due when we determine your actual exposures.

2. Premium shown in this policy as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

3 The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

## K. Transfer Of Rights Of Recovery Against Others To Us

1. Applicable to Businessowners Property Coverage:

If any person or organization to or for whom we make payment under this policy has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

a. Prior to a loss to your Covered Property.

b. After a loss to your Covered Property only if, at time of loss, that party is one of the following:

(1) Someone insured by this insurance;

(2) A business firm:

(a) Owned or controlled by you; or

(b) That owns or controls you; or

(3) Your tenant.

You may also accept the usual bills of lading or shipping receipts limiting the liability of carriers.

This will not restrict your insurance.

2. Applicable to Businessowners Liability Coverage:

If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them. This condition does not apply to Medical Expenses Coverage.

## L. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1997

BUSINESSOWNERS
BP 01 54 03 99

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY

**A.** The following is added to the **Legal Action Against Us** Condition:

The 2 year period for legal action against us is extended by the number of days between the date the proof of loss is filed with us and the date we deny the claim in whole or in part.

**B.** If this policy covers:

**1.** The following in **a.** and **b.**, then Paragraphs **2.** and **3.** apply:

**a.** Real property used principally for residential purposes up to and including a four family dwelling; or

**b.** Household or personal property that is usual or incidental to the occupancy of any premises used for residential purposes.

**2.** The second paragraph of the **Appraisal** Condition is deleted and replaced by the following:

**a.** Each party will pay its own appraiser and bear the other expenses of the appraisal and umpire equally, except as provided in **b.** below.

**b.** We will pay your appraiser's fee and the umpire's appraisal fee, if the following conditions exist:

**(1)** You demanded the appraisal; and

**(2)** The full amount of loss, as set by your appraiser, is agreed to by our appraiser or by the umpire.

**3.** The **Concealment, Misrepresentation Or Fraud** Condition is replaced by the following:

**CONCEALMENT, MISREPRESENTATION OR FRAUD**

**a.** This policy is void if you or any insured commit fraud or conceal or misrepresent a fact in the process leading to the issuance of this insurance, and such fraud, concealment or misrepresentation is stated in the policy or endorsement or in the written application for this policy and:

**(1)** Was made with actual intent to deceive; or

**(2)** Materially affected either our decision to provide this insurance or the hazard we assumed.

However, this condition will not serve as a reason to void this policy after the policy has been in effect for one year or one policy term, whichever is less.

**b.** This policy is void if you or any other insured, at any time subsequent to the issuance of this insurance, commit fraud or intentionally conceal or misrepresent a material fact relating to:

**(1)** This policy;

**(2)** The Covered Property;

**(3)** Your interest in the Covered Property; or

**(4)** A claim under this policy.

**c.** Notwithstanding the limitations stated in **3.a.** above, we may cancel policy in accordance with the terms of the Cancellation Condition.

**D.** The following exclusion is added to Paragraph **B.2. Exclusions** in the Businessoners Standard and Special Property Coverage Forms:

**1.** We will not pay for loss or damage arising out of any act committed:

**a.** By or at the direction of any insured; and

**b.** With the intent to cause a loss.

**2.** However, this exclusion will not apply to deny payment to an innocent co-insured who did not cooperate in or contribute to the creation of the loss if:

**a.** The loss arose out of a pattern of criminal domestic violence; and

**b.** The perpetrator of the loss is criminally prosecuted for the act causing the loss.

**3.** If we pay a claim pursuant to Paragraph **D.2.**, our payment to the insured is limited to that insured's insurable interest in the property less any payments we first made to a mortgagee or other party with a legal secured interest in the property. In no event will we pay more than the Limit of Insurance.

Copyright, Insurance Services Office, Inc., 1998

BUSINESSOWNERS
BP 04 17 01 96

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY

The following exclusion is added to Section **B.** EXCLUSIONS of the Businessowners Liability Coverage Form:

This insurance does not apply to:

1. "Bodily injury" or "personal injury" to:

    a. A person arising out of any:

    (1) Refusal to employ that person;

    (2) Termination of that person's employment; or

    (3) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

    b. The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" or "personal injury" to that person at whom any of the employment-related practices described in paragraphs **(1)**,**(2)** or **(3)** above is directed.

This exclusion applies:

a. Whether the insured may be liable as an employer or in any other capacity; and

b. To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Copyright, Insurance Services Office, Inc., 1996

POLICY NUMBER: BP00044456

BUSINESSOWNERS

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT - LIQUOR LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY

Under Section B. EXCLUSIONS in the Businessowners Liability Coverage Form, exclusion 1.c. is replaced by the following exclusion:

This insurance does not apply to "bodily injury" or "property damage" for which any insured may be held liable by reason of:

   a. Causing or contributing to the intoxication of any person;

   b. The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

   c. Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you:

   **(1)** Manufacture, sell or distribute alcoholic beverages;

   **(2)** Serve or furnish alcoholic beverages for a charge whether or not such activity:

      **(a)** requires a license;

      **(b)** is for this purpose of financial gain or livelihood; or

   **(3)** Serve or furnish alcoholic beverages without a charge, if a license is required for such activity.

Copyright, Insurance Services Office, Inc., 1989

BUSINESSOWNERS
BP 04 54 01 97

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NEWLY ACQUIRED ORGANIZATIONS

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY

The following is added to Paragraph **C. Who Is An Insured** of the Businessowners Liability Coverage Form:

**4.** Any organization you newly acquire or form, other than a partnership, joint venture, or limited liability company and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b. A. Coverages 1. Business Liability** does not apply to:

**(1)** "Bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**(2)** "Personal injury" or "advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture, or limited liability company that is not shown as a Named Insured in the Declarations.

Copyright, Insurance Services Office, Inc., 1997

BUSINESSOWNERS
BP 05 12 01 02

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION OF TERRORISM (WITH LIMITED EXCEPTION) AND EXCLUSION OF WAR AND MILITARY ACTION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM
BUSINESSOWNERS STANDARD PROPERTY COVERAGE FORM

**A.** The **War And Military Action Exclusion** is replaced by the following exclusion. With respect to any Coverage Form to which the War And Military Action Exclusion does not apply, that exclusion is hereby added as follows.

**WAR AND MILITARY ACTION EXCLUSION**

We will not pay for loss or damage caused directly or indirectly by the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

1. War, including undeclared or civil war; or

2. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

3. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

With respect to any action that comes within the terms of this exclusion and involves nuclear reaction or radiation, or radioactive contamination, this War And Military Action Exclusion supersedes the Nuclear Hazard Exclusion.

**B.** Regardless of the amount of damage and losses, the Terrorism Exclusion applies to any incident of terrorism:

1. That involves the use, release or escape of nuclear materials, or that directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

2. That is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

3. In which pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

Except as provided in **B.1.**, **B.2.** or **B.3.** above, the Terrorism Exclusion will only apply to an incident of terrorism in which the total of insured damage to all types of property in the United States, its territories and possessions, Puerto Rico and Canada exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions. Multiple incidents of terrorism which occur within a 72-hour period and appear to be carried out in concert or to have a related purposed or common leadership will be deemed to be one incident.

The preceding paragraph describes the threshold used to measure the magnitude of an incident of terrorism and the circumstances in which the threshold will apply, for the purpose of determining whether the Terrorism Exclusion will apply to that incident. When the Terrorism Exclusion applies to an incident of terrorism, there is no coverage under this Coverage Form.

In the event of any incident of terrorism that is not subject to the Terrorism Exclusion, coverage does not apply to any element of loss or damage that is otherwise excluded under this Coverage Form.

## TERRORISM EXCLUSION

We will not pay for loss or damage caused directly or indirectly by terrorism, including action in hindering or defending against an actual or expected incident of terrorism. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

But if terrorism results in fire, we will pay for the loss or damage caused by that fire. However, this exception for fire applies only to direct loss or damage by fire to Covered Property. Therefore, for example, the exception does not apply to insurance provided under the Business Income and/or Extra Expense Additional Coverages.

Terrorism means activities against persons, organizations or property of any nature:

1. That involve the following or preparation for the following:

   a. Use or threat of force or violence; or

   b. Commission or threat of a dangerous act; or

   c. Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

2. When one or both of the following applies:

   a. The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

   b. It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

But with respect to any such activity that also comes within the terms of the War And Military Action Exclusion, that exclusion supersedes this Terrorism Exclusion.

In the event of an incident of terrorism that involves nuclear reaction or radiation, or radioactive contamination, this Terrorism Exclusion supersedes the Nuclear Hazard Exclusion.

© ISO Properties, Inc., 2001
BP 05 12 01 02

BUSINESSOWNERS
BP 05 13 01 02

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# WAR OR TERRORISM EXCLUSION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS LIABILITY COVERAGE FORM

**A.** Paragraph **B.1.i. Exclusions** is replaced by the following:

1. **Applicable To Business Liability Coverage**

   *This insurance does not apply to:*

   i. **War Or Terrorism**

   "Bodily injury" or "property damage", "personal injury" or "advertising injury" arising directly or indirectly out of:

   (1) War, including undeclared or civil war; or

   (2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   (3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these; or

   (4) "Terrorism", including any action taken in hindering or defending against an actual or expected incident of "terrorism"

   regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage.

   However, with respect to "terrorism", this exclusion only applies if one or more of the following are attributable to an incident of "terrorism":

   (1) The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

   (2) Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

   (a) Physical injury that involves a substantial risk of death; or

   (b) Protracted and obvious physical disfigurement; or

   (c) Protracted loss of or impairment of the function of a bodily member or organ; or

   (3) The "terrorism" involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

   (4) The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

BP 05 13 01 02 © ISO Properties, Inc., 2001 Page 1 of 2 □

(5) Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials.

Paragraphs **(1)** and **(2)**, immediately preceding, describe the thresholds used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether the Terrorism Exclusion will apply to that incident. When the Terrorism Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Form.

In the event of any incident of "terrorism" that is not subject to the Terrorism Exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Form.

Multiple incidents of "terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

**B.** Paragraph **B.2.h.** Exclusions Applicable To Medical Expenses Coverage does not apply.

**C.** The following definition is added to Paragraph **F. Liability And Medical Expenses Definitions:**

"Terrorism" means activities against persons, organizations or property of any nature:

1. That involve the following or preparation for the following:

   **a.** Use or threat of force or violence; or

   **b.** Commission or threat of a dangerous act; or

   **c.** Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

2. When one or both of the following applies:

   **a.** The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

   **b.** It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

© ISO Properties, Inc., 2001

BP 05 13 01 02

BUSINESSOWNERS
BP 10 04 04 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTAIN COMPUTER-RELATED LOSSES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS STANDARD AND SPECIAL PROPERTY COVERAGE FORMS including any attached endorsement that may provide specialized coverage on computers.

