IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CAPITOL INDEMNITY CORPORATION,<br>a Wisconsin corporation, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. 04 C 6536<br>) |
| ELSTON SELF SERVICE WHOLESALE<br>GROCERIES, INC., an Illinois corporation,<br>LORILLARD TOBACCO COMPANY, a<br>Delaware corporation, CANSTAR (U.S.A.) INC.,<br>a Florida corporation, CAM-KAT, INC., an<br>Illinois corporation, MASHOUR "MIKE"<br>DUKUM, IBRAHIM DUKUM, and DAVID<br>DUKUM, | ) Judge Pallmeyer<br>)<br>) Magistrate Judge Levin<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS/
COUNTERPLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

NOW COME the Defendants/Counterplaintiffs, Elston Service Wholesale

Grocers, Inc., Mashour "Mike" Dukum and David Dukum, by and through their

attorneys, CHEELY, O'FLAHERTY & AYRES and pursuant to FRCP 56, submits this

memorandum in support of its Motion for Summary Judgment as to Plaintiff/Counter-

Defendant's duty to defend with respect to the underlying case referenced in Plaintiff's

Complaint for Declaratory Judgment and Defendant's Counterclaim.  In support, movant

states as follows:

**NATURE OF THIS MOTION**

This insurance coverage case revolves around an underlying lawsuit alleging that

Defendants/Counterplaintiffs are responsible for the marketing and sales of counterfeit

Newport cigarettes, and the dilution of certain trademarks held by the underlying

plaintiff, Lorillard Tobacco Company.  Lorillard has sued Defendants/Counterplaintiffs

seeking recovery of damages resulting from alleged trademark Counterfeiting and

Infringement (Count I); Unfair Competition and False Designations of Origin (Count II);

Trademark Dilution (Count III); and state law trademark, unfair competition and

deceptive trade practices theories.

Movants tendered the underlying complaint to Capitol for defense and indemnity,

and Capitol has refused to defend Movants in the underlying case.  Instead, Capitol has

filed a Complaint for Declaratory Judgment, asserting that it owes no duty to defend or

indemnify Movants with respect to the underlying lawsuit.  Movants have filed a

counterclaim seeking a declaration that Capitol owes a duty to defend and indemnify

them with respect to the underlying case.

The instant Motion is directed solely to the issue of Capitol's duty to defend the

underlying case.  Because the underlying case filed by Lorillard and the policy at issue in

this coverage litigation are both attached as exhibits to Capitol's complaint, this Court

can and must, under Illinois law, construe the allegations in the underlying case in

relation to the policy at issue, rendering summary judgment as to Capitol's duty to

defend.[1]

## PROCEDURAL HISTORY

As this Court is aware, Movants had previously filed a motion for judgment on

the pleadings.  On October 11, 2006 the Court declined to enter judgment on the

pleadings, suggesting that some further factual development might shed light on the

meaning of the policy language "infringement of copyright, title or slogan", and in

particular, whether the term "title" encompasses trademark violation claims (Ex. A.

transcript of October 11, 2006 proceedings).

---

[1] A declaration as to Capitol's duty to indemnify is premature pending a resolution of what relief, if any, is rendered in the underlying case. *See, Pipefitters Welfare Educational Fund v. Westchester Fire Insurance Company,* 976 F.2d 1037, 1042 (7th Cir. 1993).

Thereafter, Elston requested any such documents from Capitol.  None of the materials produced bears on the meaning of "copyright, title, or slogan" in connection to trademark infringement claims.  Capitol has admitted that the insurer has no documents clarifying or illuminating the policy language which this court found unclear in its comments at the October 11, 2006 hearing (56.1(a)(3) Statement, paragraph 30-31).

Defendants' position in this motion is that, the terms "copyright, title of slogan" are undefined in the Capitol policy and subject to meaning which potentially includes the trademark violation allegations contained in the underlying complaint.  As more fully follows, the majority of courts considering this issue, and that better reasoned opinions, have taken exactly this view.  Consistent with those case authorities, the term "copyright, title, or slogan" embraces trademark infringement, particularly when Capitol has no evidence narrowing its meaning in the trademark violation context.

