IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CAPITOL INDEMNITY CORPORATION, a Wisconsin corporation, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 04 C 6536 ) |
| ELSTON SELF SERVICE WHOLESALE GROCERIES, INC., an Illinois corporation, LORILLARD TOBACCO COMPANY, a Delaware corporation, CANSTAR (U.S.A.) INC., a Florida corporation, CAM-KAT, INC., an Illinois corporation, MASHOUR "MIKE" DUKUM, IBRAHIM DUKUM, and DAVID DUKUM, | ) Judge Pallmeyer ) ) Magistrate Judge Levin ) ) ) ) ) ) |
| Defendants. | ) ) |

**RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

NOW COME the Defendants, by and through their attorneys, and in response to Plaintiff's MOTION FOR SUMMARY JUDGMENT, submit the following:

Plaintiff, Capitol Indemnity Corp., has moved for summary judgment asserting several reasons why it believes it owes no duty to defend or indemnify Defendants with respect to the underlying Lorillard lawsuit. First, Capitol references an exclusion in its policy which excludes "personal injury" or "advertising injury" …"arising out of oral or written publication of material whose first publication took place before the beginning of the policy period." Second, Capitol argues that its policy does not cover any of the relief sought in the underlying suit. Thirdly, Capitol asserts that its policy does not cover fraudulent, knowing or intentional torts. Next, Capitol asserts that the acts complained of in the underlying suit were not committed "in the course of advertising", and lastly,

Capitol asserts that the intent of the insurance industry does not include coverage for trademark infringement. For the following reasons, Capitol's assertions should be rejected and its Motion for Summary Judgment denied.

## I. APPLICABLE ILLINOIS LAW

Under Illinois law, an insurer's duty to defend an underlying lawsuit, and duty to indemnify its insured for any damages which may result in that lawsuit, are separate and distinct duties. It is well settled that an "insurer's duty to defend its insured is much broader than its duty to indemnify" *Outboard Marine Corp. v. Liberty Mutual Insurance*, 154 Ill 2d 90, 125 (1992). To determine whether an insurer has a duty to defend, a court must compare the allegations of the underlying complaint to the language of the insurance policy *Id.* The court must construe the allegations in the underlying complaint liberally in favor of the insured, especially with regard to exclusionary clauses to determine if the allegations fall within, or potentially within, the scope of coverage under the policy *Id.* At 125. "*Refusal to defend is unjustifiable unless it is clear from the face of the underlying complaint that the facts alleged do not fall potentially within the policy's coverage*" *Id* at 108 (emphasis added). The insurer has an obligation to defend if any part of the underlying lawsuit falls within the terms of the policy. *Pipefitters Welfare Educational Fund v. Westchester Fire Ins. Co.*, 976 F2d 1037, 1040 (7th Cir. 1993) applying Illinois law.

The construction of an insurance policy is a question of law. *Lapham Hickey Steel Corp. v. Protection Mutual Insurance Co.,* 166 Ill 2d 520, 529 (1995). Ambiguities in an insurance policy will be construed in favor of the insured and against the insurer who drafted the policy. *Great American Insurance Co. of New York v. Hellwig*, 419 F.

2

Supp 2d 1017, 1022 (N.D. Ill. 2006). In particular, exclusions are to be strictly construed against the insurer and in favor of coverage. *Id.*

In its motion, Capitol does not bother to differentiate between its duty to defend and its duty to indemnify, simply claiming that there is no coverage under its policy by virtue of several exclusions contained therein, yet this Court must, as a matter or Illinois law, differentiate between the broad duty to defend and the potentially narrowed duty to indemnify. In so doing, this Court should be mindful that, under Illinois law, a determination of Capitol's duty to indemnify is premature at this point because the underlying complaint has not been concluded, and there is no way of determining what relief, if any, the policy covers. *See, Pipefitters, supra,* at 1042; *Great American, supra* at 1022.

This Court can, at this point make a determination as to Capitol's duty to defend, and Defendants have filed their own Motion for Partial Summary Judgment on that issue. "The threshold a complaint must meet to present a claim for potential coverage, and thereby raise a duty to defend, is minimal." *Platinum Tech v. Federal Insurance Co.*, 2000 WL 875881 at p. 3 (N.D. Ill 2000). For the reason stated herein and in that Motion, which is incorporated herein by reference, Capitol's Motion should be denied and summary judgment entered in favor of Defendants on the issue of Capitol's duty to defend.