The following exclusion is added to Paragraph **B., Exclusions** in the Businessowners Standard and Special Property Coverage Forms:

1. We will not pay for loss or damage, caused by the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage.

   **a.** The failure, malfunction or inadequacy of:

   (1) Any of the following, whether belonging to any insured or to others:

      (a) Computer hardware, including microprocessors or other Electronic Data Processing Equipment as may be described elsewhere in this policy;

      (b) Computer application software or other Electronic Media and Records as may be described elsewhere in this policy;

      (c) Computer operating systems and related software;

      (d) Computer networks;

      (e) Microprocessors (computer chips) not part of any computer system; or

      (f) Any other computerized or electronic equipment or components; or

   (2) Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph **1.a.(1)** of this endorsement;

   due to the inability to correctly recognize, distinguish, interpret or accept one or more dates or times. An example is the inability of computer software to recognize the year 2000.

   **b.** Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify to test for, any potential or actual problems described in Paragraph **1.a.** of this endorsement.

2. If excluded loss or damage, as described in Paragraph **1.a.** of this endorsement results in:

   **a.** A "Specified Cause of Loss" under the Businessowners Special Property Coverage Form; or

   **b.** A Covered Cause of Loss under the Businessowners Standard Property Coverage Form;

   we will pay only for the loss or damage caused by such "Specified Cause of Loss" or Covered Cause of Loss.

3. We will not pay for repair, replacement or modification of any items in **1.a.(1)** or **1.a.(2)** of this endorsement to correct any deficiencies or change any features.

 Copyright, Insurance Services Office, Inc., 1998

# BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM
## TABLE OF CONTENTS

A.  Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Covered Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
Property Not Covered . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
Covered Causes of Loss . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
Limitations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
Additional Coverages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
  Debris Removal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
  Preservation Of Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
  Fire Department Service Charge . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
  Collapse . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
  Water Damage, Other Liquids, Powder Or Molten Material Damage . . . . . . 5
  Business Income . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
  Extra Expense . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
  Pollutant Clean Up And Removal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
  Civil Authority . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
  Money Orders And Counterfeit Paper Currency . . . . . . . . . . . . . . . . . . . 9
  Forgery And Alteration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
  Increased Cost of Construction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
  Building Glass Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
  Equipment Breakdown . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
  Utility Services . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
  Fungus . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
Coverage Extensions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
  Personal Property At Newly Acquired Premises . . . . . . . . . . . . . . . . . . . 16
  Personal Property Off Premises . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
  Outdoor Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
  Personal Effects . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
  Valuable Papers And Records . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
  Accounts Receivable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
  Outdoor Signs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
  Money And Securities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
  Employee Dishonesty . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
  Fine Arts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
  Property In Transit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
  Electronic Data Processing Equipment . . . . . . . . . . . . . . . . . . . . . . . . . 23

B.  Exclusions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

C.  Limits of Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

D.  Deductibles . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

E.  Property Loss Conditions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
Abandonment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
Appraisal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
Duties In The Event Of Loss Or Damage . . . . . . . . . . . . . . . . . . . . . . . . 33
Legal Action Against Us . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
Limitation - Electronic Media And Records . . . . . . . . . . . . . . . . . . . . . . . 34
Loss Payment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
Recovered Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

CBP 020 (04-02)                                    i

# BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM
## TABLE OF CONTENTS

Resumption Of Operations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .38 . . . .
Vacancy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .38 . . . .

F.  Property General Conditions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .39 . . . .
Mortgageholders . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .39 . . . .
No Benefit To Bailee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .40 . . . .
Policy Period, Coverage Territory . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .40 . . . .

G.  Property Definitions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .40 . . . . .
Fine arts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .40 . . . . .
Fungus . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .40 . . . . .
Money . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .40 . . . . .
Operations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .41 . . . . .
Period of restoration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .41 . . . . .
Period of restoration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .41 . . . . .
Pollutants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .41 . . . . .
Securities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .41 . . . . .
Specified Causes of Loss . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .41 . . . .
Utility Services . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .42 . . . .
Valuable Papers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .42 . . . .

**Capitol Indemnity Corporation**
P.O. Box 5900
Madison, WI 53705

# BUSINESSOWNERS SPECIAL
# PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear underlined have special meaning. Refer to Section **G - Property Definitions.**

**A.  Coverage**

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

**1.  Covered Property**

Covered Property, as used in this policy, means the type of property as described in this section, **A.1.,** and limited in **A.2.,** Property Not Covered, if a Limit of Insurance is shown in the Declarations for that type of property.

**a.**  Buildings, meaning the buildings and structures at the premises described in the Declarations, including;

**(1)**  Completed additions;

**(2)**  Fixtures, including outdoor fixtures;

**(3)**  Permanently installed:

**(a)**  Machinery; and

**(b)**  Equipment

**(4)**  Your personal property in apartments or rooms furnished by you as landlord;

**(5)**  Personal property owned by you that is used to maintain or service the buildings or structures or the premises, including:

**(a)**  Fire extinguishing equipment;

**(b)**  Outdoor furniture;

**(c)**  Floor coverings; and

**(d)**  Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

      (6)   If not covered by other insurance:

           (a)   Additions under construction, alterations and repairs to the buildings or structures;

           (b)   Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the buildings or structures.

**b.**   Business Personal Property located in or on the buildings at the described premises or in the open (or in a vehicle) within 100 feet of the described premises, including:

      (1)   Property you own that is used in your business;

      (2)   Property of others that is in your care, custody or control, except as otherwise provided in Loss Payment Property Loss Condition **E.6.d.(3)(b)**;

      (3)   Tenant's improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

           (a)   Made a part of the building or structure you occupy but do not own;

           (b)   You acquired or made at your expense but cannot legally remove; and

      (4)   Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Paragraph **A.1.b.(2).**

**2.**   **Property Not Covered**

Covered Property does not include:

**a.**   Aircraft, automobiles, motortrucks and other vehicles subject to motor vehicle registration;

**b.**   Money or securities except as provided in the:

      (1)   Money and Securities Coverage Extension; or

      (2)   Employee Dishonesty Coverage Extension;

**c.**   Contraband, or property in the course of illegal transportation or trade;

**d.**   Land (including land on which the property is located), water, growing crops or lawns;

**e.**   Outdoor fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, signs (attached or detached), trees, shrubs or plants, all except as provided in the:

      (1)   Outdoor Property Coverage Extension; or

      (2)   Outdoor Signs Coverage Extension;

**f.**   Watercraft (including motors, equipment and accessories) while afloat.

**3.**   **Covered Causes of Loss**

Risks Of Direct Physical Loss unless the loss is:

**a.**   Excluded in Section **B.**, Exclusions; or

**b.**   Limited in Paragraph **A.4.**, Limitations;

**4.**   **Limitations**

    **a.**   We will not pay for loss of or damage to:

        **(1)**   Property that is missing, but there is no physical evidence to show what happened to it, such as shortage disclosed on taking inventory. This limitation does not apply to the Coverage Extension for Money and Securities.

        **(2)**   Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

    **b.**   We will not pay for loss of or damage to fragile articles such as glassware, statuary, marbles, chinaware and porcelains, if broken, unless caused by the <u>specified causes of loss</u> or building glass breakage. This restriction does not apply to:

        **(1)**   Glass that is part of the interior of a building or structure;

        **(2)**   Containers of property held for sale; or

        **(3)**   Photographic or scientific instrument lenses.

    **c.**   For loss or damage by theft, the following types of property are covered only up to the limits shown:

        **(1)**   $2,500 for furs, fur garments and garments trimmed with fur.

        **(2)**   $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

        **(3)**   $2,500 for patterns, dies, molds and forms.

**5.**   **Additional Coverages**

    **a.**   **Debris Removal**

        **(1)**   We will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the earlier of:

            **(a)**   The date of direct physical loss or damage; or

                **(i)**   The end of the policy period.

        **(2)**   The most we will pay under this Additional Coverage is 25% of:

            **(a)**   The amount we pay for the direct physical loss of or damage to Covered Property; plus

     (b)   The deductible in this policy applicable to that loss or damage.

     But this limitation does not apply to any additional debris removal limit provided in Paragraph **(4)** below.

  (3)   This Additional Coverage does not apply to costs to:

     (a)   Extract pollutants for land or water; or
     (b)   Remove, restore or replace polluted land or water.

  (4)   If:

     (a)   The sum of direct physical loss or damage and debris removal expense exceeds the Limit of Insurance; or

     (b)   The debris removal expense exceeds the amount payable under the 25% Debris Removal Coverage limitation in Paragraph **(2)** above;

     we will pay up to an additional $10,000 for each location in any one occurrence under the Debris Removal Additional Coverage.

**b.**   **Preservation Of Property**

   If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss of or damage to that property:

  (1)   While it is being moved or while temporarily stored at another location; and

  (2)   Only if the loss or damage occurs within 30 days after the property is first moved.

**c.**   **Fire Department Service Charge**

   When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $1,000 for your liability for fire department service charges:

  (1)   Assumed by contract or agreement prior to loss; or

  (2)   Required by local ordinance.

**d.**   **Collapse**

  (1)   We will pay for direct physical loss or damage to Covered Property, caused by collapse of a building or any part of a building insured under this policy, if the collapse is caused by one or more of the following:

     (a)   The specified cause of loss or breakage of building glass, all only as insured against in this policy;

     (b)   Hidden decay;

      (c)    Hidden insect or vermin damage;

      (d)    Weight of people or personal property;

      (e)    Weight of rain that collects on a roof;

      (f)    Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation. However, if the collapse occurs after construction, remodeling or renovation is complete and is caused in part by a cause of loss listed in **d.(1)(b)** through **d.(1)(e)**, we will pay for the loss or damage even if use of defective material or methods in construction, remodeling or renovation, contributes to the collapse.

  (2)    If the direct physical loss or damage does not involve collapse of a building or any part of a building, we will pay for loss or damage to Covered Property caused by the collapse of personal property only if:

      (a)    The personal property which collapses is inside a building insured under this policy; and

      (b)    The collapse was caused by a cause of loss listed in **d.(1)(b)** through **d.(1)(e)** above.

  (3)    With respect to the following property:

      (a)    Awnings;

      (b)    Gutters and downspouts;

      (c)    Yard fixtures;

      (d)    Outdoor swimming pools;

      (e)    Piers, wharves and docks;

      (f)    Beach or diving platforms or appurtenances;

      (g)    Retaining walls; and

      (h)    Walks, roadways and other paved surfaces;

if the collapse is caused by a cause of loss listed in **d.(1)(b)** through **d.(1)(e)**, we will pay for loss or damage to that property only if such loss or damage is a direct result of the collapse of a building insured under this policy and the property is Covered Property under this policy.