Moreover, if the interpretation of Capitol's policy language is subject to some doubt, it remains, at best, ambiguous and *potentially* provides coverage in the underlying complaint.  That *potential* for coverage implicates Capitol's duty to defend under Illinois law.  *See, Winkelvoss Consultants , inc. v. Federal Insurance Co.),* 991 F Supp 1024, 1030 (N.D. Ill. 1998 (holding that, under Illinois law, "[I]f the facts alleged in the underlying complaint fall within or *potentially within* policy coverage, the insurer has a duty to defend its insured against the complaint…the court must construe the underlying complaint literally, resolving *all doubts in the insured's favor").*

In the instant case, the reservations this Court expressed as to the meaning of "copyright, title, or slogan", as contained in the Capitol policy, have not been clarified by the evidence presented, and because the language in the Capitol remains at best ambiguous, it must be construed in Elston's favor for purposes of determining Capitol's

duty to defend. So construed, these doubts and ambiguities mandate summary judgment in Elston's favor on the issue of Capitol's broad duty to defend the underlying case.

## ARGUMENT

The construction of an insurance policy's provisions is a question of law. *Lapham-Hickey Steel Corp. v. Protection Mutual Ins. Co.*, 166 Ill. 2d 520, 529 (1995). Ambiguities in an insurance policy will be construed in favor of the insured and against the insurer who drafted the policy. *Millers Mutual Ins. Assn. v. Graham Oil Co.*, 282 Ill. App. 3d 129, 134 (2d Dist. 1996). It is well settled that an insurer's duty to defend is much broader than its duty to indemnify. *Millers Mutual* at 134. In determining a duty to defend, a court must compare the allegations of the underlying complaint, construed liberally in favor of the insured, to the language of the policy. *Millers Mutual* at 134. If the allegations of the underlying complaint fall within *or potentially within*, the coverage of the policy, the duty to defend will arise. *Millers Mutual* at 134-135. Moreover, if the underlying complaint alleges several theories of recovery against the insured, the insurer will have a duty to defend even if only one such theory is within the potential coverage of the policy. *Millers Mutual* at 135.

The policy at issue in this case, which is attached as an exhibit to Capitol's complaint, provides coverage for "advertising injury" as follows:

    **A. Coverages**
      **1. Business Liability**
         *   *   *
      **(b)** This insurance applies:
            *   *   *
        (2) To:
              *   *   *
            (b) "Advertising injury" caused
                by an offense committed in
                the course of advertising your
                goods, products or services;
                but only if the offense was
                committed in the "coverage

4

territory" during the policy
period.

"Advertising injury" is defined in the policy as follows:

### F. Liability and Medical Expenses Definitions

   **1.** "Advertising injury" means injury arising out of one
   or more of the following offenses:
   (a) Oral or written publication of material that slanders
       or libels a person or organization or disparages a
       person's or organization's goods, products or
       services;
   (b) Oral or written publication of material that violates
       a person's right of privacy;
   (c) Misappropriation of advertising ideas or styles of
       doing business; or
   (d) Infringement of copyright, title or slogan.[2]

Under case law interpreting coverage for "advertising injury" as defined in Capitol's

policy, the allegations of the underlying complaint, also attached as an exhibit to

Capitol's complaint, fall potentially within the "advertising injury" coverage of the

policy. As such, the pleadings and exhibits thereto require a declaration that, as a matter

of law, Capitol owes a duty to defend the underlying Lorillard suit.