**II.     THE "FIRST PUBLICATION EXCLUSION" DOES NOT BAR
            COVERAGE FOR THE UNDERLYING SUIT**

Capitol bases its claim that the underlying case is not covered by its policy as a matter of law on a "first publication exclusion" contained in its policy, without citing any authority from Illinois or elsewhere interpreting that exclusion. In a nutshell, Capitol

3

asserts that, even though the underlying case is based on acts of trademark infringement occurring during its policy period, its "first publication exclusion" bars coverage because, prior to the policy being issued, Elston conducted legitimate, non-actionable advertising of Newport cigarettes by selling and marketing the same to the public. Because the packaging on the legitimate Newport cigarettes appears identical to the packaging on the alleged counterfeit Newports advertised and sold by Elston during its policy period, Capitol makes the absurd assertion that the first publication of the Newport label occurred prior to its policy inception, on July 12, 2002, barring coverage.

This argument flies in the face of the exclusion itself, as well as the universal interpretation of that exclusion and its purpose, which is to prevent an insured from purchasing an insurance policy to cover liability for illegal acts which it had undertaken prior to purchasing the policy. Moreover, this argument ignores the weight of authority which says that the exclusion in question is at best ambiguous and therefore does not pertain to trademark infringement claims. Lastly, Capitol's argument ignores the fact that, while the policy attached to Capitol's Complaint for Declaratory Judgment commenced in 2002, Elston had been purchasing insurance policies from Capitol for many years prior to that date.

A. **The Exclusion in Question Applies only to Actionable, Infringing Labeling and Sales of Newport Cigarettes occurring Prior to the Policy's Inception**

The underlying complaint is based upon Elston's alleged sale of counterfeit Newport cigarettes occurring in 2003, when it first purchased a batch of Newports from a wholesaler named CanStar. According to Lorillard's Ed O'Brien, he inspected Newports from Elston on July 7, 2003, and identified those Newports as counterfeit (*Declaration of*

4

*Ed O'Brien, Ex. A, paragraph 25 of Capitol's Rule 56.1 (a)(3) Statement)*. Discovery in the underlying case has established that, the allegedly counterfeit Newports at issue in the underlying case were all purchased from CanStar, and there is no evidence that any cigarettes at issue in the underlying case were purchased prior to July 12, 2002, the inception date of the Capitol policy. (Affidavit of Mike Dukum, Ex. B). Thus, the issue before the court is whether Elston's advertising and sale of *legitimate* Newports prior to July 12, 2002 somehow constitutes an "advertising injury…arising out of oral or written publication of material whose first publication took place before the beginning of the policy period".

In *Scottsdale Ins. Co. v. Sullivan Properties*, Inc., 2006 WL 505170(D. Hawaii 2006), the court noted that "the obvious purpose of the first-publication exclusion …is to prevent an individual who has caused an injury from buying insurance so that he can continue his injurious behavior" 2006 WL 505170 at p. 10. In *Maddox v. St. Paul Fire & Marine Insurance Co.*, 179 F.Supp. 527 (W.D. Pa. 2001), the court had occasion to examine the first publication exclusion in a similar situation. In *Maddox*, the insurer argued that any advertising injury caused by publication of material that has been published by the insured prior to the beginning of the policy period is not covered, even if the prior publication did not cause an injury. The court flatly rejected that argument, finding that the language of the prior publication exclusion is ambiguous because it is reasonably susceptible to more than one interpretation as to whether the pre policy publication of the material must be injurious:

> Despite defendants claims of clarity, the language of this first publication exclusion is ambiguous because it is reasonably susceptible to more than one interpretation. The alternative reasonable interpretation—requiring the prior

5

publication to cause the same injury as the later publication—is suggested both by the context of the language and the way others have interpreted it.

First, read in context, the phrase "whose first publication" could be understood to refer not only to the word "material" but also the injurious nature of that material. Second, a reasonable person in the position of the insured would understand the exception to mean that an advertising injury is only excluded when there was a wrongful publication prior to the policy period, because logically the point of the exclusion is to prevent an individual who has caused an injury from buying insurance so that he can continue his injurious behavior.***Because the first publication exclusion can be reasonably susceptible to multiple interpretations, the language is ambiguous. (citation omitted). I must construe all ambiguities in favor of the insured, and so I hold that the first publication exclusion applies only when publications prior to the policy period cause injuries identical to the latter publication. 179 F.Supp. at 530-531.

The interpretation given by the court in *Maddox* is also the law in Illinois. *See, Platinum Technology, Inc. v. Federal Ins. Co.*, 2000 WL 875881 (N.D. Ill. 2000)(where no allegations of complaint could be construed as alleging that infringing trademarks were first published prior to policy period, "first publication" exclusion did not preclude coverage under Illinois law).