  (4)    Collapse does not include settling, cracking, shrinkage, bulging or expansion.

**e.**    **Water Damage, Other Liquids, Powder Or Molten Material Damage**

If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

We will not pay the cost to repair any defect that caused the loss or damage; but we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

(1)     Results in discharge of any substance from an automatic fire protection system; or

(2)     Is directly caused by freezing.

We will pay for loss or damages to covered property at the described premises caused by water from a nonexisting body of water that backs up from a sewer or drain. The most we will pay for loss or damage under this additional coverage is $25,000.

**f.     Business Income**

**(1)     Business Income**

We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your operations during the period of restoration. The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of the site at which the described premises are located.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means:

(a)     The portion of the building which you rent, lease or occupy; and

(b)     Any area within the building or on the site at which the described premises are located, if that area services, or is used to gain access to, the described premises.

We will only pay for loss of Business Income that you sustain during the period of restoration and that occurs within 12 consecutive months after the date of direct physical loss or damage. We will only pay for ordinary payroll expense 60 days following the date of direct physical loss or damage.

Business Income means the:

(i) Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses; and

(ii) Continuing normal operating expenses incurred, including payroll.

Ordinary payroll expenses mean payroll expenses for all your employees except:

(a)     Officers;

(b)     Executives;

(c)   Department Managers;

(d)   Employees under contact; and

Ordinary payroll expenses include:

(a)   Payroll;

(b)   Employee Benefits, if directly related to payroll;

(c)   FICA payments you pay;

(d)   Union dues you pay; and

(e)   Workers' compensation premiums.

**(2)  Extended Business Income**

If the necessary suspension of your operations produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

(a)   Begins on the date property except finished stock is actually repaired, rebuilt or replaced and operations are resumed; and

(b)   Ends on the earlier of:

    (i)   The date you could restore your operations, with reasonable speed, to the level which would generate the Business Income amount that would have existed if no direct physical loss or damage had occurred; or

    (ii)  30 consecutive days after the date determined in (2)(a) above.

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

This Additional Coverage is not subject to the Limits of Insurance.

**g.  Extra Expense**

(1)  We will pay necessary Extra Expense you incur during the period of restoration that you would not have incurred if there had been no direct physical loss or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of the site at which the described premises are located.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means:

   (a)   The portion of the building which you rent, lease or occupy; and

   (b)   Any area within the building or on the site at which the described premises are located, if that area services, or is used to gain access to, the described premises.

(2)   Extra Expense means expense incurred:

   (a)   To avoid or minimize the suspension of business and to continue operations:

       (i)   At the described premises; or

       (ii)   At replacement premises or at temporary locations, including relocation expenses, and costs to equip and operate the replacement or temporary locations.

   (b)   To minimize the suspension of business if you cannot continue operations.

   (c)   To:

       (i)   Repair or replace any property; or

       (ii)   Research, replace or restore the lost information on damaged valuable papers and records:

          to the extent it reduces the amount of loss that otherwise would have been payable under this Additional Coverage or Additional Coverage **f.** Business Income.

We will only pay for Extra Expense that occurs within 12 consecutive months after the date of direct physical loss or damage. This Additional Coverage is not subject to the Limits of Insurance.

**h.**   **Pollutant Clean Up And Removal**

We will pay your expense to extract pollutants from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the pollutants is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the earlier of:

   **(1)**   The date of direct physical loss or damage; or

   **(2)**   The end of the policy period.

The most we will pay for each location under this Additional Coverage is $10,000 for the sum of all such expenses arising out of Covered Causes of Loss occurring during each separate 12 month period of this policy.

**i.**   **Civil Authority**

We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss.

This coverage will apply for a period of up to three consecutive weeks from the date of that action.

The definitions of Business Income and Extra Expense contained in the Business Income and Extra Expense Additional Coverages also apply to this Civil Authority Additional Coverage. The Civil Authority Additional Coverage is not subject to the Limits of Insurance.

**j.     Money Orders And Counterfeit Paper Currency**

We will pay for loss due to the good faith acceptance of:

(1)    Any U.S. or Canadian post office, express company, or national or state (or Canadian) chartered bank money order that is not paid upon presentation to the issuer; or

(2)    Counterfeit United States or Canadian paper currency;

in exchange for merchandise, money or services or as part of a normal business transaction.

The most we will pay for any loss under this Additional Coverage is $1,000.

**k.     Forgery And Alteration**

(1)    We will pay for loss resulting directly from forgery or alteration of, any check, draft, promissory note, bill of exchanges or similar written promise of payment in money, that you or your agent has issued, or that was issued by someone who impersonated you or your agent.

(2)    If you are sued for refusing to pay the check, draft, promissory note, bill of exchange or similar written promise of payment in money, on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur in that defense.

(3)    The most we will pay for any loss, including legal expenses, under this Additional Coverage is $2,500 unless a higher Limit of Insurance for Forgery and Alterations is shown in the Declarations.

**l.     Increased Cost of Construction**

(1)    This Additional Coverage applies only to buildings insured on a replacement cost basis.

(2)    In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with enforcement of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in l.(3) through l.(9) of this Additional Coverage.

(3)    The ordinance or law referred to in l.(2) of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises, and is in force at the time of loss.

(4)    Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

(a)    You were required to , comply with before loss, even when the building was undamaged; and

(b)    You failed to comply with.

(5)   Under this Additional Coverage, we will not pay any costs associated with the enforcement of an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

(6)   The most we will pay under this Additional Coverage, for each described building insured under this Coverage Form, is $5,000.

The amount payable under this Additional Coverage is additional insurance.

(7)   With respect to this Additional Coverage:

    (a)   We will not pay for the Increased Cost of Construction:

        (i)    Until the property is actually repaired or replaced, at the same or another premises; and

        (ii)   Unless the repairs are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

    (b)   If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction is the increased cost of construction at the same premises.

    (c)   If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction is the increased cost of construction at the new premises.

(8)   This Additional Coverage is not subject to the terms of the Ordinance or Law Exclusion, to the extent that such Exclusion would conflict with the provisions of this Additional Coverage.

(9)   The costs addressed in the Loss Payment Property Loss Condition in this Coverage Form do not include the increased cost attributable to enforcement of an ordinance or law. The amount payable under this Additional Coverage, as stated in I.(6) of this Additional Coverage, is not subject to such limitation.

**m.   Building Glass Coverage**

(1)   If building coverage is written, we will pay for direct physical loss to all building glass, including all lettering and ornamentation, located at the described premises.

(2)   We will also pay for:

    (a)   Expenses incurred to put up temporary plates or board up openings if repair or replacement of damaged glass is delayed;

    (b)   Necessary repair or replacement of the frames immediately encasing the damaged glass; and

  **(c)** Expenses incurred to remove or replace obstructions (excluding window displays) when repairing or replacing the covered property.

 **(3)** Section **B., Exclusions** does not apply to this Additional Coverage, except for:

  **(a)** Paragraph **B.1.b.,** Earth Movement;

  **(b)** Paragraph **B.1.c.,** Governmental Action;

  **(c)** Paragraph **B.1.d.,** Nuclear Hazard;

  **(d)** Paragraph **B.1.f.,** War And Military Action; and

  **(e)** Paragraph **B.1.g.,** Water.

 **(4)** We will not pay for loss or damage caused by or resulting from:

  **(a)** Wear and tear;

  **(b)** Hidden or latent defect;

  **(c)** Corrosion; or

  **(d)** Rust.

 **(5)** The most we pay under this Additional Coverage is the Building Limit of Insurance shown in the Declarations.

  However, if you are a tenant and no Limit of Insurance is shown in the Declarations for Building property, coverage will be provided only if Tenant's Building Glass is listed as an optional coverage in the Declarations.

**n.** **Equipment Breakdown**

 **(1)** We will pay for loss caused by or resulting from an accident to covered equipment. As used in this Additional Coverage, an accident means direct physical loss as follows:

  **(a)** mechanical breakdown, including rupture or bursting caused by centrifugal force;

  **(b)** artificially generated electric current, including electric arcing, that disturbs electrical devices, appliances or wires;

  **(c)** explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control;

  **(d)** loss or damage to steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment; or

  **(e)** loss or damage to hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment.

If an initial accident causes other accidents, all will be considered one accident. All accidents that are the result of the same event will be considered one accident. Covered equipment means Covered Property built to operate under vacuum or pressure, other than weight of contents, or used for the generation, transmission or utilization of energy.

(2) The following additional coverages also apply to loss caused by or resulting from an accident to covered equipment. These coverages are not additional amounts of insurance.

    (a) **Expediting Expenses**

        With respect to your damaged Covered Property, we will pay the reasonable extra cost to:

        (i) make temporary repairs; and

        (ii) expedite permanent repairs or replacement.

    (b) **Hazardous Substances**

        We will pay for the additional cost to repair or replace Covered Property because of contamination by a hazardous substance. This includes the additional expenses to clean up or dispose of such property.

        Hazardous substance means any substance other than ammonia that has been declared to be hazardous to health by a governmental agency.

        Additional costs mean those beyond what would have been required had no hazardous substance been involved.

        The most we will pay for loss or damage under this coverage, including actual loss of Business Income you sustain, necessary Extra Expense you incur and loss under Perishable Goods coverage, is $25,000.

    (c) **Perishable Goods**

        (i) We will pay for your loss of perishable goods due to spoilage.

        (ii) We will also pay for your loss of perishable goods due to contamination from the release of refrigerant, including but not limited to ammonia.

        (iii) We will also pay any necessary expenses you incur to reduce the amount of loss under this coverage. We will pay for such expense to the extent that they do not exceed the amount of loss that otherwise would have been payable under this coverage.

        (iv) If you are unable to replace the perishable goods before its anticipated sale, the amount of our payment will be determined on the basis of the sales price of the perishable goods at the time of the accident, less discounts and expenses you otherwise would have had. Otherwise our payment will be determined in accordance with the Loss Payment condition.

(v)    Additional Definition. For the purpose of this coverage, perishable goods means personal property maintained under controlled conditions for its preservation, and susceptible to loss or damage if the controlled conditions change.

The most we will pay for loss or damage under this coverage is $25,000.

**(d)    CFC Refrigerants**

We will pay for the additional cost to repair or replace Covered Property because of the use or presence of a refrigerant containing CFC (chlorinated fluorocarbon) substances. This means the additional expense to do the least expensive of the following:

**(i)**    Repair the damaged property and replace any lost CFC refrigerant;

**(ii)**    Repair the damaged property, retrofit the system to accept a non-CFC refrigerant and charge the system with a non-CFC refrigerant; or

**(iii)**    Replace the system with one using a non-CFC refrigerant.

Additional costs mean those beyond what would have been required had no CFC refrigerant been involved.