### I. The Allegations of the Underlying Complaint, Liberally Construed, Potentially Allege "Advertising Injury" Under the Capitol Policy

The definition of "Advertising Injury" in the Capitol policy includes injury arising

out of the following offenses committed in the course of advertising the insured's goods,

products or services:

   1. "Misappropriation of advertising ideas or style of doing business," and
   2. "Infringement of copyright, title or slogan…"

Courts construing this "Advertising Injury" coverage have undertaken a three-pronged

analysis in determining an insurer's duty to defend. First, courts look at whether the

misconduct alleged in the underlying complaint potentially constitutes the offense of

either the "misappropriation of advertising ideas or style of doing business" or

---

[2] The pertinent portions of the policy at issue are set forth in Movant's Local Rule 56.1(a) (3) Statement.

"infringement of copyright, title or slogan." If so, the courts look to whether the offense was potentially committed in the course of advertising the insured's goods, products or services. Lastly, courts analyze whether the injury potentially arose out of those advertising activities.

The underlying complaint filed by Lorillard against Movants alleges that Movants are liable for trademark infringement by virtue of its marketing and sales of counterfeit Newport cigarettes. The underlying complaint alleges that its Newport cigarettes are manufactured in accordance with strict quality control standards, enabling it to establish and maintain a reputation among smokers of quality and consistency (Underlying Complaint, ¶ 9).[3] It further alleges that Lorillard has invested substantial time, effort and money in advertising and promoting cigarettes with the Newport trademark, resulting in the Newport mark becoming a valuable and famous asset belonging exclusively to Lorillard (¶'s 10-11). It goes on to allege that Elston set upon a course of conduct to misappropriate the Lorillard marks by marketing and selling counterfeit cigarettes bearing the Newport mark, with the intent to confuse and mislead the public into believing that Elston's products are genuine Lorillard products (¶'s 14-15). As a result, Lorillard alleges that it has been "damaged by Elston's wrongful use of the Lorillard marks in that the purchasing public is likely to be induced into purchasing [Elston's] goods in the erroneous belief that they are Lorillard's authentic goods…" (¶ 16). The above allegations fall potentially within the policy's coverage for both "misappropriation of advertising ideas or style of business" and "infringement of copyright, title or slogan," as those offenses are construed by the courts. Moreover, this alleged violation of the

---

[3] Some of the more pertinent allegations from the underlying complaint are set forth in Movant's Local Rule 56.1(a) (3) Statement.

trademark laws and the resulting damages to Lorillard potentially occurred in the course of and arose out of Movants' advertising activities under the relevant case law.

In *Fidelity & Guarantee Insurance Company v. Kocolene,* 2002 WL 977855 (S.D. Ind. 2002), a case squarely on point, the court analyzed a nearly identical cigarette counterfeiting case, finding that such a case falls squarely in the policies' advertising injury coverage. The policy in *Kocolene* contained a definition of "Advertising Injury" identical to Capitols' and the underlying complaint was virtually identical to the underlying complaint filed by Lorillard. The underlying complaint in *Kocolene* was filed by Phillip Morris USA, and like Lorillard's complaint, it sought damages and injunctive relief for Kocolene's willful trademark infringement, false designation of origin, unfair competition and trademark dilution arising out of Kocolene's sale of Marlboro brand cigarettes which were previously designated for sale outside the United States. According to Phillip Morris, Kocolene relabeled those cigarettes and sold them to customers in the United States in violation of federal and state trademark and unfair competition laws. Thus, like the instant case, *Kocolene* was predicated on alleged trademark violation in conjunction with the defendant's sales of counterfeit cigarettes.

The court in *Kocolene* first undertook an extensive analysis of whether the Phillip Morris complaint alleged "advertising injury." Citing numerous cases throughout the country, the court noted that "the majority of courts that have considered the issue have held that trademark and trade dress infringement are covered under the 'misappropriation of advertising ideas or style of doing business' phrase of the 'advertising injury' provision." 2002 WL 977855 at p.6. The *Kocolene* court agreed with this interpretation, reasoning that the packaging of the Marlboros could be considered an "advertising idea":

> Furthermore, the packaging of the cigarettes identify them as Phillips Morris USA cigarettes and distinguish them from the products of others. In this court's opinion, the packaging, including the roof design, of the