Under Illinois law, when an exclusionary clause in an insurance policy is relied upon to deny coverage, its application must be clear and free from doubt. *Platinum Technology, supra,* at p. 6. So construed, in conjunction with the purpose and intent of the exclusion, the first publication exclusion does not apply where, as here, there is no allegation in the underlying complaint of Elston's illegal, actionable publication prior to the inception of the Capitol policy.

### B.  There is No Allegation in the Underlying Complaint of any Wrongful or Infringing Publication of the Newport Trademarks prior to the inception of the Capitol Policy.

The underlying complaint, attached to Capitol's Local Rule 56 Statement, contains no allegation whatsoever of any wrongful publication or use of the Newport

6

trademark prior to July 12, 2002, the inception date of its policy. Indeed, the underlying complaint references and attaches the declaration of Ed O'Brien, Lorillard's Manager, Sales Planning for Lorillard Tobacco Co (Underlying Complaint, paragraph 15, Capitol Rule 56 Statement, paragraph 25). In his declaration, O'Brien described his inspection of the cigarettes upon which the underlying complaint is based, which inspection occurred in July of 2003. The cigarettes in question were from a batch purchased by Elston from CanStar, Inc. a wholesaler. Elston first purchased cigarettes from CanStar in 2003, after the Capitol policy was in effect *Exhibit C, pp. 18, 25-26*. *Exhibit D, par. 3*.

As explained by Mr. Dukum, none of the cigarettes upon which the underlying case is based were purchased prior to the inception of the Capitol policy. Notwithstanding that affidavit, the underlying Complaint references no infringement occurring prior to Capitol's policy inception making the prior publication exclusion inapplicable *See Platinum Tech v. Federal Insurance Co.* 2000 WL 875881 (N.D. Ill 2000) (exclusion inapplicable where there are no allegation in underlying complaint of infringement prior to policy period.) As such, under the case law interpreting the "first publication" exclusion, it does not apply to bar coverage in the instant case.

### C. The "First Publication Exclusion" Does Not Apply to Claims of Trademark Infringement

Although Illinois law is silent on the subject, the weight of authority in other jurisdictions is that, the prior publication exclusion does not apply to trademark violations, but only to libel, slander or invasion of privacy injuries. *See, Adolfo House Distributing Co. v. Travelers*, 165 F.Supp.2d 1332, 1341-42(S.D.Fla.2001); *Irons Home Builders, Inc. v. Auto-Owners Ins. Co.*, 839 F.Supp 1260, 1264-65(E.D.Mich.1993); *Arnette Optic Illusions v. ITT Hartford,* 43 F.Supp.2d 1988, 1096(C.D.Cal.1998);

7

*Maddux*, supra.; David A.Gauntlettt, Insurance Coverage of Intellectual Property Assets,Sec.3.03 (Aspen Publishers, Inc., 2000). Thus, even if Capitol could establish, without a question of material fact, that there was a prior injurious use of the Newport trademark, or that contrary to authority, prior injurious publication need not be shown, for this reason, this Court should rule that the exclusion in question does not apply.

### D. Elston Has Purchased Insurance Policies from Capitol for Years Prior to the Inception of the Policy Attached to Capitol's Complaint

As evidenced by the affidavit of Mike Dukum, the policy attached to Capitol's Complaint for Declaratory Judgment was not the first policy which Elston purchased from Capitol. *Exh. D, pars. 1,2*. Indeed, Elston had been purchasing insurance policies from Capitol for years prior to the policy in effect in 2002, and has been continuously insured by Capitol since at least 1993. *Id.* For Capitol to attach the 2002 policy to its Declaratory action, as being the one which is the subject of this dispute, and then assert that it does not provide coverage because Elston sold legitimate Newports prior to the date of that policy – *ignoring the existence of prior policies Capitol itself issued* – can be charitably described as a materially incomplete argument. This Court should not be misled by Capitol's omission.

The existence of Elston's prior policies with Capitol demonstrates the inapplicability of the prior publication exclusion to this case. The fact pattern to which that exclusion applies is an ongoing pattern of misconduct, predating the inception of insurance, followed by a belated, opportunistic purchase of insurance. This case is exactly the converse. Elston has a lengthy history of having purchased commercial liability insurance from Capitol dating back at least ten years before this alleged loss, and there is no allegation (much less proof) of any wrongdoing prior to the 2002 – 2003

8

policy year. The prior publication exclusion is inapplicable to such facts as a matter of law. At the very least, it can be said with great understatement that such facts fail to support Capitol's entitlement to judgment as a matter of law.