The most we will pay for loss or damage under this coverage, including actual loss of Business Income you sustain, necessary Extra Expense you incur and loss under Perishable Goods coverage is $25,000.

**(e)    Service Interruption**

The insurance provided for Business Income, Extra Expense and Perishable Goods is extended to apply to loss caused by or resulting from an accident to equipment that is owned by a utility, landlord, or other supplier with whom you have a contract to provide you with any of the following services: electrical power, communications, waste disposal, air conditioning, refrigeration, heating, gas, air, water or steam.

**(3)    Exclusions**

**(a)**    The Exclusions are modified as follows:

**(i)**    The following is added to **Exclusion B.1.g.(1):** However, if electrical covered equipment requires drying out because of the above, we will pay for the direct expenses of such drying out subject to the applicable limit and deductible.

**(ii)**    As respects to this coverage only, the last paragraph of **Exclusion B.2.h.** is deleted and replaced with the following: But if an excluded cause of loss that is listed in **B.2.h.(1)** through **B.2.h.(6)** results in an accident, we will pay for the loss or damage caused by that accident.

**(b)**    None of the following is covered equipment:

**(i)**    structure, foundation, cabinet, compartment or air supported structure or building;

**(ii)**    insulating or refractory material;

    **(iii)** sewer piping, underground vessels or piping, piping forming a part of a sprinkler system or water piping other than boiler feedwater piping, boiler condensate return piping or water piping forming a part of a refrigerating or air conditioning system;

    **(iv)** vehicle, dragline, excavation or construction equipment; or

    **(v)** equipment manufactured by you for sale.

  **(c)** We will not pay under this coverage for loss or damage caused by or resulting from:

    **(i)** your failure to use all reasonable means to protect the perishable goods from damage following an accident;

    **(ii)** any of the following tests: a hydrostatic, pneumatic or gas pressure test of any boiler or pressure vessel; or an insulation breakdown test of any type of electrical equipment.

  **(d)** With respect to Service Interruption coverage and Perishable Goods coverage, we will also not pay for loss or damage caused by or resulting from: fire; lightning; windstorm or hail; explosion (except for steam or centrifugal explosion); smoke; aircraft or vehicles; riot or civil commotion; vandalism; sprinkler leakage; falling objects; weight of snow, ice or sleet; freezing or collapse.

**(4) Condition - Suspension**

When any covered equipment is found to be in, or exposed to a dangerous condition, any of our representatives may immediately suspend the insurance against loss from an accident to that equipment. We can do this by mailing or delivering a written notice of suspension to your address as shown in the Declarations, or at the address where the equipment is located. Once suspended in this way, your insurance can be reinstated only by written notice from us. If we suspend your insurance, you will get a pro rata refund of premium. But the suspension will be effective even if we have not yet made or offered a refund.

**o. Utility Services**

**(1) Direct Damage**

  **(a)** We will pay for loss of or damage to Covered Property caused by the interruption of Utility Services. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to any of the following:

    **(i)** Water Supply;

    **(ii)** Communication Supply (Including Overhead Transmission Lines); or

    **(iii)** Power Supply (Including Overhead Transmission Lines)

    located off premises of Covered Property described in the Declarations.

  **(b)** The most we will pay is the applicable Limit of Insurance on the Covered Property as shown in the Declarations. Utility Services Coverage does not increase the applicable Limit of Insurance.

(2) **Time Element**

    (a) We will pay for loss of Business Income or Extra Expense to Covered Property caused by the interruption of service. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to any of the following:

        (i) Water Supply;

        (ii) Communication Supply (Including Overhead Transmission Lines); or

        (iii) Power Supply (Including Overhead Transmission Lines)

    located outside of a covered building described in the Declarations.

    (b) We will pay for loss of Business Income that you sustain during the period of restoration and that occurs within 12 consecutive months after the date of direct physical loss or damage. We will only pay for ordinary payroll expense 60 days following the date of direct physical loss or damage.

    (c) We will only pay for Extra Expense that occurs within 12 consecutive months after the date of direct physical loss or damage.

    (d) This Additional Coverage is not subject to the Limits of Insurance.

**p. Limited Coverage For Fungus, Wet Rot, Dry Rot And Bacteria**

(1) The coverage described in P.2. and P.6. only applies when the fungus, wet or dry rot or bacteria is the result of one or more of the following causes that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

    (a) A specified cause of loss other than fire or lightning; or

    (b) Flood, if the Flood Coverage Endorsement applies to the affected premises.

(2) We will pay for loss or damage by fungus, wet or dry rot or bacteria. As used in this Limited Coverage, the term loss or damage means:

    (a) Direct physical loss or damage to Covered Property caused by fungus, wet or dry rot or bacteria, including the cost of removal of the fungus, wet or dry rot or bacteria;

    (b) The cost to tear out and replace any part of the building or other property as needed to gain access to the fungus, wet or dry rot or bacteria; and

    (c) The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that fungus, wet or dry rot or bacteria are present.

(3) The coverage described under P.2. of this Limited Coverage is limited to $15,000. Regardless of the number of claims, this limit is the most we will pay for the total of all

loss or damage arising out of all occurrences of specified causes of loss (other than fire or lightning) and Flood which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in fungus, wet or dry rot or bacteria, we will not pay more than a total of $15,000 even if the fungus, wet or dry rot or bacteria continues to be present or active, or recurs, in a later policy period.

(4) The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by fungus, wet or dry rot or bacteria, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

If there is covered loss or damage to Covered Property, not caused by fungus, wet or dry rot or bacteria, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that fungus, wet or dry rot or bacteria causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

(5) The terms of this Limited Coverage do not increase or reduce the coverage provided under Paragraph 5.e. (Water Damage, Other Liquids, Powder Or Molten Material Damage) of this Causes Of Loss Form or under the Additional Coverage - Collapse.

(6) The following, 6.(a). or 6.(b)., applies only if Business Income and/or Extra Expense coverage applies to the described premises and only if the suspension of operations satisfies all terms and conditions of the applicable Business Income and/or Extra Expense coverage form.

(a) If the loss which resulted in fungus, wet or dry rot or bacteria does not in itself necessitate a suspension of operations, but such suspension is necessary due to loss or damage to property caused by fungus, wet or dry rot or bacteria, then our payment under Business Income and/or Extra Expense is limited to the amount of loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

(b) If a covered suspension of operations was caused by loss or damage other than fungus, wet or dry rot or bacteria but remediation of fungus, wet or dry rot or bacteria prolongs the period of restoration, we will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the period of restoration), but such coverage is limited to 30 days. The days need not be consecutive.

6. **Coverage Extensions**

In addition to the Limits of Insurance, you may extend the insurance provided by this policy as provided below.

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

a. **Personal Property At Newly Acquired Premises**

CBP 020 (04-02)

(1)   You may extend the insurance that applies to Business Personal Property to apply to that property at any premises you acquire.

The most we will pay for loss or damage under this Extension is $100,000 at each premises.

(2)   Insurance under this Extension for each newly acquired premises will end when any of the following first occurs:

(a)   This policy expires;

(b)   30 days expire after you acquire or begin construction at the new premises; or

(c)   You report values to us.

We will charge you additional premium for values reported from the date you acquire the premises.

**b.    Personal Property Off Premises**

You may extend the insurance that applies to Business Personal Property to apply to covered Business Personal Property other than money and securities, valuable papers and records or accounts receivable, while it is in the course of transit or temporarily at a premises you do not own, lease or operate.  The most we will pay for loss or damage under this Extension is $15,000.

**c.    Outdoor Property**

You may extend the insurance provided by this policy to apply to your outdoor fences, radio and television antennas (including satellite dishes), trees, shrubs and plants, including debris removal expense, caused by or resulting from any of the following causes of loss:

(1)   Fire;

(2)   Lightning;

(3)   Explosion;

(4)   Riot or Civil Commotion; or

(5)   Aircraft.

The most we will pay for loss or damage under this Extension is $2,500, but not more than $500 for any one tree, shrub or plant.

**d.    Personal Effects**

You may extend the insurance that applies to Business Personal Property to apply to personal effects owned by you, your officers, your partners or your employees.  This extension does not apply to:

(1)   Tools or equipment used in your business; or

(2)   Loss or damage by theft.

The most we will pay for loss or damage under this Extension is $10,000 at each described premises.

**e.   Valuable Papers And Records**

(1)   You may extend the insurance that applies to Business Personal Property to apply to direct physical loss or damage to valuable papers and records that you own, or that are in your care, custody or control caused by or resulting from a Covered Cause of Loss. This Coverage Extension includes the cost to research lost information on valuable papers and records for which duplicates do not exist.

(2)   This Coverage Extension does not apply to property held as samples or for delivery after sale.

(3)   The most we will pay under this Coverage Extension for loss or damage to valuable papers and records in any one occurrence at or away from the described premises is $25,000 unless a higher Limit of Insurance for valuable papers and records is shown in the Declarations.

(4)   Section **B. Exclusions** of this Coverage Form does not apply to this Coverage Extension except for:

(a)   Paragraph **B.1.c.,** Governmental Action;

(b)   Paragraph **B.1.d.,** Nuclear Hazard;

(c)   Paragraph **B.1.f.,** War and Military Action;

(d)   Paragraph **B.2.d.,** False Pretense;

(e)   Paragraph **B.3.;** and

(f)   The Accounts Receivable and Valuable Papers And Records Exclusions.

**f.   Accounts Receivable**

(1)   You may extend the insurance that applies to Business Personal Property to apply to accounts receivable. We will pay:

(a)   All amounts due from your customers that you are unable to collect;

(b)   Interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts;

(c)   Collection expenses in excess of your normal collection expenses that are made necessary by loss or damage; and

(d)   Other reasonable expenses that you incur to re-establish your records of accounts receivable;

that result from direct physical loss or damage by any Covered Cause of Loss to your records of accounts receivable.

(2)   The most we will pay under this Coverage Extension for loss or damage in any one occurrence at or away from the described premises is $25,000, unless a higher Limit of Insurance for accounts receivable is shown in the Declarations.