7

cigarettes arguably could be considered an "advertising idea". *See Adolfo House Distrib.,* 165 F.Supp.2d at 1339 ("one reasonable interpretation of "advertising ideas"… is that [it] encompass[es] the physical appearance of a product"); *Bay Elec. Supply,* 61 F.Supp. at 615-16 (accepting similar position by insured). The design of the packaging arguably is an idea about the solicitation of business. And, according to the Philip Morris Complaint, Kocolene's repackaging of the gray market cigarettes deceived numerous customers into buying those cigarettes. In other words, the repackaging caused those customers to buy the gray market cigarettes by creating the impression that they were domestic MARLBORO® products. 2002 WL 977855 at p. 7.

In addition, the *Kocolene* court held that the conduct at issue*,* selling foreign designated Marlboros in the U.S. with U.S. packaging, constituted "infringement of title" under the policy:

> Thus, decisions of the Seventh Circuit support the conclusion that Phillip Morris USA's claims for trademark, as well as trade dress, infringement arguably are covered by the Policy under the :infringement of title" offense of the "advertising injury" provision. Numerous other courts have concluded that a trademark or trade dress infringement claim comes within the offense of "infringement of copyright, title or slogan" in the "advertising injury" definition of the standard CGL form policy. *First State Ins. Co. v. Alpha Delta Phi Fraternity,* No. 1-94-1050, 1995 WL 901452, at *12 (Ill.Ct.App. Nov. 3, 1995).

> Further, the conclusion that trademark comes within the meaning of the word "title" is supported by the plain, ordinary meaning of the word "title." Black's Law Dictionary defines "title" as a "mark, style or designation; a distinctive appellation; the name by which anything is known." *Black's Law Dictionary* 1485 (6th ed.1990). A "mark" is expressly included within this definition of "title"; thus, by definition, a trademark may be covered under the "infringement of title" language of the "advertising injury" provision in the F & G Policy. 2002 WL 977855 at p. 8.

Finding that the alleged cigarette counterfeiting constituted "Advertising Injury," the court in *Kocolene* then undertook the second prong of the analysis, whether the offence occurred in the course of Kocolene's advertising activity. Relying on the Black's Law Dictionary definition of "advertising," the court ruled that the mere labeling and sale of counterfeit cigarettes constitutes "advertising" within the meaning of the policy:

The court finds that a broad definition of the term "advertising" arguably encompasses Kocolene's activities as alleged in the Phillip Morris Complaint. The packaging, specifically including the MARLBORO® and roof trademarks and trade dress were a form of advertising, that is they "functioned as mini-ads that were tied to the products, clearly promotional in nature yet distinct from the products themselves." *Flodine*, 2001 WL 204786, at *10. The repackaging was an active means by which Kocolene promoted the gray market cigarettes to consumers and sought their business. The complaint also alleges that the display of the cigarettes caused consumer confusion, suggestive of some form of advertising. In addition, the language "assists in the sale" in the Phillip Morris Complaint could be understood as referring, though vaguely, to advertising.

Lastly, the court in *Kocolene* held that there was a causal connection between the alleged advertising injury and Kocolene's advertising activities, reasoning that trademark or trade dress infringement claims necessarily involve advertising activities; therefore, any damages to the underlying plaintiff rise out of those activities. 2002 WL 977855 at p.10.

In *Flodine v. State Farm,* 2001 WL 204786 (N.D.Ill. 2001), the court reached a similar result. In *Flodine,* the underlying defendant/insured sold "southwestern style" crafts which, according to the underlying complaint filed by some Indian tribes, falsely suggested that they were authentic American Indian crafts made by Native Americans. According to the underlying complaint, this violated the federal Indian Arts and Crafts Act as well as the Illinois Deceptive Trade Practices and Consumer Fraud Acts. According to the complaint, tags on the insured's crafts falsely gave the impression that they were Indian made, and some lacked any tag to distinguish them from authentic Indian products.