**III. THE TYPE OF RELIEF SOUGHT IN THE UNDERLYING SUIT HAS NO BEARING ON ELSTON'S RIGHT TO A DEFENSE OF THAT SUIT**

Selectively picking and choosing certain types of relief requested by Lorillard in the underlying complaint, Capitol asserts that this is not the type of relief that the policy covers, and therefore, Capitol owes neither a duty to indemnify nor even a duty to defend the underlying suit. That argument is without merit.

As recognized by the Seventh Circuit in *Pipefitters Welfare Educational Fund v. Westchester Fire Ins. Co.*, 976 F.2d 1037 (7th Cir.1992), under Illinois law, issues of indemnification become ripe only upon completion of the underlying litigation, "for its resolution depends upon an analysis of the type of relief, if any, ultimately obtained in [that suit]". *Id*, at 1042. Recognizing the futility of basing a coverage determination on whether the type of relief sought in the underlying suit would be covered, Judge Bucklo, also construing Illinois law, recently followed *Pipefitters* in refusing to analyze the indemnification issue without having a record as to exactly what relief, if any, has been obtained in the underlying case. *Great American Ins. Co. of New York v. Hellwig*, 419 F.Supp.2d 1017, 1022 (N.D. Ill. 2006).

In the instant case, Capitol asserts that, because Lorillard seeks some types of relief which might not be ultimately covered by the Capitol policy, Capitol owes no duty to even defend that underlying suit. As noted in *Pipefitters*, however, until the dust actually settles in the underlying case, it is a premature exercise in futility to base a coverage decision of the type of relief which may hypothetically be obtained. For

9

instance, in counts I-III of the underlying complaint, Lorillard seeks recovery of "money damages in an amount to be proven at trial", compensatory damages which would certainly be covered by the Capitol policy, as admitted by Capitol (*Capitol Memorandum Supporting its Motion for Summary Judgment at p. 7*). Under Illinois law, where the underlying complaint states more than one theory of recovery or relief, the insurer must provide a defense "if any portion of the complaint falls within the terms of its policy" *Great American v. Hellwig* at 1020. The fact that, in addition to relief which would be covered by the policy, Lorillard seeks an injunction, statutory damages, punitive damages and other relief in no way alleviates Capitol's duty to defend the underlying case such that, at the proper time, this court can make a determination of what relief has actually been awarded in that case, and whether it is covered under the indemnity portion of the Capitol policy. At this juncture, this Court has no way of knowing whether relief will even be awarded in the underlying case, and if so, the nature of that relief, and accordingly, Capitol's attempt to bootstrap its way out of even defending the underlying case should be rejected.

### IV. RECOVERY FOR TRADEMARK VIOLATION NEED NOT BE BASED ON KNOWING OR INTENTIONAL CONDUCT, AND AS SUCH, NEITHER PUBLIC POLICY NOR AND EXCLUSION BARS COVERAGE

Again, selectively picking and choosing paragraphs from the underlying complaint which assert that some of the actions complained of were, on information or belief, knowing or intentional, Capitol attempts to bootstrap its way out of even defending the underlying complaint. As this Court is probably aware, recovery for trademark infringement can be based on a finding of willfulness, or based on a complete lack of intent on the part of the infringer. See, 15 U.S.C. 1114(1) (a), 15 U.S.C. § 1125

(A). Thus, although Lorillard makes some statements that, on information and belief, Elston's conduct was knowing or intentional, this in no way eliminates the potential of coverage.

When statutory liability can be predicated upon either willful or non-willful conduct, this Court has treated allegations of willful violations as also embracing non-willful conduct. Borrowing imperfectly from criminal law, non-willful misconduct is treated as a lesser included offense.

In *Utica Mutual Ins. Co. v. David Agency Insurance, Inc.*, 327 F.Supp.2d 922(N.D. Ill. 2004), the court faced just this issue. There, the underlying complaint alleged violations of the Illinois Consumer Fraud Act, including solicitation of sales "by deceit, fabrication and false statements", defamation for statements that "were false and known to be false", violation of the Illinois Trade Secrets Act "with knowledge that the information was acquired by improper means, and violation of the Illinois Uniform Deceptive Trade Practice Act for solicitation of customers "by making false and misleading statements". The underlying plaintiff sought compensatory and punitive damages.