(3)   Section **B. Exclusions** of this Coverage Form does not apply to this Coverage Extension except for:

   **(a)**   Paragraph **B.1.c.,** Governmental Action;

   **(b)**   Paragraph **B.1.d.,** Nuclear Hazard;

   **(c)**   Paragraph **B.1.f.,** War and Military Action;

   **(d)**   Paragraph **B.2.d.,** False Pretense;

   **(e)**   Paragraph **B.3.;** and

   **(f)**   The Accounts Receivable and Valuable Papers and Records Exclusions.

**g.**   **Outdoor Signs**

(1)   You may extend the insurance provided by this coverage form to include direct physical loss of or damage to all outdoor signs (attached and detached); not restricted to 100 feet from the described premises:

   **(a)**   Owned by you; or

   **(b)**   Owned by others but in your care, custody or control.

(2)   Paragraph **A.3., Covered Causes Of Loss**, and Section **B., Exclusions** do not apply to this Coverage Extension, except for:

   **(a)**   Paragraph **B.1.c.,** Governmental Action;

   **(b)**   Paragraph **B.1.d.,** Nuclear Hazard; and

   **(c)**   Paragraph **B.1.f.,** War and Military Action;

(3)   We will not pay for loss or damage caused by or resulting from:

   **(a)**   Wear and tear;

   **(b)**   Hidden or latent defect;

   **(c)**   Rust; or

   **(d)**   Corrosion.

(4)   The most we will pay for loss or damage in any one occurrence is $10,000 unless a higher Limit of Insurance for Outdoor Signs is shown in the Declarations.

**h.**   **Money And Securities**

(1) You may extend the insurance provided by this coverage form to include loss of money and securities used in your business while at a bank or savings institution, within your living quarters or in the living quarters of your partners or any employee having use and custody of the property, at the described premises, or in transit between any of these premises, resulting directly from:

    (a) Theft, meaning any act of stealing;

    (b) Disappearance; or

    (c) Destruction.

(2) In addition to the Limitations and Exclusions applicable to property coverage, we will not pay for loss:

    (a) Resulting from accounting or arithmetical errors or omissions;

    (b) Due to the giving or surrendering of property in any exchange or purchase; or

    (c) Of property contained in any money operated device unless the amount of money deposited in it is recorded by a continuous recording instrument in the device.

(3) The most we will pay for loss in any one occurrence is:

    (a) $5,000 unless a higher limit is shown in the Declarations for Inside the Premises for money and securities while:

        (i) In or on the described premises; or

        (ii) Within a bank or savings institution; and

    (b) $5,000 unless a higher limit is shown in the Declarations for Outside the Premises for money and securities while anywhere else.

(4) All loss:

    (a) Caused by one or more persons; or

    (b) Involving a single act or series of related acts;

    is considered one occurrence.

(5) You must keep records of all money and securities so we can verify the amount of any loss or damage.

**i.**    **Employee Dishonesty**

(1) You may extend your insurance to cover loss of or damage to Business Personal Property and money and securities resulting from dishonest acts committed by any of your employees acting alone or in collusion with other persons (except you or your partner) with the manifest intent to:

(a) Cause you to sustain loss or damage; and also

(b) Obtain financial benefit (other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or other employee benefits earned in the normal course of employment) for:

   (i) Any employee; or

   (ii) Any other person or organization.

(2) We will not pay for loss or damage:

(a) Resulting from any dishonest or criminal act that you or any of your partners commit whether acting alone or in collusion with other persons.

(b) The only proof of which as to its existence or amount is:

   (i) An inventory computation; or

   (ii) A profit and loss computation.

(3) The most we will pay for loss or damage in any one occurrence is $5,000 unless a higher Limit of Insurance for Employee Dishonesty is shown in the Declarations.

(4) All loss or damage:

(a) Caused by one or more persons; or

(b) Involving a single act or series of related acts;

is considered one occurrence.

(5) We will pay only for loss or damage you sustain through acts committed or events occurring during the Policy Period. Regardless of the number of years this policy remains in force or the number of premiums paid, no Limit of Insurance accumulates from year to year or period to period.

(6) This Coverage Extension does not apply to any employee immediately upon discovery by:

(a) You; or

(b) Any of your partners, officers or directors not in collusion with the employee;

of any dishonest act committed by that employee before or after being hired by you.

(7) We will pay only for covered loss or damage discovered no later than one year from the end of the Policy Period.

(8) If you (or any predecessor in interest) sustained loss or damage during the period of any prior insurance that you could have recovered under that insurance except that the time within which to discover loss or damage had expired, we will pay for it under this Coverage Extension.

    (a)   This Coverage Extension became effective at the time of cancellation or termination of the prior insurance; and

    (b)   The loss or damage would have been covered by this Coverage Extension had it been in effect when the acts or events causing the loss or damage were committed or occurred.

(9)   The insurance under paragraph **8.** above is part of, not in addition to, the Limit of Insurance applying to this Coverage Extension and is limited to the lesser of the amount recoverable under:

    (a)   This Coverage Extension as of its effective date; or

    (b)   The prior insurance had it remained in effect.

**j.**   **Fine Arts**

You may extend the insurance provided by this Coverage Form to apply to loss or damage to your fine arts caused by a covered cause of loss at the described premises. We will value your fine arts at their market value at the time of loss. The most we will pay for loss or damage under this Coverage Extension is $25,000.

**k.**   **Property In Transit**

This Coverage Extension applies only to your personal property to which this form applies.

(1)   You may extend the insurance provided by this Coverage Form to apply to your personal property in transit more than 100 feet from the described premises. Property must be in or on a motor vehicle you own, lease or operate while between points in the coverage territory.

(2)   Loss or damage must be caused by a result from one of the following causes of loss:

    (a)   Fire, lightning, explosion, windstorm or hail, riot or civil commotion, or vandalism.

    (b)   Vehicle collision, upset or overturn, Collision means accidental contact of a vehicle with another vehicle or object. It does not mean a vehicle's contact with the road bed.

    (c)   Theft of an entire bale, case or package by forced entry into a securely locked body or compartment of the vehicle. There must be visible marks of this forced entry.

    (d)   Flood or earthquake.

    (e)   Voluntary parting with your property entrusted to a common carrier.

    (f)   Any fraudulent, dishonest or criminal act done by a common carrier to whom the property is entrusted, unless instigated by you or your employee.

(3)   The most we will pay for loss or damage under this Coverage Extension is $5,000.

(4)   Property in transit includes property while in the custody of:

    (a)   Any railroad (including while on ferries or in cars or transfers or lighters);

  **(b)** Public truckmen, private truckmen or land transportation companies;

  **(c)** You or anyone else while in or on vehicles you own, lease or hire;

  **(d)** Any air transportation company;

  **(e)** Any water transportation company while on inland waters of the continental United States, the Great Lakes or the St. Lawrence Seaway; or

  **(f)** Any other person authorized by you to have the care and custody of your property outside your premises (including your salespeople).

 **(5)** This extension does not apply to the following:

  **(a)** Shipments by mail;

  **(b)** Property covered under import or export Ocean Cargo policies;

  **(c)** Intercostal water shipments via the Panama Canal; or

  **(d)** Coastwise water shipments to Alaska.

**I.** **Electronic Data Processing Equipment**

 **(1)** You may extend your insurance to cover loss or damage to covered property from any of the covered causes of loss.

  Covered property means electronic data processing equipment, its component parts, data and media which are:

  **(a)** Owned by you; or

  **(b)** Leased, rented or under your control and for which you are legally liable.

 **(2)** Covered Property does not include:

  **(a)** Accounts, bills, evidences of debt, valuable papers, records, abstracts, deeds, manuscripts or similar documents. However, we will pay for loss to these items when in data form. This coverage is subject to paragraph **(2)(c)** below.

  **(b)** Property rented or leased to others while away from your premises;

  **(c)** Any data or media which cannot be replaced with other of like kind and quality;

  **(d)** Contraband, or property in the course of illegal transportation or trade;

  **(e)** Your stock in trade.

 **(3)** Covered causes of loss means risks of direct physical loss to covered property except those causes of loss listed in the Electronic Data Processing Equipment, item **(6) Exclusions.**

 **(4)** Additional Coverage - Collapse:

(a) We will pay for direct physical loss or damage to covered property caused by collapse of a building or any part of a building, if the collapse is caused by one or more of the following:

    (i) The specified causes of loss or breakage of building glass, all only as insured against in this policy;

    (ii) Hidden decay;

    (iii) Hidden insect or vermin damage;

    (iv) Weight of people or personal property;

    (v) Weight of rain that collects on a roof;

    (vi) Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation. However, if the collapse occurs after construction, remodeling, or renovations is complete and is caused in part by a cause of loss listed in (4)(a)(i) through (4)(a)(v), we will pay for the loss or damage even if use of defective material or methods in construction, remodeling or renovation contributes to the collapse.

(b) If the direct physical loss or damage does not involve collapse of a building or any part of a building, we will pay for loss or damage to Covered Property caused by a collapse of personal property only if:

    (i) The personal property which collapses is inside a building insured under this policy; and

    (ii) The collapse was caused by a cause of loss listed in (4)(a)(i) through (4)(a)(v).

(c) Collapse does not include settling, cracking, shrinkage, bulging or expansion.

(5) The following Coverage Extensions apply as respects to this coverage:

(a) The actual and necessary Extra Expense you sustain due to direct physical loss to Covered Property as a result of a Covered Cause of Loss. Extra Expenses means necessary expenses you incur during the period of restorations that you would not have incurred if there had been no direct physical loss to Covered Property.

(b) We will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period.

(c) We will pay for loss to Covered Property resulting from a Covered Cause of Loss while the property is in transit or at a temporary location not owned, leased or occupied by you.

Payments made under these Coverage Extensions are part of, not in addition to, the Electronic Data Processing Equipment Limit of Insurance.

(6) Exclusions.

(a) Section **B. Exclusions** does not apply to this Coverage Extension, except for:

    (i) Paragraph **B.1.c.,** Governmental Action;

    (ii) Paragraph **B.1.d.,** Nuclear Hazard;

    (iii) Paragraph **B.1.f.,** War and Military Action.

(b) We will not pay for loss or damage caused by or resulting from any of the following:

    (i) Faulty workmanship of material or error or omission in design of the Covered Property, However,

        i.    If loss or damage by fire or explosion results, we will pay for that resulting loss or damage;

        ii.    We will pay for resulting damage or expense for data or media;

        iii.    We will pay for the resulting loss or damage to data processing equipment.

    (ii) Any quality in the property that causes it to damage or destroy itself, wear and tear, insects, gradual deterioration or depreciation;

    (iii) Dishonest acts by you, anyone else with an interest in the property, or any of your or their partners, employees, directors, trustees, authorized representatives, or anyone to whom you entrust the property for any purpose:

        i.    Acting alone or in collusion with others;

        ii.    Whether or not occurring during the hours of employment.

    This exclusion does not apply to acts of destruction by your employees; but theft by employees is not covered.

    (iv) Dryness or dampness of atmosphere, extremes of temperature, corrosion, or rust unless directly resulting from loss to the data processing system's air conditioning facilities caused by a Covered Cause of Loss;

    (v) Actual work upon the Covered Property. However:

        i.    If loss or damage by fire or explosion results, we will pay for that resulting loss or damage to the data or media;

        ii.    We will pay for the resulting loss or damage to data processing equipment.