The court in *Flodine* first ruled that, the underlying claims were analogous to claims of trademark or trade dress infringement. Because the majority of the courts have concluded that "passing off" and trademark and trade dress infringement actions qualify as "misappropriation of advertising idea" and "misappropriation of style of doing

9

business," the court held that Flodine was entitled to a defense in the underlying case.

(2001 WL 204 786 at p.6.).  The court then concluded that the acts were done in the

course of advertising, correctly reasoning that a products' label and packaging in and of

themselves constitute advertising:

> Under a broad interpretation, a product's label might be considered
> advertising, as could its packaging.  The widespread distribution definition
> contains no requirement that the thing that draws attention to the product
> be separate from the product.  A number of courts have found that passing
> off, trademark, trade name or trade dress infringement claims implicitly
> involve advertising activity, because such claims necessarily involve
> advertising or use of the mark to identify the insured's goods or services to
> a substantial number of people.  *See Peerless Lighting Corp. v. Am.
> Motorists Ins. Co.,* 98 Cal.Rptr.2d 753, 765 (Cal.Ct.App.2000) (citing
> *Dogloo,* 907 F.Supp. at 1391); *Am. Employers' Ins., supra,* 39 F.Supp. at
> 76; *see also Lebas,* 59 Cal.Rptr.2d at 41 (trademark infringement "can and
> often does occur" in course of advertising).*   *   * Flodine's alleged
> offenses, the marketing and promotion of products as "authentic
> Indianmade," reasonably fall within the common meaning of "style of
> doing business" or "advertising idea."  Capitalizing upon the goodwill
> associated with Indian-made products is a marketing idea concerned with
> how to persuade consumers to buy certain goods.  The wrongful use of
> these ideas, or ways of marketing "Southwestern style" arts and crafts, are
> "advertising injuries" under the policy.  This conclusion is underscored by
> the fact that the claims in the underlying complaint are analogous to the
> kind of claims for trademark or trade dress infringement that fall within
> the definition of "advertising injury."  The IACA contribution claim
> against Flodine thus falls within the policy's definition of "advertising
> injury."  2001 WL 204 786 at p.8.

In *Central Mutual Insurance Company v. StunFence, Inc.,* 292 FSupp2d 1072

(ND Ill. 2003), the court also had occasion to construe the offense of, "misappropriation

of advertising ideas and style of doing business."  The underlying complaint in *Central

Mutual,* filed by Gallagher Security U.S.A., sought recovery for breach of contract,

trademark infringement and violation of the Illinois Consumer Fraud statute.  According

to Gallagher, it had a contract with StunFence that allowed StunFence to sell Gallagher's

electrical fence systems to correctional facilities.  According to the complaint, StunFence

installed fence systems made with non-Gallagher materials and sold them under

Gallagher's registered trademark, "Power Fence." The court held that under a straightforward reading of the policy, the underlying complaint alleged use of Gallagher's "advertising idea" *Id* at 1079. In so ruling, the court in *Central Mutual* rejected Central's argument that the claim did not arise out of StunFence's advertising activities, noting that trademarks "serve to communicate a message about a marked good or service, which is the essence of advertising, and therefore, allegations of trademark infringement arguably allege misappropriation of an advertising idea." *Id* at 1080. Under *Central Mutual*, the allegations of the underlying complaint potentially allege "misappropriation of advertising ideas or style of doing business," creating a duty to defend.

The *Central Mutual* opinion made reference to the unpublished opinion in *First State Insurance Company v. Alpha Delta Phi Fraternity*, 1995 WL 901452 (Ill.App.1st Dist.), a case also relied upon by the Court in *Kocolene*. In that case, the local chapter of Alpha Delta Phi ran into trouble with the national organization by failing to pay its dues. The local chapter withdrew from the national organization. The national chapter sued the local chapter alleging that it continues to "use and display prominently the Alpha Delta Phi marks, and hold itself out as an Alpha Delta Phi chapter, rather than a local fraternity, thereby causing confusion and mistake and deceiving others into believing that the former chapter remains associated with the plaintiff Alpha Delta Phi when in fact it does not. 1995 WL at p.3. The national chapter asserted that this violated the United States trademark laws.