As does Capitol, the insurer in *Utica* relied on language in its policy excluding injury "arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity". 327 F.Supp. at 925-926. Like Capitol, Utica asserted that the allegations in the underlying complaint were based solely on intentional acts which were excluded from coverage under the policy. *Id* at 926. Judge Kennelly flatly rejected those arguments, noting that irrespective of the allegations of intent, among the claims made against the insured was one for defamation, a tort which

11

requires proof that the defendant made a false statement, but does not require that the defendant knew of the statement's falsity. *Id* at 927. Judge Kennelly cited *Cincinnatti Ins. Co. v. E. Atl. Ins. Co.*, 260 F.3d 742 (7th Cir. 2001), a decision in which the Seventh Circuit also analyzed Illinois law in holding that, even where the underlying complaint alleges only intentional misconduct, which is excluded under the policy, there is still coverage if recovery can be had in the underlying case without an ultimate finding of intent. *See, Utica, supra,* at p. 927.

Judge Leinenweber employed the same analysis specifically in relation to Trademark Infringement Claims, in his unpublished memorandum opinion in *Allied Insurance Co. v. Brian M. Bach et al*, No. 05 L5945 (N.D. Ill, February 27, 2007) *attached as "Exhibit E."* Denying the Insurer's Motion for Summary Judgment on exactly the grounds Capitol asserts in this case, Judge Lienenweber stated:

> The gravamen of Allied's motion is that the complaint clearly charges defendants with willful and intentional violations of Acushnet's marks. It is clear that if those are the facts there is no duty to indemnify. However, the Lanham Act provides a cause of action for any violation of copyright by marketing counterfeit goods regardless of intent or knowledge. *See* 15 U.S.C. § 1114 (1) (a). The issue of willfulness is limited to the issue of damages. Likewise, a claim for damages based on unfair competition under 15 U.S.C. § 1125 (A) does not require intent for plaintiff to prevail. Assume that the case goes to trial and the trial court believes that there is no evidence of knowledge or intent on the part of the defendant, based on the pleadings in this case the court would not direct a verdict since the evidence may very well demonstrate a violation of Sections 1114 and/or 1125.

(*Exh. E, memorandum opinion at 4*)

In the instant case, although Lorillard pleads some conduct which could be arguably considered intentional, as in the forgoing cases, it can recover under the federal trademark laws for non-intentional infringement. Under these case authorities,

construing the underlying complaint in the light most favorable to Elston, Capitol is not entitled to summary judgment based upon its intentional act exclusions.

## V. THE ALLEGATIONS IN THE UNDERLYING COMPLAINT POTENTIALLY ALLEGE ADVERTISING INJURY COMMITTED IN THE COURSE OF ADVERTISING

Again, without differentiating its duty to defend from its duty to indemnify, Capitol asserts that there is no coverage because the alleged trademark violations were not committed in the course of Elston's advertising the allegedly counterfeit cigarettes. However, two principles preclude the entry of Summary Judgment for Captiol on this basis.

First, there is no evidentiary basis for Capitol's assertions. "Advertising" is not a defined term anywhere in Capitol's Policy. In the absence of any definition, Capitol's assertions about what "advertising means have no evidentiary basis, but are conjured up out of pure gossamer. Moreover, the belated attempt to place a limiting gloss on the meaning of "advertising" is not only baseless but contrary to the settled principle that ambiguous policy language be construed against the insurer and in favor of the issued. *Great American Insurance Co. of New York v. Hellwig*, 419 F. Supp 2d 1017, 1022 (N.D. Ill. 2006). Capitol cannot assert a *post facto* gloss on its policy, and claim as entitlement to Summary Judgment on that basis.

Second, Elston has filed its own Motion for Partial Summary Judgment asking this Court rule as a matter of law that the underlying complaint does potentially allege injury in the course of advertising, based on the overwhelming weight of authority which holds that the labeling and sale of counterfeit goods constitutes advertising injury in the course of advertising. *See, eg Flodine v. State Farm*, 2001 WL 204786 (ND Ill. 2001);

13

*USF & G v. Kocolene,* 2002 WL 977855 (S.D. Ind. 20001) (mere sale of counterfeit Marlboros constitutes advertising injury arising out of insured's advertising activities, as the labels themselves constitute "mini ads", requiring coverage). Rather then burden this Court with arguments duplicating those contained in its own Motion for Partial Summary Judgment, Elston incorporates said motion herein and prays that, for the reasons set forth therein, this Court deny Capitol's motion and rule that Capitol owes a duty to defend as a matter of law.

        Respectfully submitted,

        By:
        s/ Steve Ayres_____
        One of the Attorneys for
        Defendants/Counterplaintiffs

Stephen R. Ayres
CHEELY, O'FLAHERTY & AYRES
19 South LaSalle Street, Suite 1203
Chicago, IL 60603
(312) 853-8719

P:\2207-001\24560/24560