    (vi) Error in machine programming or instructions to the machine.

    (vii) The enforcement of any state or municipal law or ordinance unless such liability is specifically assumed elsewhere in this Coverage Extension.

    (viii) Delay, loss of profit, loss of use or loss of market.

(ix)   Voluntary parting with any property by you or anyone entrusted with the property if induced to do so by any fraudulent scheme, trick, device or false pretense;

(x)   Unauthorized instructions to transfer property to any person or to any place.

(7)   The most we will pay for loss or damage in any one occurrence is $25,000 unless a higher limit of insurance for Electronic Data Processing Equipment is shown in the Declarations.

(8)   The value of the Covered Property will be determined as follows:

(a)   equipment will be valued per the Loss Payment Condition, item **6.d.** of the Property Loss Conditions;

(b)   Data at the actual cost of reproducing the data. If data is not replaced or reproduced, then the cost of blank media;

(c)   Media at the actual cost to repair or replace the property with material of like kind and quality.

## B.   Exclusions

1.   We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

### a.   Ordinance Or Law

The enforcement of any ordinance or law:

(1)   Regulating the construction, use or repair of any property; or

(2)   Requiring the tearing down of any property, including the cost of removing its debris.

This exclusion, Ordinance Or Law, applies whether the loss results from:

(1)   An ordinance or law that is enforced even if the property has not been damaged; or

(2)   The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property or removal of its debris, following a physical loss to that property.

### b.   Earth Movement

(1)   Any earth movement (other than sinkhole collapse), such as an earthquake, landslide, mine subsidence or earth sinking, rising or shifting. But if earth movement results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

(2)   Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or volcanic action, we will pay for the loss or damage caused by that fire, building glass breakage or volcanic action. Volcanic action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

    (a)   Airborne volcanic blast or airborne shock waves;

    (b)   Ash, dust, or particulate matter; or

    (c)   Lava flow.

All volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss of or damage to Covered Property.

**c.    Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this policy.

**d.    Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

**e.    Power Failure**

The failure of power or other utility service supplied to the described premises, however caused, if the failure occurs away from the described premises except as provided in Paragraph **A.5.o.**

But if failure of power or other utility service results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**f.    War And Military Action**

    **(1)**   War, including undeclared or civil war;

    **(2)**   Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

    **(3)**   Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**g.    Water**

    **(1)**   Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

    **(2)**   Mudslide or mudflow; or

(3)    Water under the ground surface pressing on, or flowing or seeping through:

    (a)    Foundations, walls, floors or paved surfaces;

    (b)    Basements, whether paved or not; or

    (c)    Doors, windows or other openings.

But if Water, as described in **B.1.g.(1)** through **B.1.g.(3)**, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage.

**h.**   <u>Fungus</u>**, Wet Rot, Dry Rot And Bacteria**

Presence, growth, proliferation, spread or any activity of <u>fungus</u>, wet or dry rot or bacteria. But if <u>fungus</u>, wet or dry rot or bacteria results in a <u>specified cause of loss</u>, we will pay for the loss or damage caused by that <u>specified cause of loss</u>.

This exclusion does not apply:

(1)    When <u>fungus</u>, wet or dry rot or bacteria results from fire or lightning; or

(2)    To the extent that coverage is provided in the Additional Coverage - Limited Coverage For <u>Fungus</u>, Wet Rot, Dry Rot And Bacteria with respect to loss or damage by a cause of loss other than fire or lightning.

**2.**   We will not pay for loss or damage caused by or resulting from any of the following:

**a.**   **Consequential Losses**

Delay, loss of use or loss of market.

**b.**   **Smoke, Vapor, Gas**

Smoke, vapor or gas from agricultural smudging or industrial operations.

**c.**   **Frozen Plumbing**

Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

**(1)**    You do your best to maintain heat in the building or structure; or

**(2)**    You drain the equipment and shut off the supply if the heat is not maintained.

**d.**   **False Pretense**

Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**e.**   **Exposed Property**

Rain, snow, ice or sleet to personal property in the open.

f.   **Collapse**

Collapse, except as provided in the Additional Coverage for Collapse. But if collapse results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

g.   **Pollution**

We will not pay for loss or damage caused by or resulting from the discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the specified causes of loss. But if the discharge, dispersal, seepage, migration, release or escape of pollutants results in a specified cause of loss, we will pay for the loss or damage caused by that specified cause of loss.

h.   **Other Types Of Loss**

(1)   Wear and tear;

(2)   Rust, or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

(3)   Smog;

(4)   Settling, cracking, shrinking or expansion;

(5)   Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals;

(6)   The following causes of loss to personal property:

    (a)   Dampness or dryness of atmosphere;

    (b)   Changes in or extremes of temperature; or

    (c)   Marring or scratching.

But if an excluded cause of loss that is listed in **B.2.h.(1)** through **B.2.h.(6)** results in a specified cause of loss or building glass breakage, we will pay for the loss or damage caused by that specified cause of loss or building glass breakage.

3.   We will not pay for loss or damage caused by or resulting from any of the following B.3.a. through B.3.c. But if an excluded cause of loss that is listed in B.3.a. through B.3.c. results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

a.   **Weather Conditions**

Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph **1.** above to produce the loss or damage.

b.   **Acts Or Decisions**

Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

c.   **Negligent Work**

Faulty, inadequate or defective:

(1)   Planning, zoning, development, surveying, siting;

(2)   Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

(3)   Materials used in repair, construction, renovation or remodeling; or

(4)   Maintenance;

of part or all of any property on or off the described premises.

4.   **Business Income And Extra Expense Exclusions**

We will not pay for:

a.   Any Extra Expense, or increase of Business Income loss, caused by or resulting from:

(1)   Delay in rebuilding, repairing or replacing the property or resuming operations, due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

(2)   Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the suspension of operations, we will cover such loss that affects your Business Income during the period of restoration.

b.   Any other consequential loss.

5.   **Accounts Receivable And Valuable Papers And Records Exclusions**

The following additional exclusions apply to the Accounts Receivable and Valuable Papers And Records Coverage Extensions:

a.   We will not pay for loss or damage caused by or resulting from electrical or magnetic injury, disturbance or erasure of electronic recordings that is caused by or results from:

(1)   Programming errors or faulty machine instructions;

(2)   Faulty installation or maintenance of data processing equipment or component parts;

But we will pay for direct loss or damage caused by lightning.

b.   Applicable to Valuable Papers and Records only:

We will not pay for loss or damage caused by or resulting from any of the following:

(1)   Errors or omissions in processing or copying. But if errors or omissions in processing or copying results in fire or explosion, we will pay for the direct loss or damage caused by that fire or explosion.

(2)   Wear and tear, gradual deterioration or latent defect.

c.   Applicable to Accounts Receivable only:

We will not pay for:

(1)   Loss or damage caused by or resulting from alteration, falsification, concealment or destruction of records or accounts receivable done to conceal the wrongful giving, taking or withholding of money, securities or other property.

This exclusion applies only to the extent of the wrongful giving, taking or withholding.

(2)   Loss or damage caused by or resulting from bookkeeping, accounting or billing errors or omissions.

(3)   Any loss or damage that requires any audit of record or any inventory computation to prove its factual existence.

## C.  Limits of Insurance

1.   The most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

2.   The limits applicable to the Coverage Extensions, the Fire Department Service Charge, Pollutant Clean Up and Removal Additional Coverages are in addition to the Limits of Insurance.

3.   **Building Limit - Automatic Increase**

a.   The limit of Insurance for Buildings will automatically increase by the annual percentage shown in the Declarations.

b.   The amount of increase will be:

(1)   The Building limit that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Building limit, times

(2)   The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), times

(3)   The number of days since the beginning of the current policy year of the effective date of the most recent policy change amending the Building limit divided by 365.

Example:

If:   The applicable Building limit is $100,000. The annual percentage increase is 8%. The number of days since the beginning of the policy year (or last policy change) is 146.

The amount of increase is
$100,000 x .08 x 146 / 365 = $3,200.

4.  **Business Personal Property Limit - Seasonal Increase**

    a.  The Limit of Insurance for Business Personal Property will automatically increase by 25% to provide for seasonal variations.

    b.  This increase will apply only if the Limit of Insurance shown for Business Personal Property in the Declarations is at least 80% of your average monthly values during the lesser of:

        (1)  The 12 months immediately preceding the date the loss or damage occurs; or

        (2)  The period of time you have been in business as of the date the loss or damage occurs.

D.  **Deductibles**

    1.  We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the Declarations. We will then pay the amount of loss or damage in excess of the Deductible up to the applicable Limit of Insurance.

    2.  Regardless of the amount of the Deductible, the most we will deduct from any loss or damage under all of the following Coverage Extensions and the Additional Coverage - Building Glass Coverage in any one occurrence is $250.:

        a.  Money and Securities;

        b.  Accounts Receivable;

        c.  Forgery and Alterations

        d.  Valuable Papers and Records;

        e.  Employee Dishonesty; and

        f.  Outdoor Signs.

        But the Coverage Extension/Building Glass Deductible will not increase the Deductible shown in the Declarations. This Deductible will be used to satisfy the requirements of the Deductible in the Declarations.

    3.  No deductible applies to the following Additional Coverages:

        a.  Fire Department Service Charge;

        b.  Business Income;

        c.  Extra Expense; and

        d.  Civil Authority.

E.  **Property Loss Conditions**

    1.  **Abandonment**

        There can be no abandonment of any property to us.

2.  **Appraisal**

If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a.  Pay its chosen appraiser; and

b.  Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

3.  **Duties In The Event Of Loss Or Damage**

a.  You must see that the following are done in the event of loss or damage to Covered Property:

    (1)  Notify the police if a law may have been broken.

    (2)  Give us prompt notice of the loss or damage. Include a description of the property involved.

    (3)  As soon as possible, give us a description of how, when and where the loss or damage occurred.

    (4)  Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

    (5)  At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

    (6)  As often as may be reasonably required, permit us to inspect the property providing the loss or damage and examine your books and records.

         Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

    (7)  Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

    (8)  Cooperate with us in the investigation or settlement of the claim.

    (9)  Resume all or part of your operations as quickly as possible.

b.  We may examine any insured under oath, while not in the presence of any other insured and at such time as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

4.   **Legal Action Against Us**

No one may bring a legal action against us under this insurance unless:

a.   There has been full compliance with all of the terms of this insurance; and

b.   The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

5.   **Limitation - Electronic Media And Records**

We will not pay for any loss of Business Income caused by direct physical loss of or damage to Electronic Media and Records after the longer of:

a.   60 consecutive days from the date of direct physical loss or damage; or

b.   The period, beginning with the date of direct physical loss or damage, necessary to repair, rebuild or replace with reasonable speed and similar quality, other property at the described premises due to loss or damage caused by the same occurrence.