As in the instant policy, the policy at issue in *First State* defined advertising injury as "infringement of copyright, title or slogan." Relying on the definitions of "title" and "slogan" found in Webster's and Blacks Law Dictionary, the court held that regardless of the legal theory involved, the policy's coverage for infringement of title or

slogan extends to cover suits to enforce a party's alleged exclusive right to a title of

slogan 1995 WL at p.8.

Based on the analysis set forth in the above cases, the allegations of the

underlying complaint potentially fall within the policy's coverage for the offense of both

"misappropriation of advertising ideas or style of doing business" and "infringement of

copyright, title or slogan."

## II. THE UNDERLYING COMPLAINT ALLEGES INJURY ARISING IN THE COURSE OF ELSTON'S ADVERTISING OF THE ALLEGEDLY COUNTERFEIT NEWPORTS.

The underlying complaint, asserting trademark infringement as a result of the

above acts, potentially alleges that the above offenses were "committed in the course of

advertising [Elston's] goods, products or services." As noted by the Seventh Circuit in

*Northern Warren Corp. v. Universal Cosmetic Co.,* 18 F.2d 774 (7th Cir. 1927):

> A trademark is but a species of advertising, its purpose being to fix the
> identity of the article and the name of the producer in the minds of people
> who may see the advertisement, so that they may afterwards use the
> knowledge themselves and carry it to others having like desires and needs
> for such article. *Id* at 774.

As explained by the court in *J. A. Brundage Plumbing v. Massachusetts Bay Insurance*

*Company,* 818 F.Supp 553 (W.D.N.Y. 1993), trademark or trade name infringement

necessarily involves advertising, and it is not possible to allege a claim for trademark

infringement without the infringing mark being used to identify the goods to the public:

> In [certain cases cited by the insurer] the courts found that one could
> allege a claim for copyright or patent infringement without advertising
> ever occurring. *Trademark or trade name infringement, in contrast,*
> *necessarily involves advertising, or use, of the mark or name to identify*
> *the merchant's goods or services. Thus, where it is possible to state a*
> *claim for patent infringement or copyright infringement without*
> *necessarily alleging that such activities occurred in advertising one's*
> *goods, it is not possible to allege a claim for trademark, servicemark or*
> *trade name infringement without the infringing mark being used to identify*
> *the goods or services to the public. This use qualifies as advertising under*

> the definition above. *Id* at 558 (emphasis added). *See, also Kocolene, supra*

The term "advertising" is not defined in the Capitol policy, and as such, must be interpreted broadly and construed against Capitol, the drafter of the policy. *Outboard Marine v. Liberty Mutual*, 154 Ill.2d 90 (1992). As alleged in the underlying complaint, Elston placed for sale cigarettes bearing the Lorillard trademark, which *a fortiori* alleges that by so doing, Elston violated the federal trademark laws in the course of advertising the allegedly counterfeit Newports. Moreover, Lorillard's complaint alleges that its injury arose out of the fact that Elston used the Lorillard trademarks for sales of counterfeit Lorillard cigarettes to the general public. Thus, the underlying complaint alleges the offenses of "misappropriation of advertising ideas or style of doing business" and "infringement of copyright, title or slogan" "committed in the course of advertising your goods, products or services," and as in the above cited cases, the alleged damages arise squarely out of the covered "advertising injury" offense. A liberal reading of that complaint necessitates a finding that it potentially falls within Capitol's coverage for advertising injury, implicating Capitol's duty to defend the Lorillard Lawsuit.

## III. EXTRINSIC EVIDENCE COMPELS THE CONCLUSION THAT THE POLICY COVERS TRADEMARK INFRINGEMENT CLAIMS

In the ruling on Elston's Motion for Judgment on the pleadings, this Court questioned the meaning of the coverage grant for Advertising Injury in the Capitol policy, and asked the parties to try to come up with evidence of trade usage or the dealings between the parties so as to have a better handle on the meaning of these policy provisions. In an attempt to do so, Elstons propounded a production request asking Capitol for any documents pertaining or relating to the meaning of those policy provisions.