Electronic Media and Records are:

a.   Electronic data processing, recording or storage media such as films, tapes, discs, drums or cells;

b.   Data stored on such media; or

c.   Programming records used for electronic data processing or electronically controlled equipment.

Example no. 1:

A covered Cause of Loss damages a computer on June 1. It takes until September 1 to replace the computer, and until October 1 to restore the data that was lost when the damage occurred. We will only pay for the Business Income loss sustained during the period June 1 - September 1. Loss during the period September 2 - October 1 is not covered.

Example no. 2:

A covered Cause of Loss results in the loss of data processing programming records on August 1. The records are replaced on October 15. We will only pay for the Business Income loss sustained during the period August 1 - September 29 (60 consecutive days). Loss during the period September 30 - October 15 is not covered.

6.   **Loss Payment**

In the event of loss or damage covered by this policy:

a.   At our option, we will either:

(1)   Pay the value of lost or damaged property;

(2)    Pay the cost of repairing or replacing the lost or damaged property;

(3)    Take all or any part of the property at an agreed or appraised value; or

(4)    Repair, rebuild or replace the property with other property of like kind and quality, subject to d.(1)(e) below.

b.    We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

c.    We will not pay you more than your financial interest in the Covered Property.

d.    Except as provided in (2) through (8) below, we will determine the value of Covered Property as follows:

(1)    At replacement cost without deduction for depreciation, subject to the following:

(a)    If, at the time of loss, the Limit of Insurance on the lost or damaged property is 80% or more of the full replacement cost of the property immediately before the loss, we will pay the cost to repair or replace, after application of the deductible and without deduction for depreciation, but not more than the least of the following amounts:

(i)    The Limit of Insurance under this policy that applies to the lost or damaged property;

(ii)    The cost to replace, on the same premises, the lost or damaged property with other property:

i.    Of comparable material and quality; and

ii.    Used for the same purpose; or

(iii)    The amount that you actually spend that is necessary to repair or replace the lost or damaged property.

(b)    If, at the time of loss, the Limit of Insurance applicable to the lost or damaged property is less than 80% of the full replacement cost of the property immediately before the loss, we will pay the greater of the following amounts, but not more than the Limit of Insurance that applies to the property:

(i)    The actual cash value of the lost or damaged property; or

(ii)    A proportion of the cost to repair or replace the lost or damaged property, after application of the deductible and without deduction for depreciation. This proportion will equal the ratio of the applicable Limit of Insurance to 80% of the cost of repair or replacement.

(c)    You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim on a replacement cost basis if you notify us of your intent to do so within 180 days after the loss or damage.

(d)    We will not pay on a replacement cost basis for any loss or damage:

       (i)    Until the lost or damaged property is actually repaired or replaced; and

       (ii)   Unless the repairs or replacements are made as soon as reasonably possible after the loss or damage.

  (e)   The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

(2)   If the Actual Cash Value - Buildings option applies, as shown in the Declarations, Paragraph (1) above does not apply to Buildings. Instead, we will determine the value of Buildings at actual cash value.

(3)   The following property at actual cash value:

  (a)   Used or second-hand merchandise held in storage or for sale;

  (b)   Property of others, but this property is not covered for more than the amount for which you are liable plus the cost of labor, materials or services furnished or arranged by you on personal property of others;

  (c)   Household contents, except personal property in apartments or rooms furnished by you as landlord;

  (d)   Manuscripts;

  (e)   Works of art, antiques or rare artifacts, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac.

(4)   Glass at the cost of replacement with safety glazing material if required by law.

(5)   Tenants' Improvements and Betterments at:

  (a)   Replacement cost if you make repairs promptly.

  (b)   A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

       (i)    Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

       (ii)   Divide the amount determined in (i) above by the number of days from the installation of improvements to the expiration of the lease.
       If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

  (c)   Nothing if others pay for repairs or replacement.

(6)   Valuable papers and records, including those which exist on electronic or magnetic media (other than prepackaged software programs), at the cost of:

    **(a)**  Blank materials for reproducing the records; and

    **(b)**  Labor to transcribe or copy the records.

This condition does not apply to valuable papers and records that are actually replaced or restored.

**(7)**  Applicable only to the Coverage Extensions:

    **(a)**  Money at its face value; and

    **(b)**  Securities at their face value at the close of business on the day the loss is discovered.

**(8)**  Applicable only to Accounts Receivable:

    **(a)**  If you cannot accurately establish the amount of accounts receivable outstanding as of the time of loss or damage:

        **(i)**  We will determine the total of the average monthly amounts of accounts receivable for the 12 months immediately preceding the month in which the loss or damage occurs; and

        **(ii)**  We will adjust that total for any normal fluctuations in the amount of accounts receivable for the month in which the loss or damage occurred or for any demonstrated variance from the average for that month.

    **(b)**  The following will be deducted from the total amount of accounts receivable, however that amount is established:

        **(i)**  The amount of the accounts for which there is no loss or damage;

        **(ii)**  The amount of the accounts that you are able to re-establish or collect;

        **(iii)**  An amount to allow for probable bad debts that you are normally unable to collect; and

        **(iv)**  All unearned interest and service charges.

**e.**  Our payment for loss of or damage to personal property of others will only be for the account of the owners of the property. We may adjust losses with the owners of the property. We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

**f.**  We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**g.**  We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, provided you have complied with all of the terms of this policy, and

    **(1)**  We have reached agreement with you on the amount of loss; or

(2)   An appraisal award has been made.

**7.   Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, you may retain the property. But then you must return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

**8.   Resumption Of Operations**

We will reduce the amount of your:

**a.**   Business Income loss, other than Extra Expense, to the extent you can resume your operations, in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

**b.**   Extra Expense loss to the extent you can return operations to normal and discontinue such Extra Expense.

**9.   Vacancy**

**a.   Description Of Terms**

(1)   As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in (1)(a) and (1)(b) below:

(a)   When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means that unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

(b)   When this policy is issued to the owner of a building, building means the entire building. Such building is vacant when 70% or more of its total square footage:

(i)   is not rented; or

(ii)   is not used to conduct customary operations.

(2)   Buildings under construction or renovation are not considered vacant.

**b.   Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

(1)   We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

(a)   Vandalism;

(b)   Sprinkler leakage, unless you have protected the system against freezing.

    (c)    Building glass breakage;

    (d)    Water damage;

    (e)    Theft; or

    (f)    Attempted theft.

  (2)    With respect to Covered Causes of Loss other than those listed in b.(1)(a) through b.(1)(f) above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

## F.   Property General Conditions

### 1.   Control Of Property

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Form at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

### 2.   Mortgageholders

**a.**    The term mortgageholder includes trustee.

**b.**    We will pay for covered loss of or damage to building or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

**c.**    The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

**d.**    If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

    **(1)**    Pays any premium due under this policy at our request if you have failed to do so;

    **(2)**    Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

    **(3)**    Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this policy will then apply directly to the mortgageholder.

**e.**    If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

    **(1)**    The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

(2) The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

f.   If we cancel this policy, we will give written notice to the mortgageholder at least:

(1) 10 days before the effective date of cancellation if we cancel for your non-payment of premium; or

(2) 30 days before the effective date of cancellation if we cancel for any other reason.

g.   If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

**3.   No Benefit To Bailee**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**4.   Policy Period, Coverage Territory**

Under this form:

a.   We cover loss or damage commencing:

(1) During the policy period shown in the Declarations; and

(2) Within the coverage territory or, with respect to property in transit, while it is between points in the coverage territory.

b.   The coverage territory is:

(1) The United States of America (including its territories and possessions);

(2) Puerto Rico; and

(3) Canada.

## G.   Property Definitions

**1.**   Fine arts means objects of art.

**2.**   Fungus means any type or form of fungus, including mold or mildew, and any mycotixins, spores, scents or by-products produced or released by fungi.

**3.**   Money means:

a.   Currency, coins and bank notes in current use and having a face value; and

      b.     Travelers checks, register checks and money orders held for sale to the public.

4.    Operations means your business activities occurring at the described premises.

5.    Period of restoration means the period of time that:

      a.     Begins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; and

      b.     Ends on the earlier of:

          (1)   The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

          (2)   The date when business is resumed at a new permanent location.

Period of restoration does not include any increased period required due to the enforcement of any ordinance or law that:

(1)   Regulates the construction, use or repair, or requires the tearing down of any property; or

(2)   Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of pollutants.

The expiration date of this policy will not cut short the period of restoration.

6.    Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

7.    Securities means negotiable and non-negotiable instruments or contracts representing either money or other property and includes:

      a.     Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

      b.     Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

but does not include money.

8.    Specified Causes of Loss means the following:

Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

      a.     Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

          (1)   The cost of filling sinkholes; or

(2)   Sinking or collapse of land into manmade underground cavities.

b.   Falling objects does not include loss of or damage to:

(1)   Personal property in the open; or

(2)   The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

c.   Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam.

9.   Utility Services means the following:

a.   Water Supply means the following types of property supplying water to the described premises:

(1)   Pumping stations; and

(2)   Water mains.

b.   Communication Supply, means property supplying communication services, including telephone, radio, microwave or television services to the described premises, such as:

(1)   Communication transmission lines, including optic fiber transmission lines;

(2)   Coaxial cables; and

(3)   Microwave radio relays except satellites.

c.   Power Supply, means the following types of property that supply electricity, steam or gas to the described premises:

(1)   Utility generating plants;

(2)   Switching stations;

(3)   Substations;

(4)   Transformers; and

(5)   Transmission lines.

10.   Valuable papers and records means inscribed, printed, or written:

a.   Documents;

b.   Manuscripts; and

c.   Records;

including abstracts, books, deeds, drawings, films, maps or mortgages.

But valuable papers and records does not mean:

d.   Money and Securities;

e.   Converted Data;

f.   Programs or instructions used in your data processing operations, including the materials on which the data is recorded.

**Capitol Indemnity Corporation**
P.O. Box 5900
Madison, WI 53705

THIS FORM CHANGES THE POLICY.  PLEASE READ THIS FORM.

# FUNGI OR BACTERIA EXCLUSION

This form changes the policy terms as follows:

**BUSINESSOWNERS LIABILITY COVERAGE FORM**

**A.**    The following exclusion is added to **Paragraph B.1.**

This insurance does not apply to:

Fungi or Bacteria

   a.    "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

   b.    Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

Subparts a. and b. of this exclusion do not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for consumption.

   c.    "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

   d.    Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**B.**    The following definition is added to **Section F:**
Fungi means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

**Words or terms underlined in this form have special meaning and are defined in the policy or in this form.**

CBP 049 (04-02)

**Capitol Indemnity Corporation**
P.O. Box 5900
Madison, WI 53705

THIS FORM CHANGES THE POLICY. PLEASE READ THIS FORM.