In response, Capitol produced unprivileged portions of its underwriting and claims files. Notably, however, Capitol was unable to produce any evidence clarifying the meaning of the phrases, "Misappropriation of advertising ideas or style of doing business" or "Infringement of copyright, title or slogan" as contained in its policy. (See Movants' Local Rule 56.1(a)(3) Statement, paragraph 30-31). Thus, the meaning of those terms, which are undefined in the Capitol policy, remains ambiguous, mandating a judgment as a matter of law that Capitol owes a duty to defend the underlying case under Illinois law. *See Miller's Mutual Insurance Association v. Graham Oil Co.*, 282 Ill. App 3d 129 (2nd Dist. 1996).

Moreover, insurance industry practice and trade usages highlight that Capitol's policy covers Trademark Infringement claims. In *Stunfence supra*, Judge Shadur looked to the history of the ISO's drafting of the pertinent Advertising Injury coverage:

> In 1998 the Insurance Services Office "ISO", the organization that accepts responsibility for drafting the Primary Policy, changed the definition of "advertising injury" from "the infringement of copyright, title or slogan" to infringing upon another's copyright, trade dress or slogan in your 'advertisement.' (citations omitted). While the historical evolution of the "advertising injury" section of the primary policy is certainly not untitled to conclusive weight in interpreting the policy provisions (citation omitted) it is clearly significant that the ISO made the change from "title" to "trade dress" and not "trademark" after there was a clear trend in most Courts to recognize that the former "title" included trademark infringement claims. *Stunfence* 292 F Supp 2d 1072, 1077 (ND Ill. 2003).

Notably, the Capitol policy at issue, in effect from July 14, 2002 to July 14, 2003, continued to use the ISO's pre 1998 language, despite the ISO's narrowing of the language in 1998. If Capitol wanted to narrow its advertising injury coverage in accordance with the 1998 ISO suggested revision to the insurance industry, to circumvent the majority rule finding coverage for trademark violation claims, it could have certainly done so. Having not undertaken that revision its policy language can only be construed broadly, as incorporating the majority rule referenced and relied upon by Judge Shadur.

## IV.  GIVEN THE PAUCITY OF ILLINOIS LAW ON THESE ISSUES, THIS COURT SHOULD FOLLOW THE MAJORITY AND BETTER REASONED RULE

Illinois law on the general scope of an Insurer's duty to defend is as broad as that in any state, and as noted by Judge Gottschall in *Flodine, supra,* a choice of law analysis is unnecessary where there is no disagreement between the law of the forum state and any other state.  2001 WL 204786 at p.5 (ND Ill 2001).  Indeed, while an unpublished opinion, the case of *First State Insurance Co. v. Alpha Delta Phi*, 1995 WL 901452 (Ill App1 Dist.) gives all indications that Illinois law does not counter the majority rule that infringement of "copyright, title or slogan" encompasses trademark violations.  Faced with an undeveloped body of Illinois law on this issue, Judge Gottschall looked to the law of non-Illinois jurisdiction, because "courts may look to the law of other jurisdictions when a state's Supreme Court is silent on the issue."  *Flodine,* 2001 WL 204786 at p. 5.  Given that Illinois has showed absolutely no indication that the majority rule referenced by Judge Shadur in *Stunfence* would not be followed in Illinois, this Court should follow the clear, well reasoned authority set forth in *Kocolene* and the other cases cited herein, especially in light of Illinois' extremely broad interpretation of an insurer's duty to defend.

                                        Respectfully submitted,


                                        By:
                                        s/ Steve Ayres_____
                                        One of the Attorneys for
                                        Defendants/Counterplaintiffs


Stephen R. Ayres
CHEELY, O'FLAHERTY & AYRES
19 South LaSalle Street, Suite 1203
Chicago, IL 60603
(312) 853-8719

P:\2207-001\24375