# EXCLUSION - DISCRIMINATION
# NO DUTY TO DEFEND OR INDEMNIFY

This form changes the policy terms as follows:

**BUSINESSOWNERS LIABILITY COVERAGE FORM**

The following exclusion is added to Paragraph B.1.

There is no duty to defend or indemnify any claim or suit arising out of discrimination of any person based on color, creed, gender, race, natural origin, age, disability, religion, sex or any other basis of discrimination prohibited by law.

**Words or terms underlined in this form have special meaning and are defined in the policy or in this form.**

CBP 111 (12-00)

**Capitol Indemnity Corporation**
P.O. Box 5900
Madison, WI 53705

THIS FORM CHANGES THE POLICY. PLEASE READ THIS FORM.

# EXCLUSION - LEAD LIABILITY

This form changes the policy terms as follows:

**BUSINESSOWNERS LIABILITY COVERAGE FORM**

The following exclusion is added to Paragraph B.1.

The policy does not cover any claim or <u>suit</u> arising out of:

1. The ingesting, inhaling or absorbing of any form of lead;

2. Actual or alleged damage from any kind of lead;

3. Any loss, cost or expense arising out of any request, demand or order to test for monitor, clean up, remove, contain, treat, neutralize or in any way respond to or assess the effects of any form of lead;

4. Claims or suits by or on behalf of any person or governmental authority for any damages, statutory penalties, abatement or injunctive relief arising out of or resulting from testing, monitoring, cleaning up, removing, containing, treating, neutralizing or in any way responding to or assessing any form of lead.

**Words or terms underlined in this form have special meaning and are defined in the policy or in this form.**

CBP 135 (12-00)

**Capitol Indemnity Corporation**
P.O. Box 5900
Madison, WI 53705

THIS FORM CHANGES THE POLICY. PLEASE READ THIS FORM.

# EXCLUSION - PUNITIVE OR STATUTORY DAMAGES

This form changes the policy terms as follows:

**BUSINESSOWNERS LIABILITY COVERAGE FORM**

The following is added to Paragraph **B.1.**

This policy covers only compensatory damages. It does not cover:

1. Punitive damages except that if a suit shall have been brought against the insured with respect to a claim for acts or alleged acts falling within the coverage hereof, seeking both compensatory and punitive or exemplary damages, then the company will afford a defense to such action without liability, however, for such punitive or exemplary damages;

2. Exemplary; or

3. Statutory damages (such as multiple damages, costs, expenses or attorneys fees).

CBP 179 (12-00)

Capitol Indemnity Corporation
P.O. Box 5900, Madison, WI 53705

ADDITIONAL INSUREDS SCHEDULE

| POLICY NUMBER | POLICY PERIOD | | AGENCY |
|---|---|---|---|
| BP00044456 | 07/14/2002 07/14/2003 | | 05950 |

| NAMED INSURED AND ADDRESS | AGENT |
|---|---|
| ELSTON SELF SERVICE WHOLESALE GROCERY INC 3761 N ELSTON AVENUE CHICAGO, IL 60618 | UNIFIED INSURANCE SERVICES INC |

ADDITIONAL INSURED

    CITY OF CHICAGO
    DEPT. OF TRANSPORTATION ROOM 208
    121 N LASALLE STREET
    CHICAGO, IL  60602    BLD# - 001    LOC# - 001

    FORM BP 04 07 APPLIES

CBP 018 (01-98)                    INSURED COPY

POLICY NUMBER: BP00044156          BUSINESSOWNERS

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED—STATE OR POLITICAL SUBDIVISIONS —PERMITS RELATING TO PREMISES

This endorsement modifies insurance provided under the following:

    BUSINESSOWNERS POLICY

**SCHEDULE***

**State or Political Subdivision:** CITY OF CHICAGO-DEPT OF TRANSPORTATION ROOM 208
121 N LASALLE STREET
CHICAGO, IL 60602

The following is added to Paragraph C. WHO IS AN INSURED in the Businessowners Liability Coverage Form:

4. Any state or political subdivision shown in the Schedule is also an insured, subject to the following additional provision:

   This insurance applies only with respect to the following hazards for which the state or political subdivision has issued a permit in connection with premises you own, rent, or control and to which this insurance applies:

a. The existence, maintenance, repair, construction, erection, or removal of advertising signs, awnings, canopies, cellar entrances, coal holes, driveways, manholes, marquees, hoistaway openings, sidewalk vaults, street banners, or decoration and similar exposures;

b. The construction, erection, or removal of elevators; or

c. The ownership, maintenance, or use of any elevators covered by this insurance.

*Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

**BP 04 07 01 87**        Copyright, Insurance Services Office, Inc., 1985

POLICY NUMBER:  BP00044456                                    BUSINESSOWNERS

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY

**SCHEDULE***

**Premises:** 3761 N ELSTON, CHICAGO, IL

**Project:** WHOLESALE GROCERY

The following is added to the Businessowners Liability Coverage Form:

This insurance applies only to "bodily injury," "property damage," "personal injury," "advertising injury" and medical expenses arising out of:

1. The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or

2. The project shown in the Schedule.

*Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

BP 04 12 01 87          Copyright, Insurance Services Office, Inc., 1985          □

Capitol Indemnity Corporation
P.O. Box 5900
Madison, WI 53705


THIS FORM CHANGES THE POLICY.  PLEASE READ THIS FORM.

# AMENDMENT OF POLICY PROVISIONS

This form changes the policy terms as follows:


**BUSINESSOWNERS LIABILITY COVERAGE FORM**


Paragraph **D.4.** is replaced by the following:

The most we will pay for:

    **a.**    Injury or damage under the products-completed operations hazard arising from all occurrences during the policy period is two times the Liability and Medical Expenses limit; and

    **b.**    All other injury or damage, including medical expenses, arising from all occurrences during the policy period is twice the Liability and Medical Expenses limit.  This limitation does not apply to property damage to premises while rented to you or temporarily occupied by you with permission of the owner, arising out of fire or explosion.


**Words or terms underlined in this form have special meaning and are defined in the policy or in this form.**

CBP 009 (10-97)

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

_David F. Pauly_ Secretary          _Paul Breitmaier_ President



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

**DOCKETED**

**OCT 1 2 2004**

# Civil Cover Sheet

ED-7
FILED FOR DOCKETING
04 OCT -8 PM 3: 52
CLERK

This automated JS-44 conforms generally to the manual JS-44 approved by the Judicial Conference of the United States in September 1974. The data is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. The information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is authorized for use <u>only</u> in the Northern District of Illinois.

**Plaintiff(s): CAPITOL INDEMNITY CORPORATION**

**Defendant(s):Elston Self Service Wholesale Groceries, Inc., Lorillard Tobacco Company, Canstar (U.S.A.) Inc., Cam-Kat, Inc., Mashour "Mike" Dukum, Ibrahim Dukum and David Dukum**

County of Residence: Dane County, Wisconsin

County of Residence: Cook County, Illinois

Plaintiff's Atty: John G. Pfeiffer
Pfeiffer & Adams
300 W. Adams, Suite 601,
Chicago, Illinois 60606
(312) 223-9711

Defendant's Atty:

**04C 6536**

II. Basis of Jurisdiction: **4. Diversity (complete item III)**

**JUDGE PALLMEYER**[1]

III. Citizenship of Principal Parties (Diversity Cases Only)

**MAGISTRATE JUDGE LEVIN**

Plaintiff:-**2 Citizen of Another State**
Defendant:-**1 Citizen of This State**

IV. Origin : **1. Original Proceeding**

V. Nature of Suit: **890 Other Statutory Actions**

VI.Cause of Action: **28 U.S.C. 2201, Declaratory Judgment**

VII. Requested in Complaint
Class Action:**No**
Dollar Demand:
Jury Demand:**No**

VIII. This case **IS NOT** a refiling of a previously dismissed case.

Signature: _John D. Pfeiffer_

Date: _October 8, 2004_

1-2

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

**DOCKETED**

**OCT 1 2 2004**

In the Matter of

CAPITOL INDEMNITY CORPORATION,
Plaintiff,

v.

ELSTON SELF SERVICE WHOLESALE GROCERIES, INC., et al.
Defendants

FILED FOR DOCKETING

04 OCT -8 PM 3: 53

CLERK
U.S. DISTRICT COURT

Case Number:

04C 6536

## APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

Capitol Indemnity Corporation

JUDGE PALLMEYER

MAGISTRATE JUDGE LEVIN

| (A) | | (B) | |
|---|---|---|---|
| SIGNATURE | | SIGNATURE | |
| NAME John G. Pfeiffer | | NAME David J. Adams | |
| FIRM Pfeiffer & Adams | | FIRM Pfeiffer & Adams | |
| STREET ADDRESS 300 W. Adams, Suite 601 | | STREET ADDRESS 300 W. Adams, Suite 601 | |
| CITY/STATE/ZIP Chicago, IL 60606 | | CITY/STATE/ZIP Chicago, IL 60606 | |
| TELEPHONE NUMBER 312-223-9711 | FAX NUMBER 312-223-9713 | TELEPHONE NUMBER 312-223-9712 | FAX NUMBER 312-223-9713 |
| E-MAIL ADDRESS jpfeiffer@pandalaw.com | | E-MAIL ADDRESS dadams@pandalaw.com | |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 6196829 | | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 6180816 | |
| MEMBER OF TRIAL BAR? | YES ☐ NO ☒ | MEMBER OF TRIAL BAR? | YES ☐ NO ☒ |
| TRIAL ATTORNEY? | YES ☒ NO ☐ | TRIAL ATTORNEY? | YES ☒ NO ☐ |
| | | DESIGNATED AS LOCAL COUNSEL? | YES ☐ NO ☐ |
| (C) | | (D) | |
| SIGNATURE | | SIGNATURE | |
| NAME | | NAME | |
| FIRM | | FIRM | |
| STREET ADDRESS | | STREET ADDRESS | |
| CITY/STATE/ZIP | | CITY/STATE/ZIP | |
| TELEPHONE NUMBER | FAX NUMBER | TELEPHONE NUMBER | FAX NUMBER |
| E-MAIL ADDRESS | | E-MAIL ADDRESS | |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | |
| MEMBER OF TRIAL BAR? | YES ☐ NO ☐ | MEMBER OF TRIAL BAR? | YES ☐ NO ☐ |
| TRIAL ATTORNEY? | YES ☐ NO ☐ | TRIAL ATTORNEY? | YES ☐ NO ☐ |
| DESIGNATED AS LOCAL COUNSEL? | YES ☐ NO ☐ | DESIGNATED AS LOCAL COUNSEL? | YES ☐ NO ☐ |

1-3